1  STEPHANIE SHERIDAN (BAR NO.135910)
   stephanie.sheridan@sedgwicklaw.com
2  ALISON WILLIAMS (BAR NO. 251689)
   alison.williams@sedgwicklaw.com
3  SEDGWICK LLP
4  333 Bush Street, 30th Floor
   San Francisco, CA  94104
5  Telephone:  415.781.7900
   Facsimile:   415.781.2635
6
7  Attorneys for Defendant
   FEDEX OFFICE AND PRINT SERVICES, INC.

8

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

| 12 | RAZMIG TCHOBOIAN and ANGELA POTIKYAN, on behalf of themselves and all others similarly situated, | Case No. 8:10-cv-01008-JAK-MLG |
|---|---|---|
| 13 | | **DEFENDANT FEDEX OFFICE AND PRINT SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| 14 | Plaintiffs, | |
| 15 | v. | |
| 16 | FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX KINKOS OFFICE AND PRINT SERVICES, INC.); DOES 1 through 10, inclusive, | Judge:  Hon. John A. Kronstadt<br>Date:   November 7, 2011<br>Time:   1:30 p.m.<br>Ctrm:   750 – 7th Floor |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | Defendants. | |

SF/2307129v1

DEFENDANT FEDEX OFFICE AND PRINT SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. SUMMARY OF FACTS ................................................................................. 1

    A. Plaintiffs' Allegations .......................................................................... 1

        1. Background on Credit Card Numbers and Receipts ................. 3

            a. The Significance of Specific Digits within a Credit Card Number ......................................................... 3

            b. Card Brands are Customarily Printed on Receipts, and FACTA Does Not Prohibit This ............................................................................. 4

            c. Printing the First and Second Digits Does Not Increase the Risk of Identity Theft ............................ 4

III. LEGAL STANDARD FOR SUMMARY JUDGMENT ................................. 5

IV. LEGAL ARGUMENT ..................................................................................... 6

    A. This Court Has Authority to Look Beyond a Statute's Language to Effectuate its Intended Purpose and Prevent Absurd Results ................................................................................... 6

    B. The Undisputed Evidence Shows that FACTA's Prohibitions are Ambiguous, and Application of Plaintiffs' Interpretation Would Lead to Absurd Results ..................... 7

        1. Congress' Focus on the Last Digits of the Credit Card And Not Prohibiting Printing the First Digits Was Intentional .......................................................................... 7

        2. Other Court's Have Followed the Interpretation Urged by FedEx Office Here ....................................................... 9

        3. Plaintiffs' Interpretation is Opportunistic and Does Not Fulfill FACTA's Explicit Purpose .................................... 10

V. CONCLUSION ............................................................................................. 11

SF/2307129v1          i.

DEFENDANT FEDEX OFFICE AND PRINT SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page

## Cases

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) ........................................................................................ 5

*Arabian v. Sony Electronics, Inc.*,
    2007 WL 627977 (S.D. Cal. Feb. 22, 2007) ...................................................... 11

*Azoiani v. Love's Travel Stops and Country Stores, Inc.*,
    2007 WL 4811627 (C.D. Cal. Dec. 18, 2007) .................................................... 11

*Broderick v. 119TCBay, LLC, et al.*,
    670 F.Supp.2d 612 (W.D. Mich. 2009) ........................................................ 9, 11

*Celotex v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548 (1986) ............................................................. 5, 6

*Dolan v. U.S. Postal Service,*
    546 U.S. 481 (2006) ........................................................................................ 7

*Dyer v. United States*,
    832 F.2d 1062 (9th Cir. 1987) ........................................................................ 6

*Granite Rock Co. v. Int'l Brotherhood of Teamsters, Freight, Construction,*
    *General Drivers, Warehousemen & Helpers, Local 287*,
    402 F. Supp. 2d 1120 (N.D. Cal. 2005) ........................................................... 5

*Ileto, et al., v. Glock, et al.*,
    565 F.3d 1126 (9th Cir. 2009) ......................................................................... 7

*In re Toys "R" Us-Delaware, Inc.-Fair and Accurate Credit Transactions Act*
    *(FACTA) Litigation*,
    2010 WL 5071073 (C.D.Cal. Aug. 17, 2010) ............................................. 9, 10

*Najarian v. Avis Rent A Car System, et al.*,
    2007 WL 4682071 (C.D. Cal. June 11, 2007) ................................................. 11

