1  STEPHANIE SHERIDAN  (State Bar No.135910)
   stephanie.sheridan@sedgwicklaw.com
2  ALISON WILLIAMS       (State Bar No. 251689)
   alison.williams@sedgwicklaw.com
3  SEDGWICK LLP
   333 Bush Street, 30th Floor
4  San Francisco, CA  94104
   Telephone:    415.781.7900
5  Facsimile:    415.781.2635
6
7  Attorneys for Defendant
   FEDEX OFFICE AND PRINT SERVICES, INC.
8
9
10              UNITED STATES DISTRICT COURT
11             CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| 13 RAZMIG TCHOBOIAN and<br>ANGELA POTIKYAN, on behalf<br>14 of themselves and all others<br>similarly situated,<br>15<br>16             Plaintiffs,<br>17      v.<br>18 FEDEX OFFICE AND PRINT<br>SERVICES, INC. (f/k/a FEDEX<br>19 KINKOS OFFICE AND PRINT<br>SERVICES, INC.); DOES 1 through<br>20 10, inclusive,<br>21             Defendants.<br>22 | Case No.: SACV10-01008-JAK-(MLGx)<br><br>**DECLARATION OF STEPHANIE<br>SHERIDAN IN SUPPORT OF<br>FEDEX OFFICE AND PRINT<br>SERVICES, INC.'S MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Judge:   Hon. John A. Kronstadt<br>Date:    November 7, 2011<br>Time:    1:30 p.m.<br>Ctrm.:   750 – 7th Floor |

23
24
25
26
27
28

-1-

DECLARATION OF STEPHANIE SHERIDAN IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT

1

2   I, Stephanie Sheridan, hereby declare and state:

3       1.      I am an attorney at law duly admitted to the bar of this court and

4   licensed to practice in the State of California.  I am a partner with the law firm of

5   Sedgwick LLP, counsel of record herein for defendant FedEx Office and Print

6   Services, Inc. ("FedEx Office") in the above-referenced action.  I have personal

7   knowledge of the facts stated herein and if called upon to testify, could and would

8   competently testify thereto.

9       2.      Attached hereto as **Exhibit 1** is a true and correct copy of the First

10  Amended Complaint, filed in this action on July 9, 2010.

11      3.      Attached hereto as **Exhibit 2** is a true and correct copy of pages and

12  relevant exhibits from the Deposition Transcript of Razmig Tchoboian, taken on

13  June 24, 2011.

14      4.      Attached hereto as **Exhibit 3** is a true and correct copy of pages and

15  relevant exhibits from the Deposition Transcript of Angela Potikyan, taken on June

16  24, 2011.

17      I declare that the foregoing is true and correct.

18      Executed this 28th day of September 2011, at San Francisco, California.

19

20

21                                          Stephanie Sheridan

22

23

24

25

26

27

28

EXHIBIT 1

1  Chant Yedalian, State Bar No. 222325
   (chant@chant.mobi)
2  CHANT & COMPANY
   A Professional Law Corporation
3  10866 Wilshire Blvd., Suite 400
   Los Angeles, CA 90024
4  Phone: 424.901.8377
   Fax: 424.744.4177
5
   Counsel for Plaintiffs
6

7

8

9                 UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11
   RAZMIG TCHOBOIAN and            )  Case No. SACV10-1008 AG
12 ANGELA POTIKYAN, on behalf of   )  (MLGx)
   themselves and all others similarly )
13 situated,                       )
                                   )  FIRST AMENDED COMPLAINT
14                    Plaintiffs,  )  CLASS ACTION
                                   )
15 v.                              )  [15 U.S.C. §§ 1681 et seq.]
                                   )
16 FEDEX OFFICE AND PRINT          )
   SERVICES, INC. (f/k/a FEDEX     )
17 KINKO'S OFFICE AND PRINT        )  DEMAND FOR JURY TRIAL
   SERVICES, INC.); and DOES 1     )
18 through 10, inclusive,          )
                                   )
19                    Defendants.  )
                                   )
20 _____

21

22

23       Plaintiffs, by their counsel of record, bring this action on their own behalf

24 and on behalf of all others similarly situated, and allege the following upon

25 personal knowledge, or where there is not personal knowledge, upon information

26 and belief:

27

28                                  1

FILED
2010 JUL -9 AM 10: 11

_____
         FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.    In 2003, Congress passed and the President signed, the Fair and Accurate Credit Transactions Act ("FACTA") to assist in the prevention of identity theft and credit and debit card fraud. In the statement provided by the President during the signing of the bill, the President declared that:

> "This bill also confronts the problem of identity theft. A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs. With this legislation, the Federal Government is protecting our citizens by taking the offensive against identity theft."

2.    A main provision of FACTA (codified as 15 U.S.C. § 1681c(g) of the Fair Credit Reporting Act), provides that:

> "**no person** that accepts credit cards or debit cards for the transaction of business **shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder** at the point of the sale or transaction."

3.    The law gave merchants who accept credit and or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. Although FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC.), and the other defendants herein had up to three years to comply, Defendants have willfully violated this law and failed to protect Plaintiffs and others similarly situated against identity theft and credit and debit card fraud by printing more than the last five digits of the card number on receipts provided to debit card and credit card cardholders transacting business with Defendants.

//

2

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1  4.  Plaintiffs on behalf of themsleves and all others similarly situated

2 bring this action against FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a

3 FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC.), and DOES 1

4 through 10 (collectively referred to as "Defendants") based on Defendants'

5 violations of 15 U.S.C. §§ 1681 *et seq.*

6  5.  Plaintiffs seek, on behalf of themselves and the class, statutory

7 damages, punitive damages, costs and attorney fees, all of which are expressly

8 made available by statute, 15 U.S.C. §§ 1681 *et seq.*, for Defendants' unlawful

9 practice of violating FACTA's provisions intended to safeguard against identity

10 theft and credit and debit card fraud.

11

12        **JURISDICTION AND VENUE**

13  6.  This Court has federal question jurisdiction pursuant to 28 U.S.C. §

14 1331 and 15 U.S.C. § 168lp.

15  7.  Plaintiffs' claims asserted herein arose in this judicial district and all

16 Defendants do business in and reside in this judicial district.

17  8.  Venue in this judicial district is proper under 28 U.S.C. § 1391(b)

18 and (c) in that FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX

19 KINKO'S OFFICE AND PRINT SERVICES, INC.) has several physical retail

20 stores and other physical facilities within Orange County, does extensive business

21 in and otherwise intentionally avails itself of the markets in Orange County

22 through the promotion, marketing, sale, and distribution of goods and services in

23 Orange County, and this is a class action case in which a substantial part of the

24 acts and omissions giving rise to the claims occurred within Orange County and

25 this judicial district.

26 //

27 //

28           3

---

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**PARTIES**

9.     Plaintiff, RAZMIG TCHOBOIAN, is and at all times relevant hereto was a resident of the State of California and the County of Los Angeles.

