1   STEPHANIE SHERIDAN  (State Bar No.135910)
    stephanie.sheridan@sedgwicklaw.com
2   VICTORIA PAAL        (State Bar No. 260396)
    victoria.paal@sedgwicklaw.com
3   SEDGWICK LLP
    333 Bush Street, 30th Floor
4   San Francisco, CA  94104
    Telephone:    415.781.7900
5   Facsimile:    415.781.2635
6
7   Attorneys for Defendant
    FEDEX OFFICE AND PRINT SERVICES, INC.
8
9
10                UNITED STATES DISTRICT COURT
11                CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| 13  RAZMIG TCHOBOIAN and ANGELA POTIKYAN, on behalf of themselves and all others similarly situated, | Case No.: SACV10-01008-JAK-(MLGx) |
| 15 | **DECLARATION OF STEPHANIE** |
| 16            Plaintiffs, | **SHERIDAN IN SUPPORT OF REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT** |
| 17       v. | **FEDEX OFFICE AND PRINT SERVICES, INC.'S MOTION FOR** |
| 18  FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX | **SUMMARY JUDGMENT** |
| 19  KINKOS OFFICE AND PRINT SERVICES, INC.); DOES 1 through | Judge:    Hon. John A. Kronstadt |
| 20  10, inclusive, | Date:     November 7, 2011 |
| 21 | Time:     1:30 p.m. |
| 22            Defendants. | Ctrm.:    750 – 7th Floor |

23
24
25
26
27
28

SF/2307133v1

---

1    I, Stephanie Sheridan, hereby declare and state:

2    1.    I am an attorney at law duly admitted to the bar of this court and

3    licensed to practice in the State of California. I am a partner with the law firm of

4    Sedgwick LLP, counsel of record herein for defendant FedEx Office and Print

5    Services, Inc. ("FedEx Office") in the above-referenced action. I have personal

6    knowledge of the facts stated herein and if called upon to testify, could and would

7    competently testify thereto.

8    2.    Attached hereto as **Exhibit 1** is a true and correct copy of Toys 'R' Us

9    Delaware, Inc.'s Brief Regarding *Bateman v. American Multi-Cinema* in another

10   Central District FACTA case entitled *In Re: Toys 'R' Us – Delaware, Inc. – Fair*

11   *and Accurate Credit Transactions Act (FACTA) Litigation*, MDL No. CV 08-

12   01980 MMM (FMOx), which I obtained by accessing it on October 17, 2011 from

13   the United States District Court for the Central District of California's

14   CM/ECF/PACER website.

15   3.    Attached hereto as **Exhibit 2** is a true and correct copy of relevant

16   pages of the Reporter's Daily Transcript of Pretrial Proceedings in this action,

17   dated February 14, 2011.

18   4.    FedEx Office's counsel has, since October 20, 2010, discussed at

19   length the basis for its Motion for Summary Judgment with plaintiffs' counsel in

20   person and during multiple telephonic meet and confer sessions.

21   5.    Attached hereto as **Exhibit 3** is a true and correct copy of relevant

22   pages of the deposition of Razmig Tchoboian, which I attended on June 24, 2011.

23   6.    Since October 2010, FedEx Office has maintained that it would file

24   this Motion for Summary Judgment and did so once other filing deadlines in this

25   matter were looming (such as that for class certification). Because it was

26   important for FedEx office to have its Motion for Summary Judgment on file so

27   that plaintiffs understood the issues contained therein are ones FedEx Office takes

28   ///

1.

1  seriously, it had always been the intent of FedEx Office to file the motion before

2  the mediation for that purpose, and no other.

3       I declare under penalty of perjury under the laws of the United States that

4  the foregoing is true and correct.

5       Executed this 24th day of October 2011, at San Francisco, California.

6

7                           /s/ *Stephanie Sheridan*

                              Stephanie Sheridan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEPHANIE SHERIDAN IN SUPPORT OF REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANT FEDEX OFFICE AND PRINT SERVICES, INC.'S MOTION
FOR SUMMARY JUDGMENT

**EXHIBIT 1**

1
2   EDWARDS WILDMAN PALMER LLP
    Michael Dockterman (mdockterman@edwardswildman.com)
3   225 West Wacker Drive, Suite 2800
    Chicago, IL 60606-1229
    Telephone:   (312) 201-2000
4   Facsimile:   (312) 201-2555
5
    Clinton J. McCord (cmccord@edwardswildman.com)
6   9665 Wilshire Boulevard, Suite 200
    Los Angeles, CA 90212
7   Telephone:   (310) 860-8700
    Facsimile:   (310) 860-3800
8
9   Attorneys for Defendant
10  TOYS "R" US - DELAWARE, INC.