*Perlman v. Catapult Entertainment, Inc.*,
    165 F.3d 747 (9th Cir. 1999) ........................................................................... 7

*Price v. Lucky Strike Entertainment, Inc.*,
    2007 WL 4812281 (C.D. Cal. Aug. 31, 2007) .................................................. 11

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) .......................................................................................... 7

*Rowe v. Educ. Credit Mgmt. Corp.*,
    559 F.3d 1028 (9th Cir. 2009) .......................................................................... 6

*Seattle-First Nat. Bank v. Conaway*,
    98 F.3d 1195 (9th Cir. 1996) ............................................................................ 6

*Zuni Public School Dist. No 89 v. Dept. of Educ.*,
    550 U.S. 81 (2007) ............................................................................................ 7

**Statutes**

15 U.S.C. § 1681 ........................................................................................................ 2

15 U.S.C. § 1681c(g) ..................................................................................... 1, 2, 4, 7

15 U.S.C. § 1681n ................................................................................................ 2, 11

Fed. R. Civ. P. 23 .................................................................................................... 11

Fed. R. Civ. P. 56 ...................................................................................................... 5

**Other Authorities**

Public Law 110-241, 122 Stat. 1565 (2008 HR 4008) ........................................... 11

S. Rep. 108-166, 2003 WL 22399643 (Oct. 17, 2003) ................................... 2, 4, 9

SF/2307129v1                                iii.
DEFENDANT FEDEX OFFICE AND PRINT SERVICES, INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiffs have accused defendant FedEx Office and Print Services, Inc. ("FedEx Office") of violating the Fair and Accurate Credit Transactions Act ("FACTA") under an opportunistic and logically unsound interpretation of the law. Plaintiffs have accused FedEx Office of violating FACTA by printing "more than the last five digits of [their] credit card numbers" on receipts they received following purchases at FedEx Office stores; however, FedEx Office only printed the last four digits of plaintiffs' credit card numbers on their receipts, clearly in compliance with FACTA. In spite of this, plaintiffs have based their complaint on a theory that FedEx Office violated FACTA by printing the first two digits of their credit card numbers on the receipts, disregarding the fact that the law does not address nor prohibit printing the digits at the beginning of a credit card number.

Plaintiffs' approach reveals FACTA's ambiguity, affording this Court the authority to consider and effectuate Congressional intent as other courts have done when presented with this same factual scenario. Printing of the first two digits on plaintiffs' receipts does nothing to convey personal identifying information, which FACTA was intended to address as part of a larger goal of curtailing identity theft. Furthermore, plaintiffs do not claim that either themselves nor anyone in the putative class have been injured or damaged in any way from these receipts. Printing the first two digits of the credit card numbers does not violate FACTA, and any alternative application would lead to absurd results. Because FedEx Office did not violate FACTA by printing the first two digits of the plaintiffs' credit card numbers on their receipts, FedEx Office is entitled to judgment as a matter of law.

## II. SUMMARY OF FACTS

### A. Plaintiffs' Allegations

This lawsuit arises from allegations that FedEx Office violated FACTA, 15 U.S.C. section 1681c(g). (Separate Statement of Uncontroverted Facts ("SSUF"),

¶ 1.) FACTA, part of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1681, *et seq.*, is intended to combat identity theft and protect consumer privacy. (SSUF ¶ 2); S. Rep. 108-166, 2003 WL 22399643, at *3 (Oct. 17, 2003). The statute provides that "no person that accepts credit or debit cards for the transaction of business shall print more than the last 5 digits of the credit card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g).

Plaintiffs claim that, upon making a credit card purchase at a California FedEx Office location, they were provided with receipts that displayed more than the last five digits of their credit card numbers. (SSUF ¶ 3.) Specifically, plaintiffs contend that the first two and last four digits of their credit card numbers appeared on the receipts. (SSUF ¶ 4.) Notably, these receipts were printed from FedEx Office's self-serve Express Pay point-of-sale system used to process transactions for inexpensive purchases such as copies,[1] and customers such as plaintiffs are not automatically issued receipts from this system unless they specifically request one. (SSUF ¶ 5.)