10. ·  Plaintiff, ANGELA POTIKYAN, is and at all times relevant hereto was a resident of the State of California and the County of Los Angeles.

11.     Defendant FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC.) is a corporation organized and existing under the laws of the State of Texas.  FEDEX OFFICE AND PRINT SERVICES, INC. operates over 1,900 retail locations worldwide, including many locations in Orange County, where it offers goods and services to the public.

12.     At all times mentioned in this First Amended Complaint, Defendants and each of them were the agents, employees, joint venturer, and or partners of each other and were acting within the course and scope of such agency, employment, joint venturer and or partnership relationship and or each of the Defendants ratified and or authorized the conduct of each of the other Defendants.

13.     Plaintiffs do not know the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe that each of the DOE defendants was in some manner legally responsible for the wrongful and unlawful conduct and harm alleged herein.  Plaintiffs will amend this First Amended Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations.

//

//

//

4

## CLASS ACTION ALLEGATIONS

14.     Plaintiffs bring this class action on behalf of themselves and all other persons similarly situated pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

15.     The class which Plaintiffs seek to represent is defined as:

> All consumers to whom Defendants, after December 3, 2006, provided an electronically printed receipt at the point of a sale or transaction, on which receipt Defendants printed more than the last five digits of the consumer's credit card or debit card number (the "PLAINTIFF CLASS").

16.     Excluded from the PLAINTIFF CLASS are Defendants and their directors, officers and employees.

17.     Numerosity (Fed. R. Civ. P. 23(a)(1)):  The PLAINTIFF CLASS is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of their claims through this class action will benefit both the parties and this Court.

18.     Plaintiffs are informed and believe and thereon allege that there are, at a minimum, thousands (*i.e.*, two thousand or more) of members that comprise the PLAINTIFF CLASS.

19.     The exact size of the PLAINTIFF CLASS and identities of individual members thereof are ascertainable through Defendants' records, including but not limited to Defendants' sales and transaction records.

20.     Members of the PLAINTIFF CLASS may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and or appropriate by the Court.

5

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

21.     Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiffs' claims are typical of the claims of the entire PLAINTIFF CLASS. The claims of Plaintiffs and members of the PLAINTIFF CLASS are based on the same legal theories and arise from the same unlawful conduct.

22.     Plaintiffs and members of the PLAINTIFF CLASS were each customers of Defendants, each having made a purchase or transacted other business with Defendants after December 3, 2006 using a credit and or debit card. At the point of such sale or transaction with Plaintiffs and members of the PLAINTIFF CLASS, Defendants provided to Plaintiffs and each member of the PLAINTIFF CLASS a receipt in violation of 15 U.S.C. §1681c(g) (*i.e.*, a receipt on which is printed more than the last five digits of the credit or debit card number).

23.     Common Questions of Fact and Law (Fed. R. Civ. P. 23(a)(2) and (b)(3)): There are a well-defined community of interest and common questions of fact and law affecting the members of the PLAINTIFF CLASS.

24.     The questions of fact and law common to the PLAINTIFF CLASS predominate over questions which may affect individual members and include the following:

(a)     Whether Defendants' conduct of providing Plaintiffs and the PLAINTIFF CLASS with sales or transaction receipts whereon Defendants printed more than the last five digits of the credit card or debit card number violated the FACTA, 15 U.S.C. §§ 1681 *et seq.*;

(b)     Whether Defendants' conduct was willful; and

(c)     Whether Plaintiffs and the PLAINTIFF CLASS are entitled to statutory damages, punitive damages, costs and or attorney fees for Defendants' acts and conduct.

//

6

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

25.   <u>Adequacy of Representation</u> (Fed. R. Civ. P. 23(a)(4)): Plaintiffs are
each an adequate representative of the PLAINTIFF CLASS because each of their
interests do not conflict with the interests of the PLAINTIFF CLASS which
Plaintiffs seeks to represent.  Each of the Plaintiffs will fairly, adequately, and
vigorously represent and protect the interests of the PLAINTIFF CLASS and each
has no interests antagonistic to the PLAINTIFF CLASS. Plaintiffs have retained
counsel who is competent and experienced in the prosecution of class action
litigation.

26.   <u>Superiority</u> (Fed. R. Civ. P. 23(b)(1) and 23(b)(3)):  A class action
is superior to other available means for the fair and efficient adjudication of the
claims of the PLAINTIFF CLASS.  While the aggregate damages which may be
and if awarded to the PLAINTIFF CLASS are likely to be in the millions of
dollars, the actual damages suffered by individual members of the PLAINTIFF
CLASS are relatively small.  As a result, the expense and burden of individual
litigation makes it economically infeasible and procedurally impracticable for
each member of the PLAINTIFF CLASS to individually seek redress for the
wrongs done to them.  Plaintiffs do not know of any other litigation already
commenced by or against any member of the PLAINTIFF CLASS concerning
Defendants' printing of more than the last five digits of the credit or debit card
number on customer receipts. The likelihood of individual PLAINTIFF CLASS
members prosecuting separate claims is remote.  Individualized litigation would
also present the potential for varying, inconsistent or contradictory judgments,
and would increase the delay and expense to all parties and the court system
resulting from multiple trials of the same factual issues.  In contrast, the conduct
of this matter as a class action presents fewer management difficulties, conserves
the resources of the parties and the court system, and would protect the rights of
each member of the PLAINTIFF CLASS.  Plaintiffs know of no difficulty to be

7

1  encountered in the management of this action that would preclude its maintenance
2  as a class action.

3

4  **FIRST CAUSE OF ACTION**

5  **For Violation of 15 U.S.C. §§ 1681 *et seq*.**

6  **(On Behalf of Plaintiffs and the PLAINTIFF CLASS**

7  **as against all Defendants including DOES 1 through 10)**

8      27.    Plaintiffs hereby incorporate by reference the allegations contained
9  in this First Amended Complaint.

10     28.    Plaintiffs assert this claim on behalf of themselves and the
11 PLAINTIFF CLASS against Defendants and each of them.

12     29.    Title 15 U.S.C. § 1681c(g)(1) provides that:

13     **"no person** that accepts credit cards or debit cards for the

14     transaction of business **shall print more than the last 5 digits of**

15     **the card number or the expiration date upon any receipt**

16     **provided to the cardholder** at the point of the sale or transaction."

17     30.    By its express terms, 15 U.S.C. § 1681c(g)(1) applies to "any cash
18 register or other machine or device that electronically prints receipts for credit
19 card or debit card transactions" after December 3, 2006 (15 U.S.C. §
20 1681c(g)(3)).

21     31.    Defendants transact business in the United States and accept credit
22 cards and or debit cards in the course of transacting business with persons such
23 as Plaintiffs and members of the PLAINTIFF CLASS.  In transacting such
24 business, Defendants use cash registers and or other machines or devices that
25 electronically print receipts for credit card and or debit card transactions.