11

12          **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

14

| | |
|---|---|
| 15  *In Re*: **TOYS 'R' US – DELAWARE, INC. – FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA) LITIGATION** | MDL No. CV 08-01980 MMM (FMOx) No. CV 06-08163 MMM (FMOx) No. CV 08-06645 MMM (FMOx) |
| 17 | The Hon. Margaret M. Morrow |
| 18 | **TOYS 'R' US – DELAWARE, INC.'S BRIEF REGARDING *BATEMAN v. AMERICAN MULTI-CINEMA*** |

16

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

3                                                                                                    **Page**

4  I.    THE *BATEMAN* DECISION DOES NOT CONTROL HERE BECAUSE
       OF THE UNIQUE FACTS OF THIS CASE ................................................................ 2

5

6        A.    What the *Bateman* Decision Does – and Does Not – Hold............................ 2

7        B.    *Bateman* Expressly Carved Out an Exception for Cases in which the
             Defendant Faces Ruinous Damages, which is Precisely the Situation in

8            this Case.......................................................................................................... 2

9        C.    Unlike AMC, TOYS *Has* Demonstrated that a Multi-Billion Dollar

10           Statutory Penalty Could Be Ruinous.............................................................. 3

11 II.   *BATEMAN*'S LACK OF GUIDANCE ON RUINOUS DAMAGES LEAVES
       THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

12     AS THE PRIMARY AUTHORITY ON THE ISSUE ............................................. 3

13       A.    Even the Minimum Statutory Penalty Resulting from Class Certification

14           Would Constitute an Unconstitutional Punishment........................................ 3

15       B.    Congress Did Not Intend FACTA to Inflict Potentially Crippling

16           Punishments on Defendants Who Caused No Identity Theft Nor Credit

17           Card Fraud....................................................................................................... 6

18 III.  CERTIFYING A CLASS IN THIS PARTICULAR CASE WOULD LEAD
       TO AN ABSURD RESULT .................................................................................... 8

19

20 IV.   FRCP 23 PROVIDES THE COURT WITH THE DISCRETION TO DENY
       CLASS CERTIFICATION UNDER THE PARTICULAR FACTS OF THIS

21     CASE AND *BATEMAN* DID NOT REMOVE IT .................................................... 8

22       A.    Denial of Certification Would Effect the Congressional Intent Behind

23           FACTA .............................................................................................................. 8

24       B.    The Due Process Issues Raised by the Facts of this Case are Ripe for

25           Determination .................................................................................................. 10

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Arcilla v. Adidas Promotional Retail Operations, Inc.,*
   488 F.Supp.2d 965 (C.D. Cal. 2007) .................................................................9

*Bateman v. American Multi-Cinema, Inc.,*
   623 F.3d 708 (9th Cir. 2010) ...................................................................passim

*BMW of North America v. Gore,*
   517 U.S. 559 (1996).................................................................................4

*Clark v. Capital Credit & Collection Services, Inc.,*
   460 F.3d 1162 (9th Cir. 2006) ...................................................................6

*Kline v. Coldwell Banker & Co.,*
   508 F.2d 226 ........................................................................................10

*Morris v. Parke, Davis & Co.,*
   573 F.Supp. 1324 (C.D. Cal. 1983) .............................................................5

*Nixon v. Missouri Municipal League,*
   541 U.S. 125 (2004).................................................................................7

*Planned Parenthood v. American Coalition of Life Activists,*
   422 F.3d 949 .......................................................................................5

*Simpson v. Burrows,*
   90 F.Supp.2d 1108 (D. Or. 2000)................................................................5

*Smith v. O'Grady,*
   312 U.S. 329 (1941).................................................................................3

*Southern Union Co. v. Irvin,*
   563 F.3d 788 ........................................................................................5

*State Farm Mutual Automobile Ins. Co. v. Campbell,*
   538 U.S. 408 (2003).................................................................................4

**FEDERAL STATUTES**

Pub.L. No. 110-241 (HR 2008), 122 Stat. 1565 (June 3, 2008) .................................6

**OTHER AUTHORITIES**

http://www.hoovers.com/company/Toys_R_Us_Inc/rrcshi-1.html ...............................3

*TOYS' BRIEF REGARDING BATEMAN v. AMERICAN MULTI-CINEMA*

# INTRODUCTION

As requested, Toys 'R' Us–Delaware, Inc. ("TOYS") hereby submits its
brief regarding the Ninth Circuit's decision in *Bateman v. American Multi-Cinema,
Inc.*, 623 F.3d 708 (9th Cir. 2010). In this brief, TOYS makes three points. First,
*Bateman* did not in fact address the critical issue regarding class certification in
this case, namely, whether opening the door to a ruinous multi-billion-dollar
statutory penalty in the largest FACTA putative class action in history is grounds
for denying certification. The Ninth Circuit expressly stated in *Bateman* that it
passed no judgment on such issue. *Bateman* does not control.