Plaintiffs do not claim that they have actually been injured in any way as a result of this information appearing on their receipts. (SSUF ¶ 6.) Rather, and without any support, plaintiffs conclusively assert that they have been exposed to an increased risk of identity theft and credit or debit card fraud. (SSUF ¶ 7.) Accordingly, plaintiffs claim that FedEx Office's conduct in printing receipts with a total of six credit card digits willfully violated FACTA, and they are entitled to statutory damages under 15 U.S.C. section 1681n on that basis alone. (SSUF ¶ 8.)

---

[1] Plaintiff Tchoboian's receipt was for $.88 cents for copies.

1. Background on Credit Card Numbers and Receipts

    a. The Significance of Specific Digits within a Credit Card Number

Each digit of a credit card number issued by a U.S. financial institution has a universal significance based upon its placement within the number as a whole. (SSUF ¶ 9.) The significance of these digits is dictated by an international standard developed by the International Organization for Standardization and the International Electrotechnical Commission. (SSUF ¶ 10.) This standard is called the ISO/IEC 7812-2:2006 ("ISO/IEC"). (SSUF ¶ 11.)

Credit card numbers are comprised of sixteen digits. (SSUF ¶ 12.) According to the ISO/IEC, the first digit of a credit card number identifies the major industry issuer. (SSUF ¶ 13.) In practice, this means that the first digit indicates the brand of the card. (SSUF ¶ 14.) Thus, all American Express card numbers begin with a 3. (SSUF ¶ 15.) All Visa card numbers begin with a 4. (SSUF ¶ 16.) All MasterCard card numbers begin with a 5. (SSUF ¶ 17.) All Discover card numbers begin with a 6. (SSUF ¶ 18.) The correlation between card brands and the first digit is widely known to the public, and particularly to potential fraudsters. (SSUF ¶ 19.)

Credit card digits one through six are known as the Bank Identification Number ("BIN"). (SSUF ¶ 20.) A credit card's BIN identifies the financial institution that issued that card. (SSUF ¶ 21.) BINs are known to industry stakeholders like retailers and processors, and they also are found on the internet. (SSUF ¶ 22.)

Digits seven through fifteen make up the unique account number that is specific to that individual to whom the card is issued. (SSUF ¶ 23.) The sixteenth and final digit has a particular relationship to the prior numbers to ensure the card number is valid. (SSUF ¶ 24.) That is, all of the digits of a credit card number, when entered into a mathematical equation, should equal a number that is divisible by ten. (SSUF ¶ 25.) The last digit of a valid credit card number is selected to ensure that

the credit card digit successfully fits into this equation. (SSUF ¶ 26.) At the very least, FACTA permits printing digits twelve through sixteen. (SSUF ¶ 27); 15 U.S.C. section 1681c(g).

Here, it is undisputed that the credit cards used by the plaintiffs have sixteen digits. (SSUF ¶ 28.) Of those sixteen digits, digits one, two, and thirteen through sixteen appear on the receipts. (SSUF ¶ 29.) That is, the digit representing the card brand, one of the BINs, and four of the personal identifiers. (SSUF ¶ 29.)

     b. <u>Card Brands are Customarily Printed on Receipts, and FACTA Does Not Prohibit This</u>

Industry practices and rules ensure that the card brand name is printed on the cardholder's receipt. (SSUF ¶ 30.) For instance, the summary of Visa's rules for merchants clearly states: "The payment brand used to complete the transaction must be identified on the cardholder's copy of the transaction receipt." (SSUF ¶ 31.) The reason for this is to remind the cardholder which brand of card he used for a particular transaction. (SSUF ¶ 32.)

FACTA does not prohibit this industry practice of printing the brand name on the cardholder receipt. (SSUF ¶ 33.) Furthermore, nothing in the testimony and legislative history suggests that Congress was concerned about the presence of brand names on the cardholder receipt. (SSUF ¶ 34); S. Rep. 108-166, 2003 WL 22399643 (Oct. 17, 2003).

     c. <u>Printing the First and Second Digits Does Not Increase the Risk of Identity Theft</u>

Printing a credit card's first digit on the cardholder's receipt does not provide any additional information about the card number to a person who intends to use the information on the receipt to commit credit card fraud. (SSUF ¶ 35.) This is because the first digit of the sixteen digit credit card number indicates the card brand, which is already printed on the card. (SSUF ¶ 36.) Even if the first digit is not printed on the receipt, this digit easily can be determined if the card brand is

known. (SSUF ¶ 37.) Thus, the first digit of a credit card number is de facto printed on every credit card receipt, even if the entire credit card number is truncated. (SSUF ¶ 38.) Therefore, printing the first digit of a cardholder's credit card number on her receipt does not increase the risk of a thief obtaining a cardholder's entire credit card number. (SSUF ¶ 39.)