26     32.    During the year 2010, Defendants, at the point of a sale or
27 transaction with Plaintiff RAZMIG TCHOBOIAN, provided Plaintiff RAZMIG

28                                    8

1  TCHOBOIAN with one or more electronically printed receipts on each of which
2  Defendants printed more than the last five digits of Plaintiff RAZMIG
3  TCHOBOIAN's credit card or debit card number.

4      33.   During the year 2010, Defendants, at the point of a sale or
5  transaction with Plaintiff ANGELA POTIKYAN, provided Plaintiff ANGELA
6  POTIKYAN with one or more electronically printed receipts on each of which
7  Defendants printed more than the last five digits of Plaintiff ANGELA
8  POTIKYAN's credit card or debit card number.

9      34.   After December 3, 2006, Defendants, at the point of a sale or
10 transaction with members of the PLAINTIFF CLASS, provided each member of
11 the PLAINTIFF CLASS with one or more electronically printed receipts on each
12 of which Defendants printed, for each respective PLAINTIFF CLASS member,
13 more than the last five digits of such member's credit or debit card number.

14     35.   As set forth above, FACTA was enacted in 2003 and gave merchants
15 who accept credit and or debit cards up to three years to comply with its
16 requirements, requiring full compliance with its provisions no later than
17 December 4, 2006.

18     36.   Defendants and each of them knew of and were well informed about
19 the law, including specifically FACTA's requirements concerning the truncation
20 of credit and debit card numbers and prohibition on the printing of expiration
21 dates. In fact, FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX
22 KINKO'S OFFICE AND PRINT SERVICES, INC.) was sued at least twice in
23 December 2006 and once in 2007 (hereinafter collectively referred to as the
24 "2006 and 2007 FACTA Lawsuits") for violating FACTA through its printing of
25 credit and debit card expiration dates on its customer receipts. By no later than
26 February 2007, FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX
27 KINKO'S OFFICE AND PRINT SERVICES, INC.) had a copy of each complaint

28                                      9

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1  filed in the 2006 and 2007 FACTA Lawsuits and was well aware of each of the
2  2006 and 2007 FACTA Lawsuits, including, but not limited to, the provisions of
3  15 U.S.C. § 1681c(g) and 15 U.S.C. § 1681n expressly pled in each of the 2006
4  and 2007 FACTA Lawsuits.

5      37.    As additional examples, but without limitation, several years ago,
6  VISA, MasterCard, the PCI Security Standards Council (a consortium founded
7  by VISA, MasterCard, Discover, American Express and JCB), companies that sell
8  cash register and other devices for the processing of credit or debit card
9  payments, and other entities informed Defendants and each of them about
10  FACTA, including its specific requirements concerning the truncation of credit
11  and debit card numbers and prohibition on the printing of expiration dates, and
12  Defendants' need to comply with same.

13      38.    In addition, many companies such as VISA and MasterCard devised
14  and implemented policies well before the operative date of FACTA's
15  requirements, wherein such policies VISA, MasterCard and others required
16  Defendants (and informed Defendants of the requirements) to truncate credit and
17  debit card numbers and prevent the printing of expiration dates on receipts. For
18  example, on March 6, 2003, VISA USA's CEO, Carl Pascarella, held a press
19  conference on Capitol Hill with Senators Dianne Feinstein, Judd Gregg, Jon
20  Corzine and Patrick Leahy, and publically announced Visa USA's new truncation
21  policy to protect consumers from identity theft. At the March 2003 press
22  conference, Mr. Pascarella explained, as follows:

23          "Today, I am proud to announce an additional measure to
24      combat identity theft and protect consumers. **Our new receipt**
25      **truncation policy will soon limit cardholder information on**
26      **receipts to the last four digits of their accounts. The card's**
27      **expiration date will be eliminated from receipts altogether. This**

28                                    10

1    is an added security measure for consumers that doesn't require any

2    action by the cardholder.  We are proud to be the first payments

3    brand to announce such a move to protect cardholders' identities by

4    restricting access to their account information on receipts.

5           **The first phase of this new policy goes into effect July 1,**

6    **2003 for all new terminals.** I would like to add, however, that even

7    before this policy goes into effect, **many merchants have already**

8    **voluntarily begun truncating receipts, thanks to groundwork**

9    **that we began together several years ago.**

10         Receipt truncation is good news for consumers, and bad news

11    for identity thieves. Identity thieves thrive on discarded receipts and

12    documents containing consumers' information such as payment

13    account numbers, addresses, Social Security numbers, and more.

14    Visa's new policy will protect consumers by limiting the information

15    these thieves can access." (Statements made by VISA USA's CEO,

16    Carl Pascarella at a March 6, 2003 press conference held at Capitol

17    Hill with Senators Dianne Feinstein, Judd Gregg, Jon Corzine and

18    Patrick Leahy.)

19         39.    Moreover, the Government, through the Federal Trade Commission

20    ("FTC"), provided notice to businesses on no less than three separate occasions

21    in 2007 reminding them of the requirement to truncate credit and debit card

22    information on receipts. In one such notice, entitled "FTC Business Alert" "Slip

23    Showing? Federal Law Requires All Businesses to Truncate Credit Card

24    Information on Receipts," and dated May 2007, the FTC reminded businesses,

25    among other things, of the following:

26           "What's on the credit and debit card receipts you give your

27    customers?  The Federal Trade Commission (FTC), the nation's

28                   11

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

consumer protection agency, says it's time for companies to check their receipts and make sure they're complying with a law that's been in effect for all businesses since December 1, 2006.

According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten — or truncate — the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:

ACCT:***********12345

EXP:****

Why is it important for businesses to make sure they're complying with this law? Credit card numbers on sales receipts are a "golden ticket" for fraudsters and identity thieves. Savvy businesses appreciate the importance of protecting their customers — and themselves — from credit card crime."

40.     Despite knowing and being repeatedly informed about FACTA and the importance of truncating credit and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had over three years to comply with FACTA's requirements, Defendants and each of them knowingly willfully, intentionally, and recklessly violated FACTA's requirements by, *inter alia*, printing more than the last five digits of the card number upon the receipts provided to the cardholders with whom they transact business.

41.     Defendants' business peers and competitors brought their credit and debit card receipt printing processes in compliance with FACTA's requirements by, for example, doing things such as programming their card machines and

12

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1  devices to prevent them from printing more than the last five digits of the card
2  number and or the expiration date upon the receipts provided to the cardholders.
3  Defendants could have readily done the same.

4      42.    Instead, Defendants knowingly, willfully, intentionally, and
5  recklessly disregarded FACTA's requirements and used cash registers and or
6  other machines or devices that printed receipts in violation of FACTA.

7      43.    Defendants knowingly, willfully, intentionally, and recklessly
8  violated FACTA in conscious disregard of the rights of Plaintiffs and the
9  PLAINTIFF CLASS.