Second, in the absence of guidance from *Bateman* on this point, established
case law under the Due Process Clause of the Fourteenth Amendment to the United
States Constitution controls. The Supreme Court has repeatedly stated that the Due
Process Clause prohibits "grossly excessive" punishments. In this case, opening
the door to a multi-billion-dollar statutory penalty award where this Court has
already found that TOYS caused no actual harm, that there is a "negligible" threat
of any future harm, that TOYS has committed no intentional acts and that there is
no conduct to be deterred in the future, would be grossly excessive and therefore
contrary to the Due Process Clause.

Third and finally, while *Bateman* left untouched the issue of ruinous
statutory damages, the Ninth Circuit has repeatedly instructed courts to construe a
statute in particular cases so as to give effect to its general purpose. In this
particular case, certifying the largest-ever FACTA class (and opening the door to a
minimum penalty of $2.9 billion) would not advance the stated Congressional
intent behind FACTA – to prevent identity theft and credit card fraud. Again, this
Court has already found that, in this particular case, there has been no identity theft
or fraud. And there is almost no threat of either ever occurring in the future.
Based on these findings, certifying an enormous and unworkable class (and
creating billions of dollars in penalties) would not give effect to the expressly

1   stated Congressional intent behind FACTA; it would only excessively, and

2   needlessly, punish TOYS.

3   **I.**     **THE *BATEMAN* DECISION DOES NOT CONTROL HERE**

4           **BECAUSE OF THE UNIQUE FACTS OF THIS CASE.**

5        **A.**     **What the *Bateman* Decision Does – and Does Not – Hold.**

6        Much has been made of the Ninth Circuit's decision in *Bateman v. American*

7   *Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010). The instant case has been

8   stayed, multiple times, to await guidance from the Ninth Circuit on how to analyze

9   superiority under Rule 23(b) in the face of staggering FACTA statutory damage

10  awards. Unfortunately, while the *Bateman* decision does provide guidance on

11  whether a court may consider proportionality of liability to harm alleged,

12  magnitude of liability and post-complaint compliance, *Bateman* did not reach, and

13  explicitly did not address, the critical issue now before the Court – whether the

14  Court should certify a nationwide FACTA class that would open the door to a

15  multi-*billion* dollar – and potentially ruinous – statutory award. *Bateman* reserved

16  this issue. In addressing the issue now in this case, the Court should decide it just

17  as it did last year, before *Bateman*.

18        **B.**     ***Bateman* Expressly Carved Out an Exception for Cases in which**

19           **the Defendant Faces Ruinous Damages, which is Precisely the**

20           **Situation in this Case.**

21        The *Bateman* decision contains three constrained holdings. Specifically,

22  *Bateman* holds that a court is prohibited from considering three things in

23  conducting a Rule 23(b)(3) superiority analysis: (1) "the proportionality of the

24  potential liability to the actual harm alleged"; (2) "the magnitude of the

25  defendant's liability"; and (3) "post-complaint good faith compliance." *Bateman*,

26  623 F.3d at 721 and 723. Those are the sum total of *Bateman*'s holdings.

27  Critically, for purposes of this case, the Ninth Circuit <u>expressly reserved judgment</u>

28  on whether a district court should deny class certification upon a showing of

1    "ruinous liability" by a defendant.  *Id.* at 723.  The issue of ruinous liability was

2    not even before the *Bateman* court because, as the Ninth Circuit specifically noted,

3    in that case the defendant did not argue or demonstrate in any way that the

4    "potential liability would result in bankruptcy."  *Id.*

5        **C.    Unlike AMC, TOYS *Has* Demonstrated that a Multi-Billion**

6        **Dollar Statutory Penalty Could Be Ruinous.**

7        This case presents the issue reserved in *Bateman*.  Unlike the defendant in

8    *Bateman* (AMC), TOYS <u>has</u> addressed the impact of a multi-<u>billion</u> dollar

9    statutory penalty on its business.  In *Bateman*, AMC faced a minimum statutory

10   penalty of "only" $29 million.  623 F.3d at 710.  In this case, based on the evidence

11   in the record and the Court's prior findings of fact, TOYS faces a <u>minimum</u>

12   penalty of $2.9 <u>billion</u>, and a maximum of $29 <u>billion</u>.[1]  In *Bateman*, AMC

13   presented <u>no</u> evidence of its financial status or the effect the penalty would have

14   upon it.  623 F.3d at 723.  In this case, TOYS presented consolidated financial

15   statements demonstrating that the maximum penalty would amount to twenty-five

16   <u>thousand</u> percent of the net worth of TOYS' parent company, and the minimum

17   would amount to two-and-a-half <u>thousand</u> percent of the net worth.  It is obvious

18   what effect that even the minimum penalty would have upon TOYS and its parent,

19   which together currently employ 65,000 people in 40 states.[2]  *Bateman* did not

20   address such a situation.  It does not control.  The United States Constitution does.