Likewise, printing the second digit in addition to the first does not increase the risk of identity theft. (SSUF ¶ 40.) The second digit is part of the six digit BIN number found on every credit card. (SSUF ¶ 41.) There are a vast number of six digit BINs, and such numbers are commonly known to industry stakeholders and are also published online, including on websites such as the online encyclopedia Wikipedia. (SSUF ¶ 42.) Thus, printing the second digit on the cardholder's receipt does not add any new information for someone who picks up the receipt and is looking to use the information on the card to commit payment card fraud. (SSUF ¶ 43.)

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is warranted where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is material only if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-324, 106 S. Ct. 2548 (1986); *see also Granite Rock Co. v. Int'l Brotherhood of Teamsters, Freight, Construction, General Drivers, Warehousemen & Helpers, Local 287*, 402 F. Supp. 2d 1120, 1124 (N.D. Cal. 2005). Summary judgment is no longer a disfavored procedural shortcut but instead, "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to

1  demonstrate in the manner provided by the Rule, prior to trial, that the claims and
2  defenses have no . . . basis." *Celotex Corp.*, 477 U.S. 319, 327 (internal quotations
3  & citations omitted).

4  Here, FedEx Office is entitled to judgment as a matter of law. The material
5  facts are undisputed, and even when construed in the light most favorable to the
6  plaintiffs, plaintiffs cannot establish that FedEx Office's actions increased their
7  risk of identity theft or were not in accordance with FACTA's intended
8  protections.

9  Interpreted in accordance with Congressional intent, FACTA does not prohibit
10 printing the first and second digits of a customer's credit card number on his or her
11 receipt. Accordingly, under the facts of this case, there has been no violation, and
12 plaintiffs' claims must fail as a matter of law.

## IV. LEGAL ARGUMENT

### A. This Court Has Authority to Look Beyond a Statute's Language to Effectuate its Intended Purpose and Prevent Absurd Results

Generally, the plain meaning of a statute controls. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1032 (9th Cir. 2009) ("The starting point for our interpretation of a statute is always its plain language") (internal quotation omitted). Such is not the case, however, where applying the literal interpretation of the statute would produce unreasonable, absurd, or impractical results. *See Seattle-First Nat. Bank v. Conaway*, 98 F.3d 1195, 1197 (9th Cir. 1996); *see also Dyer v. United States*, 832 F.2d 1062, 1066 (9th Cir. 1987) ("The plain meaning governs . . . unless such plain meaning would lead to absurd results.") (citation omitted).

The court may look beyond the plain language of a statute if the language does not make sense and is inconsistent based upon an analysis of the statutory language, the context in which the language is used, and the broader context of the statute as a whole. *See Zuni Public School Dist. No 89 v. Dept. of Educ.,* 550 U.S.

SF/2307129v1             6.

81 (2007) (interpreting federal Impact Aid Act with legislative history and statutory purpose); *Dolan v. U.S. Postal Service,* 546 U.S. 481 (2006) (court looked outside statutory language upon determining that the language of Federal Tort Claims Act exemption was ambiguous and possible interpretations were nonsensical); *Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997) (court looked to broader context and statutory purpose to ensure full protections intended by law were given); *Ileto, et al., v. Glock, et al.*, 565 F.3d 1126 (9th Cir. 2009) (interpreting Protection of Lawful Commerce in Arms Act with statutory purpose and legislative history); *Perlman v. Catapult Entertainment, Inc.*, 165 F.3d 747, 753-54 (9th Cir. 1999) (court should look to legislative history for evidence of congressional intent where application of statute's plain language would lead to absurd results).

> **B.** **The Undisputed Evidence Shows that FACTA's Prohibitions are Ambiguous, and Application of Plaintiffs' Interpretation Would Lead to Absurd Results**

The undisputed evidence shows the universal standards for credit card digits and industry practices when printing receipts. Evaluating plaintiffs' claim in light of that evidence, the ambiguity of FACTA's prohibitions is apparent.