10      44.    Defendants have also harmed Plaintiffs and the PLAINTIFF CLASS
11  by exposing them to at least an increased risk of identity theft and credit and or
12  debit card fraud.

13      45.    As a result of Defendants' willful violations of FACTA, Defendants
14  are liable to Plaintiffs and each member of the PLAINTIFF CLASS in the
15  statutory damage amount of "not less than $100 and not more than $1,000" for
16  each violation. (15 U.S.C. § 1681n.)

17

18                    **PRAYER FOR RELIEF**

19      WHEREFORE, Plaintiffs pray for:

20      1.    An order certifying the PLAINTIFF CLASS and appointing
21  Plaintiffs as the representatives of the PLAINTIFF CLASS, and appointing
22  counsel of record for Plaintiffs as counsel for the PLAINTIFF CLASS;

23      2.    An award to Plaintiffs and the PLAINTIFF CLASS of statutory
24  damages pursuant to 15 U.S.C. § 1681n for Defendants' willful violations (up to
25  but not exceeding the fullest extent allowed under the Constitution of the United
26  States);

27  //

28                        13

---

        FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1       3.    An award to Plaintiffs and the PLAINTIFF CLASS of punitive

2   damages pursuant to 15 U.S.C. § 1681n (up to but not exceeding the fullest

3   extent allowed under the Constitution of the United States);

4       4.    Payment of costs of suit herein incurred pursuant to, *inter alia*, 15

5   U.S.C. § 1681n;

6       5.    Payment of reasonable attorney's fees pursuant to, *inter alia*, 15

7   U.S.C. § 1681n; and

8       6.    For such other and further relief as the Court may deem proper.

9

10  Dated: July 9, 2010                  CHANT & COMPANY

11                                  A Professional Law Corporation

12

13                           By: _____

14                                CHANT YEDALIAN
                              Counsel for Plaintiffs

15

16

17                   **DEMAND FOR JURY TRIAL**

18      Plaintiffs demand a trial by jury on all claims so triable.

19

20  Dated: July 9, 2010                  CHANT & COMPANY

21                                    A Professional Law Corporation

22

23                           By: _____

24                                CHANT YEDALIAN
                              Counsel for Plaintiffs

25

26

27

28                          14

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

# EXHIBIT 2

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RAZMIG TCHOBOIAN and ANGELA )
POTIKYAN, on behalf of )
themselves and all others )
similarly situated, )
)
            Plaintiffs, )
)
    v. )No. 8:10-cv-01008-JAK-MLG
)
FEDEX OFFICE AND PRINT )
SERVICES, INC. (f/k/a FEDEX )
KINKOS OFFICE AND PRINT )
SERVICES, INC.); DOES 1 )
through 10, inclusive, )
)
            Defendants. )
_____)

DEPOSITION OF RAZMIG TCHOBOIAN

JUNE 24, 2011

Salvador Gutierrez, CSR No. 9825
   323910



**BARKLEY**
*Court Reporters*
barkley.com

(310) 207-8000 Los Angeles   (415) 433-5777 San Francisco   (949) 955-0400 Irvine   (858) 455-5444 San Diego
(916) 922-5777 Sacramento   (408) 885-0550 San Jose   (760) 322-2240 Palm Springs   (951) 686-0606 Riverside
(818) 702-0202 Woodland Hills   (212) 808-8500 New York City   (347) 821-4611 Brooklyn   (518) 490-1910 Albany
(516) 277-9494 Garden City   (914) 510-9110 White Plains   (312) 379-5566 Chicago   (702) 366-0500 Las Vegas
+33 1 70 72 65 26 Paris-France   +852 3693 1522 Hong Kong

1        A    I went through it with my lawyer.

2        Q    Okay.  When you say you went through it with

3    your lawyer, did you read every word on every page or

4    did you just kind of skim it?

5        A    Yeah, I just kind of skimmed it.

6        Q    Okay.  Do you want to go ahead, Chant, and give

7    me Exhibits 3 and 4, do you have those?

8             MR. YEDALIAN:  Sure.

9             MS. SHERIDAN:  We can do it the same way we did

10   last time.

11            MR. YEDALIAN:  Okay.  So is that clear to the

12   court reporter, that for purposes of protecting the

13   revelation of the first two and the last four digits, we

14   are going to go ahead and use the stipulation that we

15   used in Ms. Potikyan's deposition?

16            DEPOSITION OFFICER:  Yes.

17            MR. YEDALIAN:  And consistent with that, we're

18   producing as Exhibit 3 redacted receipts with the first

19   two and last four digits having been redacted.

20            And again, consistent with that, we're

21   producing the same copy of the exhibit -- of Exhibit 3

22   without any information having been redacted.

23            And so the unredacted receipts we're going to

24   mark as Exhibit 4, and consistent with our earlier

25   stipulation, Exhibit 4 will be prepared under seal by

                              26

BARKLEY
Court Reporters

 1    the court reporter.

 2         (Exhibit 3 and Exhibit 4 were marked for

 3    identification.   Exhibit 4 is bound under separate

 4    cover.)

 5         Q    BY MS. SHERIDAN:   Can you pronounce your last

 6    name for me again?

 7         A    My last name?

 8         Q    Yes.

 9         A    Tchoboian, T-c-h-o-b-o-i-a-n.

10         Q    Is it French?

11         A    It's Armenian.

12         Q    Okay.   The only Armenian name I can pronounce

13    is Kardashian just 'cause they're on TV.   Yours is

14    harder.

15         Okay.   So I'd like to show to you copies of

16    Exhibits 3 and 4.   As your lawyer just explained,

17    they're copies of your receipt, I believe, except that

18    one them has some your numbers crossed out.

19         Thanks, Chant?

20         MR. YEDALIAN:   Sure.

21         Q    BY MS. SHERIDAN:   Is this a copy of -- and it

22    looks like of to receipts from a purchase you made at

23    the Glendale FedEx office store on North Brand Avenue on

24    January 17, 2010?

25         MR. YEDALIAN:   Actually, there's -- there are

                              27

RAZMIG TCHOBOIAN

BARKLEY
Court Reporters

1    three receipts on that --

2              MS. SHERIDAN:  Okay.

3              MR. YEDALIAN:  -- if you refer to the second

4    page.

5              MS. SHERIDAN:  So this document has three

6    pages?

7              MR. YEDALIAN:  It has three pages, a total of

8    five receipts.  The first three receipts are

9    January 17th, 2010, based on what's stated on the

10   receipts.

11             MS. SHERIDAN:  And then the last to receipts

12   are January 28, 2010, okay.

13        Q    Are these copies of your receipts?

14        A    Yes.

15        Q    For the January 17 three purchases, do you

16   remember what you were making copies of at that time?

17        A    If I remember independently or from what I see

18   on the -- on the -- on the receipts?