21   **II.   *BATEMAN*'S LACK OF GUIDANCE ON RUINOUS DAMAGES**

22   **LEAVES THE DUE PROCESS CLAUSE OF THE FOURTEENTH**

23   **AMENDMENT AS THE PRIMARY AUTHORITY ON THE ISSUE.**

24       **A.    Even the Minimum Statutory Penalty Resulting from Class**

25       **Certification Would Constitute an Unconstitutional Punishment.**

26       The United States Constitution "is the supreme law of the land, and 'Upon

27   _____

28   [1] Order Denying Class Certification (Dkt. 100) at 27:14.
     [2] http://www.hoovers.com/company/Toys_R_Us_Inc/rrcshi-1.html

*TOYS' BRIEF REGARDING BATEMAN v. AMERICAN MULTI-CINEMA*

1  the state courts, equally with the courts of the Union, rests the obligation to guard

2  and enforce every right secured by that Constitution.'" *Smith v. O'Grady*, 312

3  U.S. 329, 331 (1941). Where *Bateman* leaves untouched the issue of whether this

4  Court may open the door to a crippling penalty, the Constitution does not. Its

5  dictate is clear – a multi-billion-dollar statutory penalty in the face of no actual

6  harm would be unconstitutional. The Constitution, specifically the Fourteenth

7  Amendment, prohibits the imposition of any "grossly excessive" punishments.

8  *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003)

9  ("The Due Process Clause prohibits the imposition of grossly excessive or arbitrary

10  punishments on a tortfeasor.").

11       The unprecedented statutory punishment which class certification would

12  threaten for TOYS is unconstitutional because it is "grossly excessive" to the point

13  of being ruinous. When damages are ruinous, especially when TOYS did

14  absolutely nothing to warrant such a punishment, the Constitution prohibits

15  imposition of the penalty.[3]

16       In *State Farm*, the Supreme Court overturned a punishment of $145 million

17  (where compensatory damages were $1 million) as violative of the Due Process

18  Clause. *State Farm*, *supra*, 538 U.S. at 408. In *BMW of North America v. Gore*,

19  517 U.S. 559 (1996), the Supreme Court overturned a $2 million punishment as

20  "grossly excessive" and therefore violative of the Due Process Clause.

21  Importantly, in *Gore*, the court relied heavily on the fact that the defendant's

22  conduct was not reprehensible, because the harm to the plaintiff (not having been

23  told by a car dealer that his new car had been repainted prior to delivery) was

24  "purely economic" and because the defendant engaged in no deliberate "acts of

25  affirmative misconduct." *Id.* at 560. Based on this Court's prior findings, the

---

27  [3] As the Court noted repeatedly in its Order denying class certification, not only have
Plaintiffs' alleged no actual harm in this case, TOYS in fact caused "no actual harm"
28  in this case. Order Denying Class Certification (Dkt. 100) at 25:11-13; 27:8-10
(emphasis added).

---

*TOYS' BRIEF REGARDING BATEMAN v. AMERICAN MULTI-CINEMA*

1    same reasoning applies to the instant case.

2         In this case, the Court has already found that TOYS committed no

3    affirmative acts of misconduct, specifically that: (1) TOYS did not "intentionally"

4    commit <u>any</u> act with regard to Plaintiffs; and (2) its "technical" violation "causes

5    no actual harm and has no potential to increase the risk of harm to consumers." [4]

6    Accordingly, by the Supreme Court's standards, TOYS was not morally

7    reprehensible. It merely committed unintentional violations of a "highly technical"

8    statute, which caused absolutely no harm to anyone. It does not deserve to be

9    punished with an unprecedented, enormous statutory penalty.

10        If presented with the facts of this case, the Ninth Circuit would likely agree.

11   In *Southern Union Co. v. Irvin*, 563 F.3d 788, the court overturned a punitive

12   damages award of $60 million against a former state energy regulator for opposing

13   the plaintiff corporation's proposed merger with a regulated entity as violative of

14   the Due Process Clause. The court focused on "three guideposts" applicable to

15   assessing the constitutionality of penalties: (1) the degree of reprehensibility of the

16   defendant's misconduct; (2) the disparity between the harm suffered by the

17   plaintiff and the punishment imposed; and (3) the difference between the punitive

18   damages assessed and penalties imposed in comparable cases. *Id.* at 791.

19        In this case, as explained above, the Court has already, implicitly, found that

20   TOYS did not act reprehensibly and, explicitly, found that TOYS caused no harm

21   to Plaintiffs or anyone else. Based on these prior findings, a penalty of $29 billion,

22   or $2.9 billion, indeed anything in the millions or billions, would be

23   unconstitutional. *See also Planned Parenthood v. American Coalition of Life*

24   *Activists*, 422 F.3d 949, 962 (overturning punitive damages award based upon the

25   lack of any "reasonable relationship between the punitive damages award and the

26   actual harm associated with the wrongful conduct."). *See also Morris v. Parke,*

27   *Davis & Co.*, 573 F. Supp. 1324, 1329 (C.D. Cal. 1983) ("Punitive damages should

28   ────────────────────────
[4] Order Denying Class Certification (Dkt. 100) at 21: 23-26 (fn 18).