In enacting FACTA, Congress clearly appreciated the significance of the individual digits and the practice of printing the brand on cardholder receipts, yet it did not address the card brand or the BINS in its prohibitions. Instead, Congress enacted restrictions on which of the "last" digits – or ***the personally identifying digits*** – could appear. 15 U.S.C. § 1681c(g). This context reveals the ambiguity of FACTA, which reads: "Except as otherwise provided in this action, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." *Id*.

> **1.** Congress' Focus on the Last Digits of the Credit Card And Not Prohibiting Printing the First Digits Was Intentional

In addressing the personally identifying digits only, Congress did not expressly restrict the first or second digits, or, generally speaking, the digits at the front end of the credit card number. Furthermore, Congress did not restrict printing the card brand on the receipt, which is the word equivalent of printing the first digit. This conflict and inconsistency shows that FACTA's prohibitions are ambiguous. The only objectively reasonable interpretation, however, demonstrates that Congress intended the prohibitions to apply only to the printing of the final digits of credit card numbers.

An examination of Congressional intent affirms this reasonable interpretation. In its Conference Report on the FACTA legislation, Congress states that "[t]he legislation *enhances the ability of consumers to combat identity theft*, increases accuracy by providing consumers great notice about, and access to, their credit report information, and allows consumers to exercise greater control regarding the type and amount of marketing solicitations they receive." S. Rep. 108-166, 2003 WL 22399643, at *3 (Oct. 17, 2003) (emphasis added). Further, "[t]he bill contains numerous measures which *protect consumers from identity thieves*. The legislation requires the truncation of credit and debit card account numbers on electronically printed receipts *to prevent criminals from obtaining easy access to such key information.*" *Id.* Finally, with regard to truncation of credit card information, the Congressional report states that this was included "to limit the number of opportunities for identity thieves to 'pick off' key card account information." *Id.* at 13.

The plain language of the statute and the Conference Report make it clear that Congress was concerned about preventing criminals' easy access to key information that could be used to commit identity theft or fraud. *Id.*; (SSUF ¶ 44.) Accordingly, it prohibited the inclusion, on receipts, of *six or more of the last digits* of a credit card, as those constituted the "key information" that could be used for identity theft or fraud. (SSUF ¶ 45.) Because of input from the credit card

industry, and because of the absence of objection from consumer advocates and privacy experts, Congress knew that some credit card digits posed no threat and could continue to appear on receipts. (SSUF ¶ 46.)

### 2. Other Court's Have Followed the Interpretation Urged by FedEx Office Here

Under a directly analogous factual framework, the court's opinion in *Broderick v. 119TCBay, LLC, et al.,* 670 F.Supp.2d 612 (W.D. Mich. 2009), determined the first digit of a credit or debit card number is inapposite to a FACTA violation. In *Broderick*, the court granted summary judgment in favor of the defendants who printed receipts containing the first digit of a customer's credit card number on grounds that the receipt did not violate FACTA as a matter of law. *Id.* The court's analysis determined that FACTA was ambiguous, and relying on Congress's intent and the absurd possibilities that would result from a literal interpretation of the statute, the court reasoned that interpreting FACTA so narrowly as to make printing the first digit of a credit card number a violation of the law would do nothing to uphold the statute's purpose. *Id.* at 618-619. Based on this rationale, the *Broderick* court sought to maintain the spirit of the law over the letter of the law in determining that no FACTA violation had occurred.

Importantly, the United States District Court for the Central District of California also agrees with this approach, as borne out in decisions against the same plaintiffs' attorney here. In *In re Toys "R" Us-Delaware, Inc.-Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 2010 WL 5071073, *2 (C.D.Cal. Aug. 17, 2010), plaintiffs alleged that defendant violated FACTA when it printed receipts containing the first six and last four digits of their credit card numbers. The Court noted that plaintiffs had not made any claim of actual injury, and the defendant's expert opined that the printing of the first six and last four digits could not harm consumers, because the first six digits only contain card issuer information. *Id.* at *11. In denying class certification, this Court stated:

> ***Here, because Congress did not prohibit the printing of issuer information on the credit card receipt, there is no possibility that the printing of the first six digits could have resulted in a risk of harm greater than that prohibited by Congress***.
>
> Judge Walter reached this same conclusion in *Lopez v. KB Toys Retail, Inc.*, 2:07-cv-00144-JFW (CWx), slip op. (C.D.Cal. July 17, 2007) at 5 ("***Furthermore, it appears unlikely, if not impossible, for the inclusion of the first four digits of a credit card number to result in identity theft or any other actual harm***, as the first 4-6 digits merely identify the issuing bank-information which can (and was in this case) included on the Customer Sales Receipt").