19        Q    That's a good point.

20             Let's ask first, independently, do you remember

21   what purchases you were making for copies or whatever

22   else that day?

23             MR. YEDALIAN:  Objection.  Irrelevant.

24             But you can answer.

25             THE WITNESS:  Not exactly, no.

28

BARKLEY
Court Reporters

1      Q     BY MS. SHERIDAN:   Does looking at the document

2   help you?

3      A     Yes.

4      Q     Okay.   So from looking at the document, can you

5   tell me what types of things you were purchasing at the

6   FedEx office store in Glendale on January 17, 2010?

7            MR. YEDALIAN:   Objection.   Irrelevant.

8            But you can answer.

9            THE WITNESS:   I was purchasing computer time

10   and photocopies and prints.

11      Q     BY MS. SHERIDAN:   You said computer -- oh,

12   computer time?

13      A     Yes.

14      Q     Okay.   Computer time, photocopies, and prints,

15   and for what purpose?

16      A     I'm not sure.   I don't remember.

17      Q     Okay.   When you say computer time, can you tell

18   which of these receipts was for computer time?

19      A     The very first one.

20      Q     The one that is for $19.26?

21      A     Yeah, the one that says, "Total, $20.64."

22            MR. YEDALIAN:   And Stephanie, just to be clear

23   about this, are we now just focusing on the first three

24   receipts or any of the receipts?

25            MS. SHERIDAN:   We're just talking about the

29

BARKLEY
Court Reporters

1    of electronic calendar?

2         MR. YEDALIAN:  Objection.  Irrelevant.

3         THE WITNESS:  Yeah, but everything I have on my

4    calendar are --

5         MR. YEDALIAN:  And further object based on his

6    privacy rights.

7         But subject to those objections and without

8    waiving them, go ahead, respond.

9         THE WITNESS:  Should I answer?

10        MR. YEDALIAN:  Yeah, go ahead.

11        THE WITNESS:  Everything that's on my calendar

12   is just the dates that -- the dates to pay my bills, the

13   due dates for my bills for my credit cards, et cetera.

14   Q    BY MS. SHERIDAN:  So some people on their

15   calendars keep track of, you know, who I had lunch with

16   this day or --

17   A    No.

18   Q    -- or if I had a meeting with somebody.

19        You don't do that?

20   A    I don't do this.

21   Q    Uh-huh, yeah.

22        The receipts for -- let me see what she needs.

23        (Woman walks in.)

24   Q    BY MS. SHERIDAN:  The receipts that are

25   attached to Exhibit 3 at the end, that look to be two

42

BARKLEY
Court Reporters

```
 1    receipts for January 28th, when you look at those

 2    receipts, looks like the first one is for copies of

 3    various documents for a total of $17.94 and the second

 4    receipt looks like further copies for a total of

 5    66 cents.

 6              Do you see that?

 7              MR. YEDALIAN:  Objection.  Vague and ambiguous.

 8    I don't know that that accurately reflects the receipts,

 9    but . . .

10        Q    BY MS. SHERIDAN:  Are you looking at the

11    receipts?

12        A    Yeah, the two last receipts?

13        Q    Yeah.

14        A    The ones for January 28th?

15        Q    Right.

16        A    Yes.

17        Q    So were those the accurate totals that I just

18    stated?

19        A    You said 17.94 and 66 cents?

20        Q    Yes.

21        A    Yes.

22        Q    Okay.  Do you remember what these were for?

23        A    The receipts for what I did that day?

24        Q    Yeah.

25        A    No, I don't remember.
```

43

BARKLEY
Court Reporters

1          You don't think I was $1 million?

2     A    No.

3     Q    But you don't have any idea how much he got?

4     A    I think it was less than $500,000.

5     Q    Okay.  Were you ever hurt or damaged in any way

6  from the parking receipt that you got that contained

7  more than the last four or five digits of your credit

8  card number?

9     A    If I got directly hurt?

10    Q    Right.

11    A    I don't know yet.  I mean, it's something that

12  may not happen right away, so -- but as for now, as far

13  as I know, there's nothing -- I haven't -- no, I haven't

14  been hurt directly.

15    Q    Have you been hurt indirectly?

16    A    I don't know.

17    Q    As far as you know, there's nothing that's

18  happened to you that's hurt you?

19    A    As far as I know, yes.

20    Q    Okay.  Same with the FedEx receipts, as far as

21  you know, has there been anything that's happened to you

22  that's damaged or injured you in any way because of

23  these receipts that we've been talking about in

24  Exhibit 3 and 4?

25    A    As far as I know, no.

RAZMIG TCHOBOIAN

**BARKLEY**
*Court Reporters*

1    Q    Okay.  Have you ever been a victim of identity

2    theft, as far as you know?

3    A    No.

4    Q    Has anyone you know ever been a victim of

5    identity theft?

6    A    Anyone that I know, I don't remember having

7    talked about this with anyone.

8    Q    Okay.

9    A    I haven't discussed with anyone.

10   Q    Is it a topic that's important to you?

11   A    Identity theft?

12   Q    Yeah.

13   A    Yeah, I think it's very important.

14   Q    It's a very important topic to you, yet, you

15   haven't talked to anybody about it?

16   A    No.

17   Q    Have you talked --

18   A    It's part of your privacy, and I think everyone

19   should be -- should -- should be -- I mean, it's a very

20   French conception of privacy, but I think anyone should

21   be -- anything that's private should remain private.

22        It's something I don't really talk about as --

23   same as my friend's salaries or same thing -- there are

24   things that I don't really discuss with other people.

25   Q    So when you found out about FACTA, you didn't

66

RAZMIG TCHOBOIAN

BARKLEY
Court Reporters



**FedEx Office.**

FedEx Kinko's is now FedEx Office

January 17, 2010 18:22
Receipt #: 705271                      Page: 1
MasterCard #: ■XXXXXXXXXX■
2010/01/17 18:58

| Qty | Description | Amount |
|-----|-------------|--------|
| 20 | Minutes.CA3702CRW08 | 5.00 |
| 2 | Prints:Black_and_White_Printer 19827.. | 0.98 |
| 1 | Prints:Black_and_White_Printer 19831.. | 0.49 |
| 1 | Prints:Black_and_White_Printer 19832.. | 0.49 |
| 2 | Prints:Black_and_White_Printer 19833.. | 0.98 |
| 1 | Prints:Black_and_White_Printer 19835.. | 0.49 |
| 1 | Prints:Color_Printer 19836 | 0.90 |
| 12 | Prints:Black_and_White_Printer 19837.. | 5.88 |
| 4 | Prints:Color_Printer 19838 | 3.96 |

|  | SubTotal | 18.26 |
|  | Taxes | 1.38 |
|  | Total | 20.64 |

The Cardholder agrees to pay the Issuer of the charge
card in accordance with the agreement between the
Issuer and the Cardholder.