*TOYS' BRIEF REGARDING BATEMAN v. AMERICAN MULTI-CINEMA*

1    not be permitted to bankrupt a defendant."); *Simpson v. Burrows*, 90 F.Supp.2d

2    1108, 1131 (D. Or. 2000) (An award of punitive damages should "not bankrupt a

3    defendant...").

B.    **Congress Did Not Intend FACTA to Inflict Potentially Crippling Punishments on Defendants Who Caused No Identity Theft Nor Credit Card Fraud.**

7    As cited above, the Supreme Court has repeatedly stated that grossly

8    excessive "punishments" are unconstitutional. In response, Plaintiffs can be

9    expected to argue that the massive statutory damages award threatening TOYS if a

10   class is certified is not – technically – a punishment, because FACTA expressly

11   allows for punitive damage awards in addition to statutory damages awards and,

12   therefore, the statutory damages award should not be considered a punishment (and

13   should not be affected by the Constitution). This argument violates the

14   fundamental rule of statutory interpretation – "to construe the details of an act in

15   conformity with its <u>dominating general purpose</u>..." *Clark v. Capital Credit &*

16   *Collection Services, Inc.*, 460 F.3d 1162, 1169 (9th Cir. 2006) (citations omitted;

17   emphasis added).

18   The "dominating general purpose" of FACTA is crystal clear, because

19   Congress expressly stated it: FACTA is intended solely "to prevent criminals from

20   obtaining access to consumers' private financial and credit information in order to

21   reduce identity theft and credit card fraud." Pub.L. No. 110-241 (HR 2008), 122

22   Stat. 1565 (June 3, 2008). As the Ninth Circuit has stated, in giving effect to this

23   purpose, a court is required to interpret the statute "so as to carry out in <u>particular</u>

24   <u>cases</u>, the generally expressed legislative policy." *Clark*, 460 F.3d at 1162.

25   In this particular case, the general policy of FACTA is undisputed – "to

26   reduce identity theft and credit card fraud." In this particular case, it is also

27   undisputed that there is absolutely no evidence of any identity theft or credit card

28

---

*TOYS' BRIEF REGARDING BATEMAN v. AMERICAN MULTI-CINEMA*

1    fraud, and, as the Court found, "negligible" threat of any harm in the future.[5]   The

2    controlling question therefore becomes – how should the Court carry out, in this

3    particular case, the generally expressed policy of FACTA?   TOYS recognizes that

4    the statutory scheme offers no discretion on the minimum statutory penalty.   TOYS

5    respectfully submits to the Court that the mandatory penalty that could result from

6    certification is the reason why the Court should deny the class claim now –

7    opening the door to a ruinous statutory penalty in the absence of any acts of

8    malfeasance to be punished, or any harm or threat of harm caused, or any future

9    conduct to be deterred, is not what Congress intended (nor what the Due Process

10   Clause allows).

11           Plaintiffs might argue, as numerous other FACTA plaintiffs have argued,

12   that not certifying a class because of the enormous liability that could result would

13   only serve to let TOYS off the hook for its FACTA violations.   Such argument is

14   sophistry.   TOYS has never disputed that more than the last five digits of TOYS'

15   customers' credit or debit card numbers appeared on customer receipts during the

16   period in question.   It has always stood ready to fully reimburse each and every

17   single person who suffered any harm resulting from a FACTA violation.   The issue

18   is whether the class action vehicle is superior on these facts.   Not certifying a class

19   precisely because the class is unworkably enormous (likely the largest ever) does

20   not, in any way, allow TOYS to escape liability.   The very fact that there are

21   millions of receipts at issue exposes TOYS to millions of claims (including

22   statutory liability in each one), just as Congress intended.   All TOYS asks is that it

23   be allowed to address each violation on its own merits.   To do so is the only way to

24   harmonize both the Congressional intent behind FACTA (to prevent and provide

25   recompense for identity theft and credit card fraud) and the Due Process Clause of

26   the Fourteenth Amendment (to protect against unwarranted punishments).

27

28   [5] See Order Denying Class Certification (Dkt. 100) at 25:11-13.

---

*TOYS' BRIEF REGARDING BATEMAN v. AMERICAN MULTI-CINEMA*

**III.     CERTIFYING A CLASS IN THIS PARTICULAR CASE WOULD
         LEAD TO AN ABSURD RESULT.**

    "Courts will not construe a statute in a manner that leads to absurd or futile
results." *Nixon v. Missouri Municipal League*, 541 U.S. 125, 138 (2004).  If the
Court construes FACTA and Rule 23(b)(3) as Plaintiffs request, and certifies the
enormous class Plaintiffs seek, it would lead to an absurd result.  This is true no
matter the outcome at trial.  On the one hand, if the class is certified and Plaintiffs
are able to prove a "willful" violation of FACTA, they <u>must</u> be awarded between
$2.9 billion and $29 billion.  Because of the obvious effect that such an absurdly
large penalty would have on TOYS, Plaintiffs likely would not be able to collect it.
Even assuming they could, how would the Court and Plaintiffs even allocate $2.9
billion to $29 billion in statutory damages?