*Id.* at *12 (emphasis added).

Given the statute's ambiguity, it is appropriate for the court to look beyond the statute's plain language as to "no more than the last 5 digits," to give effect to Congress's intent and to avoid construing the statute in a way that would lead to absurd results. Indeed, plaintiffs do not and cannot contend they have been harmed by the receipts at issue in this action, and Congress did not intend for FACTA to serve as a vehicle for opportunistic suits based upon literal readings of the statutory language.

### 3. Plaintiffs' Interpretation is Opportunistic and Does Not Fulfill FACTA's Explicit Purpose

Congress has expressed concern over the intentions behind, and effects of, complaints pursued under FACTA where plaintiffs are admittedly not damaged and the purpose of the Act is not fulfilled. In clarifying FACTA's rules, Congress stated:

> Despite repeatedly being denied class certification, ***the continued appealing and filing of these lawsuits represents a significant burden*** on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit. . . . ***The purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not***

SF/2307129v1

10.

DEFENDANT FEDEX OFFICE AND PRINT SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

> *protect consumers but only result in increased cost to businesses* and potentially increased prices to consumers.

Public Law 110-241, 122 Stat. 1565 (2008 HR 4008), Credit and Debit Card Receipt Clarification Act of 2007, enacted June 3, 2008 (emphasis added).

The undisputed facts show that plaintiffs in this suit have not been damaged. Moreover, it would be entirely consistent with FACTA's stated intent to grant summary judgment on this motion, as plaintiffs do not face any increased risk to their credit or identity as a result of printing of the first two and last four digits of their credit card numbers on receipts.[2]

On the other hand, application of plaintiffs' statutory interpretation would produce absurd results and concomitant significant burdens on companies forced to defend opportunistic lawsuits.

## V.    CONCLUSION

FACTA's prohibitions are ambiguous as to whether they apply to the digits at the beginning of a credit card number. What is unambiguous, however, is that the purpose of FACTA is to limit how many digits of a credit card number appear on a receipt in order to keep credit card numbers away from thieves. As the *Broderick* court found, applying FACTA to the beginning digits would lead to absurd results.

---

[2] Even this action were to reach the class certification stage, it is unlikely that plaintiffs would meet the requirements of Federal Rule of Civil Procedure 23 because, given the nature of FedEx Office's business, a significant portion of the putative class members likely used FedEx Office's services for business purposes and therefore would not qualify as "consumers" under the FCRA. 15 U.S.C. § 1681n ("Any person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any ***consumer*** is liable to that ***consumer*** . . . .") (emphasis added); *Najarian v. Avis Rent A Car System, et al.,* 2007 WL 4682071, at *3 (C.D. Cal. June 11, 2007) (disaffirmed on other grounds in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010)); *Azoiani v. Love's Travel Stops and Country Stores, Inc.*, 2007 WL 4811627, at *4 (C.D. Cal. Dec. 18, 2007) (denying class certification because individualized determinations existed as to which customers were "consumers"); *Price v. Lucky Strike Entertainment, Inc.*, 2007 WL 4812281, at *3 (C.D. Cal. Aug. 31, 2007) (denying class certification, due to necessary individualized determinations as to which customers were "consumers"); *Arabian v. Sony Electronics, Inc.,* 2007 WL 627977 (S.D. Cal. Feb. 22, 2007) (class representatives failed to qualify as "consumers" where they purchased laptops for commercial purposes).

And, as noted by two courts in this district, Congress' express articulation in the statute focusing on the last digits of a credit care are precisely because the first several digits only contain card issuer information, and could not lead to identity theft. Given this framework, it is appropriate for the court to look beyond the language of the statute and interpret FACTA in accordance with Congress's intent. For the foregoing reasons, FedEx Office respectfully requests that this court grant summary judgment in its favor.

DATED: September 28, 2011   Sedgwick LLP

By: /s/ *Stephanie Sheridan*
Stephanie Sheridan
Alison Williams
Attorneys for Defendant
FEDEX OFFICE AND PRINT SERVICES, INC.