225 N. BRAND BLVD.
GLENDALE, CA 91203
(918) 500-1811
www.fedexkinkos.com
Please recycle this receipt.



**FedEx Office.**

FedEx Kinko's is now FedEx Office

January 17, 2010 19:33
Receipt #: 705275                      Page: 1
MasterCard #: ■XXXXXXXXXX■
2010/01/17 18:24

| Qty | Description | Amount |
|-----|-------------|--------|
| 57 | ES B&W S/S White 8.5 x11 | 5.70 |

|  | SubTotal | 5.70 |
|  | Taxes | 0.56 |
|  | Total | 6.26 |

The Cardholder agrees to pay the Issuer of the charge
card in accordance with the agreement between the
Issuer and the Cardholder.

225 N. BRAND BLVD.
GLENDALE, CA 91203
(918) 500-1811
www.fedexkinkos.com
Please recycle this receipt.

3

DEFT(S) ____ PLF(S) ____ EXHIBIT for I.D.
SALVADOR GUTIERREZ, CSR #9825
DATE: 6-24-11
WITNESS: TCHIVIVIAN

3 pages



FedEx Kinko's is now FedEx Office

January 17,2010 18:38                          Page: 1
Receipt #: 705277
MasterCard #: ●XXXXXXXXXX●●●●
2010/01/17 18:33

Qty   Description                              Amount

21    ES Color S/S LTR                         10.29


              SubTotal                         10.29
              Taxes                             1.00
              Total                            11.29

The Cardholder agrees to pay the Issuer of the charge
card in accordance with the agreement between the
Issuer and the Cardholder.


225 N. BRAND BLVD.
GLENDALE, CA 91203
(818) 500-1811
www.fedexkinkos.com
Please recycle this receipt.



FedEx Kinko's is now FedEx Office



FedEx Kinko's is now FedEx Office

| | | |
|---|---|---|
| January 28,2010 14:20 | | Page: 1 |
| Receipt #: 707883 | | |
| MasterCard #: XXXXXXXXXX | | |
| 2010/01/28 13:31 | | |

| Qty | Description | Amount |
|---|---|---|
| 19 | Minutes:CA3702CRW08 | 4.75 |
| 1 | Prints:Black and White Printer 21297... | 0.49 |
| 1 | Prints:Color Printer 21300 | 0.99 |
| 1 | Prints:Color Printer 21300 | 0.99 |
| 1 | Prints:Black and White Printer 21301 . | 0.49 |
| 1 | Prints:Black and White Printer 21303... | 0.49 |
| 1 | Prints:Black and White Printer 21305... | 0.49 |
| 1 | Prints:Black and White Printer 21306... | 0.49 |
| 1 | Prints:Color Printer 21307 | 0.99 |
| 1 | Prints:Black and White Printer 21309... | 0.49 |
| 7 | Prints:Black and White Printer 21310... | 3.43 |
| 2 | Prints:Black and White Printer 21311... | 0.98 |
| 2 | ES B&W S/S White 8.5 x11 | 0.20 |
| 15 | ES B&W S/S White 8.8 x11 | 1.50 |

| | |
|---|---|
| SubTotal | 16.77 |
| Taxes | 1.17 |
| Total | 17.94 |

The Cardholder agrees to pay the Issuer of the charge card in accordance with the agreement between the Issuer and the Cardholder.

225 N. BRAND BLVD.
GLENDALE, CA 91203
(818) 500-1811
www.fedexkinkos.com
Please recycle this receipt.

| | | |
|---|---|---|
| January 28,2010 14:26 | | Page: 1 |
| Receipt #: 707907 | | |
| MasterCard #: XXXXXXXXXX | | |
| 2010/01/28 14:24 | | |

| Qty | Description | Amount |
|---|---|---|
| 8 | ES B&W S/S White 8.5 x11 | 0.60 |

| | |
|---|---|
| SubTotal | 0.60 |
| Taxes | 0.06 |
| Total | 0.66 |

The Cardholder agrees to pay the Issuer of the charge card in accordance with the agreement between the Issuer and the Cardholder.

225 N. BRAND BLVD.
GLENDALE, CA 91203
(818) 500-1811
www.fedexkinkos.com
Please recycle this receipt

1    STATE OF CALIFORNIA        )
                                ) ss.
2    COUNTY OF LOS ANGELES      )

3

4        I, Mary Badillo      , hereby certify:

5        I am an employee of Barkley Court Reporters,

6    duly authorized agent for the deposition officer that

7    stenographically recorded the testimony in the foregoing

8    proceeding and authorized to execute this copy

9    certificate.

10       The foregoing is a true and correct copy of

11   the original transcript of the stated proceeding.

12

13   Dated 7-11-2011.

14

15                                    Mary Badillo

16

17

18

19

20

21

22

23

24

25

BARKLEY

EXHIBIT 3

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RAZMIG TCHOBOIAN and ANGELA )
POTIKYAN, on behalf of )
themselves and all others )
similarly situated, )
)
           Plaintiffs, )
)
   v. )No. 8:10-cv-01008-JAK-MLG
)
FEDEX OFFICE AND PRINT )
SERVICES, INC. (f/k/a FEDEX )
KINKOS OFFICE AND PRINT )
SERVICES, INC.); DOES 1 )
through 10, inclusive, )
)
          Defendants. )
_____)

DEPOSITION OF ANGELA POTIKYAN

JUNE 24, 2011

Salvador Gutierrez, CSR No. 9825

✇ 323909



(310) 207-8000 Los Angeles    (415) 433-5777 San Francisco    (949) 955-0400 Irvine    (858) 455-5444 San Diego
(916) 922-5777 Sacramento    (408) 885-0550 San Jose    (760) 322-2240 Palm Springs    (951) 686-0606 Riverside
(818) 702-0202 Woodland Hills    (212) 808-8500 New York City    (347) 821-4611 Brooklyn    (518) 490-1910 Albany
(516) 277-9494 Garden City    (914) 510-9110 White Plains    (312) 379-5566 Chicago    (702) 366-0500 Las Vegas
+33 1 70 72 65 26 Paris-France        +852 3693 1522 Hong Kong

1      A    I've seen this.

2      Q    You've seen this document before?

3      A    Yes, I have.

4      Q    Okay.  This document, other than telling you

5   that we'd like to take your deposition today at this

6   time, in this office, also asked you to bring certain

7   documents with you.

8           Have you brought any documents with you today?

9           MR. YEDALIAN:  Actually, to assist in the

10   process here, we have prepared formal responses and

11   objections.

12           Let me see where that is.

13           Have you premarked anything as Exhibit 2 yet?

14           MS. SHERIDAN:  No, just only this one.

15           MR. YEDALIAN:  Okay.

16           MS. SHERIDAN:  Yeah.

17           MR. YEDALIAN:  So why don't we go ahead and

18   mark this as Exhibit 2.  And what I'm referring to is

19   our responses and objections to the deposition notice

20   and request to produce documents.