    The alternative is equally absurd (and futile) – if a class is certified and
Plaintiffs are <u>not</u> able prove a willful violation, they would again collect nothing
(because they seek no actual damages).  In either case, Plaintiffs would be in a
worse position than if the class had not been certified.  They would have gone
through the time and expense of trial to come away with nothing.  The only
question is whether TOYS will be unfairly punished in the process.  Based on the
facts of this particular case (again the largest-ever FACTA class), it is not in
anyone's interests to certify a class, especially where no one has been harmed and
there is negligible risk of any harm in the future.  That is not the result Congress
intended when it enacted FACTA.

**IV.    FRCP 23 PROVIDES THE COURT WITH THE DISCRETION TO
        DENY CLASS CERTIFICATION UNDER THE PARTICULAR
        FACTS OF THIS CASE AND *BATEMAN* DID NOT REMOVE IT.**

    **A.     Denial of Certification Would Effect the Congressional Intent
               Behind FACTA.**

Rule 23 vests the Court with the discretion to deny class certification under

1   the facts of this particular case.  As *Bateman* itself states: "District Courts are in

2   the best position to consider the most *fair* and efficient procedure for conducting

3   *any given litigation*." *Bateman*, 623 F.3d at 712 (emphasis added).  With respect

4   to superiority analysis under Rule 23(b), *Bateman* states that courts "*must be given*

5   *wide discretion* to evaluate superiority." *Id.* (emphasis added).  *Bateman* also

6   instructs: "We think it clear that a Rule 23(b)(3) superiority analysis must be

7   consistent with the congressional intent in enacting a particular statutory damages

8   provision." *Id.* at 716 (emphasis added).

9       As explained above, the congressional intent behind FACTA is clear – to

10  prevent identity theft and credit card fraud.  This Court has already found that the

11  conduct at issue in this case has caused no harm and "poses no additional risk of

12  harm."[6]  Moreover, the Court has also already determined that, despite being

13  "technical" violations of FACTA, the conduct at issue (specifically, the printing of

14  certain credit card digits) is consistent with the specific Congressional intent of

15  protecting against harm by banning the printing of certain credit card digits:

16          Here, because Congress did not prohibit the printing of issuer

17          information on the credit card receipt, there is no possibility that
            the printing of the first six digits could have resulted in a risk of

18          harm greater than that prohibited by Congress.[7]

19      Accordingly, because that the Court has already determined that the specific

20  conduct at issue in this particular case does not create any harm greater than that

21  prohibited by Congress, certifying a class of millions of people (none of whom

22  have suffered any harm prohibited by Congress) would not be consistent with the

23  Congressional intent in enacting FACTA.  Therefore, under *Bateman* and the

24  "wide discretion" vested in this Court, this Court should deny class certification

25  and let each claim succeed or fail on its own merits.

26

27

28  [6] Order Denying Class Certification (Dkt. 100) at 27:8-10.
    [7] Order Denying Class Certification (Dkt. 100) at 25:4-6 (emphasis added).

*TOYS' BRIEF REGARDING BATEMAN v. AMERICAN MULTI-CINEMA*

**B.**    **The Due Process Issues Raised by the Facts of this Case are Ripe
for Determination.**

The last remaining issue is whether the constitutional limits upon
punishments should be applied at the class certification stage.  They should be.
*See Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F.Supp.2d 965, 973
(C.D. Cal. 2007):

> Of course, Adidas does not contend a $1000 fine would be grossly
> excessive.  Rather, it raises the specter of the tens of thousands of
> $1000 fines that could be imposed if the putative class is certified
> and eventually recovers the statutory maximum.  This concern is
> understandable, but it is premature, and would be appropriate at
> the earliest in opposition to an eventual class certification motion,
> which is when Adidas' cited authorities addressed it.

(citing *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 234-35).

In this case, there is no reason to withhold the protections of Constitutional
Due Process at the class certification stage.  It is late in the game – the case is
already five years old, and every issue imaginable has been extensively
investigated and briefed.  There is nothing left to discover, nothing that will put the
Court in a better position to apply constitutional protections than it is in right now.

The main argument advanced by other FACTA plaintiffs in response to a
due process argument at the class certification stage has been that due process
protections should be applied after the court sees what the actual jury award is (to
see if it is grossly excessive under the facts of the case).  But that argument does
not apply here.  According to the Court's own prior findings, the "minimum"
penalty would be $2.9 billion (as the Court acknowledged:  "approximately
2,500% of defendant's net worth").  Such an award is grossly excessive on its face
and can, and should, be prevented at this stage.  Denial of class certification will
uphold the Constitution and give effect to the Congressional intent behind FACTA
– Plaintiffs (and every other potential claimant) will still have all of the protections

1    and remedies intended by Congress, and a venerable company will not be

2    excessively, and unconstitutionally, punished.