21           MS. SHERIDAN:  Okay.

22           (Exhibit 2 was marked for identification.)

23           MR. YEDALIAN:  And Stephanie, with respect to

24   the receipts -- Ms. Potikyan's receipts that you

25   requested, we do have one of the receipts that -- well,

8

ANGELA POTIKYAN

BARKLEY
Court Reporters

1   she only has one in which more than the last five digits

2   were printed.  We do have that with us today.  We have a

3   redacted copy with us today.

4        And obviously we've prepared formal responses.

5   But essentially the responses state that we will be

6   producing today a redacted version of Ms. Potikyan's

7   receipt.

8        And we will also produce an unredacted version

9   of the receipt provided that we can reach some type of

10  reasonable agreement such that the first two digits and

11  the last four digits of her card number are not

12  revealed, disclosed, or disseminated to any third party,

13  and to the extent that we're going to be attaching the

14  unredacted receipt as an exhibit to the transcript

15  today, that that be sealed.

16       MS. SHERIDAN:  That's fine with me.  I have no

17  problem with that.

18       MR. YEDALIAN:  All right.

19       MS. SHERIDAN:  Have you served these objections

20  at an earlier time on any counsel from my office?

21       MR. YEDALIAN:  No.  And, in fact, one of the

22  objections that we have in there is that the document

23  requests were requested less than -- during -- let me --

24  strike that.

25       One of the objections is that you gave us less

9

ANGELA POTIKYAN

1          MR. YEDALIAN:  Let's go back on the record.

2          MS. SHERIDAN:  Okay.  Okay.  So counsel's just

3     passed me a copy of a receipt with some redactions, and

4     I'd like to ask that this be marked next in order, which

5     I believe is Exhibit 3.

6          (Exhibit 3 was marked for identification.)

7          MR. YEDALIAN:  And then as Exhibit 4, it is the

8     same receipt except the first two and last four digits

9     have not been redacted.

10         And those first two and last four digits are

11    the redactions in Exhibit 3.  And Exhibit 4 will be

12    governed by the agreement between counsel as previously

13    stated on the record today.

14         (Exhibit 4 was marked for identification and is

15    bound under separate cover.)

16     Q    BY MS. SHERIDAN:  So your client -- your lawyer

17    has put in front of you copies of Exhibits 3 and 4.

18         Do you recognize these documents?

19     A    Yes, I do.

20     Q    Okay.  Looking at No. 4 -- that's the

21    unredacted document -- is this a copy of a receipt of

22    yours?

23     A    Yes, it is.

24     Q    Okay.  Now, it looks like, based on the date of

25    this, that this is a receipt from April 7, 2010, from

                              35

BARKLEY
Court Reporters

1    the FedEx office facility located at 1440 Vine Street in

2    Los Angeles.

3             Does that appear to be correct?

4        A    Yes.

5        Q    And it looks like the total charged for this

6    purchase is $18.77; is that correct?

7        A    Yes.

8        Q    Do you remember what you purchased on this

9    occasion to generate this receipt?

10       A    Yes, I do.

11       Q    What did you purchase?

12       A    I was making copies of my medical records.

13       Q    Okay.  And for what purpose?

14       A    I had a medical -- a potential medical case.

15       Q    A legal case?

16       A    Yes.

17       Q    Has that turned into an actual legal case?

18       A    No, it hasn't.

19       Q    The documents that you had with you, were they

20   your original medical records from your doctor's office?

21       A    It was a copy.

22       Q    And were the medical records that you were

23   making copies of standard 8-1/2 by 11 size paper?

24       A    I believe so, yes.

25       Q    And how many pages of copies were you making,

36

BARKLEY
Court Reporters

1    do you remember?

2         A    I don't remember.

3         Q    It says on the receipt -- I'm looking at

4    Exhibit 4, under "Quantity," it says 171.

5              Do you remember if it was a thick stack of

6    documents, about 170 --

7         A    Sounds right, yes.

8         Q    -- pages?

9              Just make sure to be careful to wait till I

10   finish before you answer, 'cause I follow you fine, but

11   we both kind of talk fast and it just makes it hard for

12   him to type everything; okay?

13        A    Sorry.

14        Q    I'll -- I may remind you if that's going on,

15   but don't take it as a criticism.  It's just to make it

16   easier for everybody.

17        A    Thank you.

18        Q    Okay.  Now, it looks like under the

19   description, it says, "ESB&W," which I presume is black

20   and white.  "SS" -- I don't know what that means --

21   white, and it does say 8-1/2 by 11.  At the top part of

22   the receipt, it indicates that a Visa was used.

23             Looking at Exhibit 4, which is the one that

24   doesn't have any redactions or crossed-out numbers, does

25   that appear to be the first two digits and the last four

                              37

BARKLEY
Court Reporters

1    digits of the Visa card that you used to make this

2    purchase?

3         A    Yes.

4         Q    Okay.  Now, had you ever been to this FedEx

5    office facility before this date?

6         A    Yes, I had.

7         Q    Okay.  On how many prior occasions?

8         A    I don't remember.

9         Q    Okay.  Was it more than a dozen times?

10        A    I can't remember.

11        Q    Okay.  I'm just -- you may not remember

12   specifically, but I'm entitled to your best estimate so

13   I have an understanding.

14             Was it the type of facility that you would

15   visit every week or just on a rare occasion that you

16   needed to make copies?

17        A    A rare occasion.

18        Q    Okay.  Back in April of 2010, were you working

19   anywhere?

20        A    No, I believe not.

21        Q    Were you done with school at that point?

22        A    No, I wasn't.

23        Q    Okay.  So were you still a student then?

24        A    Yes.

25        Q    When did you graduate, again?

38

ANGELA POTIKYAN

BARKLEY
Court Reporters

1    A    I believe I have not.

2    Q    So other than the one on April 7, 2010, and the

3  one about a month ago at the same facility, is -- are

4  those the only two times that you visited a FedEx office

5  location and made a credit card purchase for which you

6  got a receipt?

7    A    I believe so.

8    Q    Okay.  Can you explain to me, based on your

9  recollection going back to April 7, 2010, what the

10  process was for you to actually get this receipt?

11    A    You're talking about this one?

12    Q    Yes.

13    A    What the process was, I had the copy of my

14  medical records.

15    Q    Right.

16    A    I used their printer.  It had a feeder.  I used

17  the feeder.  I made a copy.  And I believe my credit

18  card was -- they have a little slot where you put in

19  your credit card into.

20    Q    Uh-huh.

21    A    And after I was done, I asked someone where I

22  can get the receipt, or maybe there was a note there.  I

23  don't remember.  And then I went to some machine where

24  all the receipts come out.  And that was it, I got my

25  receipt from there.