3         WHEREFORE, TOYS respectfully requests that this Court uphold its

4    August 17, 2010 Order denying class certification.

5    DATED: October 17, 2011.                    Respectfully submitted,

6

7                                                TOYS "R" Us-Delaware, Inc.

8

9                                  By:    /s/ Clinton J. McCord

10                                        EDWARDS WILDMAN PALMER LLP
                                          Michael Dockterman
11                                        (mdockterman@edwardswildman.com)
                                          225 West Wacker Drive, Suite 2800
12                                        Chicago, IL 60606-1229
                                          Telephone:    (312) 201-2000
13                                        Facsimile:    (312) 201-2555
14
15                                        Clinton J. McCord
                                          (cmccord@edwardswildman.com)
16                                        9665 Wilshire Boulevard, Suite 200
17                                        Los Angeles, CA  90212
                                          Telephone:    (310) 860-8700
18                                        Facsimile:    (310) 860-3800
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 2**

UNCERTIFIED REALTIME ROUGH DRAFT 021411 DCCD GUILFORD 10D TCHOBIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING; COURTROOM 10D

---

| | |
|---|---|
| RAMIG TCHOBOIAN, ET AL., )<br><br>              )<br>              )<br>              )<br>       Plaintiff(s),   )<br>              )<br>              )<br>              )<br>       vs.        )  No. SACV 10-1008-AG(MLGx)<br>              )<br>              )<br>              )<br> FEDEX OFFICE AND PRINT SERVICES, )<br> INC, ET AL. ,      )<br>              )<br>              )<br>              )<br>       Defendant(s).  )<br>              )<br>_____ ) | |

REPORTER'S DAILY TRANSCRIPT OF PRETRIAL PROCEEDINGS
SANTA ANA, CALIFORNIA
MONDAY, FEBRUARY 14, 2011

DENISE PADDOCK
CSR 10199, CMRS, RMR, CRR
transcripts@ocrecord.com
U.S. DISTRICT COURT REPORTER

**UNITED STATES DISTRICT COURT**

UNCERTIFIED REALTIME ROUGH DRAFT 021411 DCCD GUILFORD 10D TCHOBIAN

## A P P E A R A N C E S

```
021411 DCCD GUILFORD 10D TCHOBIAN
SACV 10-1008-AG(MLGx)
```

**IN BEHALF OF THE PLAINTIFF:**


**IN BEHALF OF THE DEFENDANT:**



**ALSO APPEARING:**

^ ALSOAPPEARING, ^ ALSOAPPEARINGTITLE

UNITED STATES DISTRICT COURT

UNCERTIFIED REALTIME ROUGH DRAFT 021411 DCCD GUILFORD 10D TCHOBIAN

So we have our dates leading to a trial on August 21st.

Anything further, Counsel?

MS. SHERIDAN: Your Honor, there is one other point I'd like to bring out, I didn't see anything in Your Honor's standing orders or local rules, but I know some federal District Court judges don't like to see early motions for summary judgment; but we would --

THE COURT: I have no rule against that.

MS. SHERIDAN: Okay. Because we do plan to file one in this case.

THE COURT: I'm a big fan of 56(f); right?

MS. SHERIDAN: Right.

THE COURT: That allows more time.

So, you know, it's at your own risk, but I think some issues are just flat-out winners from the start and additional time is not needed and I'm happy to do that.

MS. SHERIDAN: We believe ours is a purely legal issue that would not require additional discovery and it would save the court and the parties time to be resolved.

THE COURT: There is a reason my orders don't prohibit early summary judgments.

MS. SHERIDAN: Thank you, Your Honor.

MR. YEDALIAN: Thank you, Your Honor.

THE COURT: Okay.

**UNITED STATES DISTRICT COURT**

UNCERTIFIED REALTIME ROUGH DRAFT 021411 DCCD GUILFORD 10D TCHOBIAN

(End of proceedings.)

UNITED STATES DISTRICT COURT

**EXHIBIT 3**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RAZMIG TCHOBOIAN and ANGELA )
POTIKYAN, on behalf of )
themselves and all others )
similarly situated, )
)
        Plaintiffs, )
)
    v. )No. 8:10-cv-01008-JAK-MLG
)
FEDEX OFFICE AND PRINT )
SERVICES, INC. (f/k/a FEDEX )
KINKOS OFFICE AND PRINT )
SERVICES, INC.); DOES 1 )
through 10, inclusive, )
)
        Defendants. )
)

DEPOSITION OF RAZMIG TCHOBOIAN

JUNE 24, 2011

Salvador Gutierrez, CSR No. 9825
✆ 323910



(310) 207-8000 Los Angeles   (415) 433-5777 San Francisco   (949) 955-0400 Irvine   (858) 455-5444 San Diego
(916) 922-5777 Sacramento   (408) 885-0550 San Jose   (760) 322-2240 Palm Springs   (951) 686-0606 Riverside
(818) 702-0202 Woodland Hills   (212) 808-8500 New York City   (347) 821-4611 Brooklyn   (518) 490-1910 Albany
(516) 277-9494 Garden City   (914) 510-9110 White Plains   (312) 379-5566 Chicago   (702) 366-0500 Las Vegas
+33 1 70 72 65 26 Paris-France   +852 3693 1522 Hong Kong

1    the machine, itself?