96

ANGELA POTIKYAN

BARKLEY
Court Reporters

1       A    I've been to one in Upland -- or a couple in

2   Upland, and I've been to one in Northridge, somewhere

3   around Chatsworth, Northridge.

4       Q    So those are the three that you can think of

5   today?

6       A    Yes.

7       Q    And again, for the April 7, 2010 visit, you're

8   not sure whether or not you made the copies yourself, or

9   whether you had somebody who worked there make them for

10  you?

11      A    I believe I made the copies.

12      Q    Okay.  In order to get the receipt printed, did

13  you have to go somewhere else within the facility to

14  actually get a physical copy of your receipt?

15      A    Outside of the store you mean?

16      Q    No, I mean, so you're standing at the area

17  where you think you were making the copies yourself.

18      A    Yes.

19      Q    And if you're doing it that way.  I presume you

20  put your credit card into the machine.

21           The machine, itself, doesn't printed out the

22  receipt, does it?

23      A    No.

24      Q    You have to go somewhere else within the FedEx

25  building to get your receipt; right?

98

ANGELA POTIKYAN

BARKLEY
Court Reporters

1      A      Yes.

2      Q      Where do you go to get your receipt?

3      A      It wasn't too far from the printer.   There was

4   a machine there that only printed receipts.

5      Q      Okay.   And why was it that you wanted to keep a

6   copy of your receipt for these medical records you were

7   copying?

8      A      Well, it's important to keep receipts, always.

9      Q      Okay.   So even though this was for less than

10   $20, you wanted to keep the receipt just 'cause that's

11   always your practice?

12      A      Yes, of course.

13      Q      Do you get receipts for everything you buy no

14   matter how small the dollar amount?

15      A      You mean by credit card?

16      Q      Right.

17      A      If it's credit or debit, yes; with cash, I

18   glance at it and I just throw it away.

19      Q      Okay.   And speaking of that issue, because

20   you're conscious of identity theft, have you changed

21   your practices at all insofar as purchases so that you

22   buy more things in cash rather than using credit or

23   debit cards?

24      A      I try to.   I try to.

25      Q      'Cause you understand that that's a safer

99

ANGELA POTIKYAN

BARKLEY
Court Reporters

1    A    Yes.

2    Q    Okay.  And you haven't, as far as you know,

3    seen any other receipts that violated FACTA?

4    A    No.

5    Q    Do you believe that you've been injured or

6    harmed in any way by the FedEx office receipt that you

7    got on April 7, 2010?

8         MR. YEDALIAN:  Objection.  Vague and ambiguous.

9         You can answer.

10        THE WITNESS:  Are you asking me if I've -- if

11   I'm harmed, if -- if identity theft has occurred?

12   Q    BY MS. SHERIDAN:  Yeah, if anything bad at all

13   has happened to you as a result of this receipt.

14        MR. YEDALIAN:  Objection.  Vague and ambiguous

15   as to the term "bad."  What do you mean by "bad"?

16   Q    MS. SHERIDAN:  You can answer.

17   A    I don't know.

18   Q    As far as you know, this receipt, once you got

19   it, you put it into your wallet, and then once you got

20   home, you put it into your folder; is that right?

21        MR. YEDALIAN:  Objection.  Misstates her

22   testimony.

23   Q    BY MS. SHERIDAN:  Has anybody else other than

24   your attorney ever gotten a copy or the original of that

25   receipt, as far as you know?

102

BARKLEY
Court Reporters

1      A     By gotten, you mean me giving the receipt,

2   physically, the actual receipt?

3      Q     Through any process, either you handing it to

4   them, somebody getting a copy?

5      A     No.

6      Q     As far as you know, there has been no actual

7   damage that has come to you as a result of this

8   April 7, 2010 receipt; correct?

9      A     Yes, not that I know of.

10     Q     Okay.  Have you met -- we've already talked

11  about the other class rep here.

12           But have you met any other members of the

13  class?

14     A     No, I have not.

15     Q     Do you have any understanding as to what your

16  role would be if this case settles as opposed to goes --

17  to court and goes through trial?

18           MR. YEDALIAN:  Objection.  Vague and ambiguous,

19  calls for a narrative.

20           If you understand it, go ahead and answer.

21           THE WITNESS:  I don't understand.

22     Q     BY MS. SHERIDAN:  Okay.  Do you understand that

23  some lawsuits result in a settlement rather than them

24  going through the full court process, do you understand

25  that?

103

ANGELA POTIKYAN

BARKLEY
Court Reporters



FedEx Office.

FedEx Kinko's is now FedEx Office

April 07,2010 11:17
Receipt #: 185354                          Page: 1
VISA #: ●XXXXXXXXXXX
2010/04/07 11:08

Qty   Description                          Amount

171   ES B&W S/S White 8.5 x11              17.10

             SubTotal                        17.10
             Taxes                            1.87
             Total                           18.77

The Cardholder agrees to pay the Issuer of the charge
card in accordance with the agreement between the
Issuer and the Cardholder.

1440 Vine St.
Los Angeles, CA 90028
323-871-1300
www.fedexkinkos.com
Please recycle this receipt.

3

DEFT(S)____ PLF(S)____ EXHIBIT for I.D.
SALVADOR GUTIERREZ, CSR #9825
DATE:_____ 6-24-11
WITNESS_____ Petikyan

1

<u>DEPOSITION OFFICER'S CERTIFICATE</u>

2

3  STATE OF CALIFORNIA    }
                          }    ss.
4  COUNTY OF <u>LOS ANGELES</u>   }

5

6          I, <u>Salvador Gutierrez</u>, hereby certify:

7          I am a duly qualified Certified Shorthand

8  Reporter in the State of California, holder of

9  Certificate Number CSR <u>9825</u> issued by the Court

10  Reporters Board of California and which is in full force

11  and effect. (Fed. R. Civ. P. 28(a)).

12          I am authorized to administer oaths or

13  affirmations pursuant to California Code of Civil

14  Procedure, Section 2093(b) and prior to being examined,

15  the witness was first duly sworn by me. (Fed. R. Civ.

16  P. 28(a), 30(f)(1)).

17          I am not a relative or employee or attorney or

18  counsel of any of the parties, nor am I a relative or

19  employee of such attorney or counsel, nor am I

20  financially interested in this action. (Fed. R. Civ. P.

21  28).

22          I am the deposition officer that

23  stenographically recorded the testimony in the foregoing

24  deposition and the foregoing transcript is a true record

25                    / / /

115

BARKLEY
Court Reporters

1   of the testimony given by the witness.  (Fed. R. Civ. P.

2   30(f)(1)).

3          Before completion of the deposition, review of

4   the transcript [XX] was [  ] was not requested.  If

5   requested, any changes made by the deponent (and

6   provided to the reporter) during the period allowed, are

7   appended hereto.  (Fed. R. Civ. P. 30(e)).

8

9   Dated:   JULY 11, 2011

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

116