2         A    Yes, the machine -- but it's not the same

3    machine where you insert your card --

4         Q    Uh-huh.

5         A    -- to use directly the computer or the prints

6    or the photocopies.

7         Q    You have to go to a different machine to get

8    your receipts?

9         A    Yes.

10        Q    Do you know why it was on January 17th that you

11   wanted to get your receipts?

12        A    That I want to get my receipts?

13        Q    Yeah.

14        A    Just to -- because I always keep the receipts

15   of my credit card transactions.

16        Q    And why is that?

17        A    Just to make sure they match my banking

18   statements at the end of month.

19        Q    And same for the receipts on the 28th, was it

20   the same kind of thing, you used the machines and then

21   went to the other machine to get your receipts?

22        A    Yes.

23        Q    Once you got the receipt on January 17th, did

24   there appear to you to be anything wrong with that

25   receipt for purposes of FACTA?

58

RAZMIG TCHOBOIAN

1    lost. And I want to understand what the basis is for

2    your belief.

3        Has somebody told you that you may have to pay

4    money if the case is tried and lost?

5     A    Yes.

6     Q    Who told you that?

7     A    My attorney.

8     Q    Do you have the money to pay money in case

9    the -- this case is tried and lost?

10        MR. YEDALIAN: Objection. Lacks foundation;

11    what money are you referring to, how much; vague and

12    ambiguous.

13        THE WITNESS: Depends how much.

14     Q    BY MS. SHERIDAN: You'd be willing to pay money

15    out of your own pocket towards the case if it was tried

16    and lost?

17     A    If it was tried and lost, I would have to pay

18    from my own pocket. It's not -- I would have to pay.

19     Q    Have you talked to your wife about that?

20     A    Yes.

21     Q    So you believe that being a class

22    representative in the case poses financial risks to you?

23     A    Yes.

24     Q    Okay. Why would you agree to be a class rep,

25    then?

86

BARKLEY
Court Reporters

1       A    Because they violated my rights and they

2    violated my privacy rights and they violated the law.

3       Q    How did they violate your privacy rights?

4       A    By printing more than the last five digits of

5    my credit card information.

6       Q    Do you give receipts to any of your vendors --

7    well, let me ask you this.

8            Do any of your vendors pay for your services

9    with credit cards?

10      A    Yes.

11      Q    And do you give them receipts?

12      A    People who pay with credit cards are customers

13   who purchase online from my website, and they receive an

14   e-mail with -- they receive an automatic e-mail with --

15   with a receipt.  The receipt -- the receipt that they

16   receive is a through an e-mail.

17      Q    I understand that.

18           What if one your clients were to print out

19   their receipt and to sue you and say that the receipt

20   violated FACTA?

21           MR. YEDALIAN:  Objection.  Argumentative,

22   assumes facts not in evidence, calls for speculation.

23      Q    BY MS. SHERIDAN:  Have you ever printed out any

24   of your clients' receipts?

25      A    If I have printed it, I made sure -- I made

87

BARKLEY
Court Reporters

# DEPOSITION OFFICER'S CERTIFICATE

1

2

3 STATE OF CALIFORNIA      }
                          }   ss.
4 COUNTY OF LOS ANGELES    }

5

6          I, Salvador Gutierrez, hereby certify:

7          I am a duly qualified Certified Shorthand

8 Reporter in the State of California, holder of

9 Certificate Number CSR 9825 issued by the Court

10 Reporters Board of California and which is in full force

11 and effect. (Fed. R. Civ. P. 28(a)).

12          I am authorized to administer oaths or

13 affirmations pursuant to California Code of Civil

14 Procedure, Section 2093(b) and prior to being examined,

15 the witness was first duly sworn by me. (Fed. R. Civ.

16 P. 28(a), 30(f)(1)).

17          I am not a relative or employee or attorney or

18 counsel of any of the parties, nor am I a relative or

19 employee of such attorney or counsel, nor am I

20 financially interested in this action. (Fed. R. Civ. P.

21 28).

22          I am the deposition officer that

23 stenographically recorded the testimony in the foregoing

24 deposition and the foregoing transcript is a true record

25                          / / /

100

BARKLEY
Court Reporters

1  of the testimony given by the witness.  (Fed. R. Civ. P.

2  30(f)(1)).

3        Before completion of the deposition, review of

4  the transcript [XX] was [  ] was not requested.  If

5  requested, any changes made by the deponent (and

6  provided to the reporter) during the period allowed, are

7  appended hereto.  (Fed. R. Civ. P. 30(e)).

8

9  Dated:    JULY 11, 2011

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

101

BARKLEY
Court Reporters