STEPHANIE SHERIDAN (State Bar No.135910)
stephanie.sheridan@sedgwicklaw.com
VICTORIA PAAL (State Bar No. 260396)
victoria.paal@sedgwicklaw.com
SEDGWICK LLP
333 Bush Street, 30th Floor
San Francisco, CA 94104
Telephone: 415.781.7900
Facsimile: 415.781.2635

Attorneys for Defendant
FEDEX OFFICE AND PRINT SERVICES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAZMIG TCHOBOIAN and ANGELA POTIKYAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX KINKOS OFFICE AND PRINT SERVICES, INC.); DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. SACV10-01008-JAK-(MLGx)<br><br>**DECLARATION OF MICHAEL JAVAHERIAN IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge: Hon. John A. Kronstadt<br>Date: February 13, 2012<br>Time: 8:30 a.m.<br>Ctrm.: 750 – 7th Floor |

SF/2632240v1

I, Michael Javaherian, hereby declare and state under penalty of perjury pursuant to 28 U.S.C. section 1746:

1.   My title is Director IT-Retail Systems for FedEx Services. I am responsible for Field Applications, which includes what we call Express Pay, and encompasses the self-service functions at our centers. As such, I have personal knowledge of the facts set forth in this declaration and if called upon to do so, could and would testify competently thereto.

**FEDEX OFFICE**

2.   FedEx Office is a wholly-owned subsidiary of FedEx Corporation.

3.   FedEx Office began as Kinko's in 1970, was acquired by FedEx Corporation in 2004. In June of 2008, it was rebranded as FedEx Office and Print Services, Inc. FedEx Office operates 1,833 stores throughout all 50 states and the District of Columbia.

4.   FedEx Office offers copying, printing, shipping, and a variety of office services to both business customers and individual consumers. Full-service and self-service options are available to customers depending on their needs and preferences. Self-service functions include making black and white or color copies, computer rentals, fax services, or printing photographs. FedEx office's mission is to function as a "back office" for small businesses and an "office away from home" for those who do not have established office space. The average FedEx Office transaction is for $8.82.

5.   Customers have payment options when using FedEx Office self-service machines, depending on whether they choose to pay with cash or with a credit or debit card (collectively referred to as "bank cards"). The self-service machines that perform the functions listed in paragraph 4 are all controlled by individual payment terminals. The specific forms of payment for the self-service functions are explained in the paragraphs below.

SF/2632240v1

DECLARATION OF MICHAEL JAVAHERIAN IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## CASH TRANSACTIONS

6. Cash customers can only use self-service machines after obtaining a "value card." Value cards can only be used once a customer has loaded monetary value onto the card. A customer can add up to $100 to the card either by visiting the full-service counter and receiving team member assistance, or by using an Express Pay kiosk. Monetary value may be added to the cards using cash only.

7. Once monetary value has been added to the value card, the customer inserts the value card into the payment terminal affixed to any of the self-service machines, and the cost of the service obtained from that self-service machine is then deducted from the balance of the value card.

8. If a customer has depleted the monetary value on her value card but wishes to purchase additional services, she may visit the full-service counter and receive team member assistance, or use the Express Pay kiosk to load additional value onto her value card.

9. If a customer has completed her services but has not depleted the balance on her value card, a FedEx Office Team Member can manually refund the balance to the customer in cash upon request.

10. Express Pay kiosks also perform a couple minor functions as to the value cards. A customer can insert her value card into the kiosk to check the current balance on the card or print a receipt. Because monetary value is added to the value cards with cash only, this receipt print-out does not contain any customer bank card information.

## BANK CARD TRANSACTIONS

11. With respect to bank card transactions, the Express Pay kiosk's only function is to close out transactions and print receipts at the customer's option. In fact, a bank card customer wishing to use the self-service machines does not even need to use to Express Pay kiosk. That is, unlike with a cash transaction, a value card is not needed for customers paying with a bank card. Rather, she inserts her

SF/2632240v1

DECLARATION OF MICHAEL JAVAHERIAN IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

bank card directly into the card reader associated with the self-service machine she wishes to use.

12. Once the customer has finished her various self-service projects, she has three options for ending the transaction. First, she may simply leave the store. This is because after a certain amount of time has passed or a certain dollar amount of services has been accumulated, the transaction will automatically be deemed complete and the customer's bank card will be charged. The customer will not receive a receipt for her transaction. Her second option, upon completion of her project, is to go to the Express Pay kiosk, insert her bank card, and manually close the transaction by printing a receipt. Her third option is to go to the full-service desk and ask for a receipt.

13. Receipts cannot be reissued by an Express Pay kiosk after the transaction is closed.

14. The Express Pay kiosks locally save a history of the transactions performed on that kiosk for 60 days, and included in this history is whether a receipt was printed. Information regarding whether a receipt was printed is automatically deleted after 60 days. Therefore, it is impossible to determine *specifically which* or even *how many* self-service customers print their bank card receipts from the Express Pay kiosks.

**EXPRESS PAY SOFTWARE AND RECEIPT PRINTING**

15. The Express Pay kiosks located in FedEx Office locations contain uniform hardware and software provided by an outside vendor, EFI, formerly Entrac Technologies.

16. The Express Pay software has been maintained by an outside vendor since 1998. Under FedEx Office direction, EFI performs various maintenance and upgrades/enhancements to the software approximately three times per year.

17. In 2009, one such upgrade, referred to as "Express Pay 4.5," included a change to the appearance of customer receipt information to support FedEx

SF/2632240v1

DECLARATION OF MICHAEL JAVAHERIAN IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Office's loyalty program. A pilot of Express Pay 4.5 was installed in two locations in January 2009. After the pilot was evaluated and remediated as necessary, a phased rollout of the Express Pay 4.5 software took place nationwide between early January 2009 and April 15, 2009. Although the software upgrade concerned FedEx Office's loyalty program only, as an inadvertent side effect, the Express Pay system began printing receipts containing the first two digits of customer bank card numbers, in addition to the last four.

18. Prior to the Express Pay 4.5 upgrade, the receipts printed by the Express Pay system masked a customer's entire bank card number, with the exception of the last four digits.

19. Because this upgrade was installed as part of the Express Pay system, only transactions involving the Express Pay system's self-service machines would result in receipts containing the first two digits of customer bank card numbers, in addition to the last four.

20. Prior to and following installation of Express Pay 4.5, personnel from both EFI and FedEx Office repeatedly tested and evaluated the software for functionality and compliance with laws and regulations believed to be applicable to the features intended by the upgrade. However, because the upgrade was not intended to have any impact on the appearance of customer bank card information on a receipt, the unintended appearance of the first two digits of the customer bank card number, in addition to the last four, went unnoticed.

21. I was involved in the testing and installation of the Express Pay 4.5 software, and have attempted to determine how that software upgrade caused the Express Pay kiosks to begin printing receipts containing the first two digits of customer bank cards, in addition to the last four. To the best I can determine, the Express Pay 4.5 software release included considerable work in and around the code for receipts, and while working in this area, a change to the part of the code

SF/2632240v1

DECLARATION OF MICHAEL JAVAHERIAN IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

controlling the appearance of customer bank card numbers was inadvertently made.

22. Management personnel at FedEx Office first became aware that the Express Pay kiosks were printing the first two digits of customer bank card numbers, in addition to the last four, when FedEx Office received from Plaintiffs' counsel a "Notice to Cease and Desist FACTA Violations; and Notice of Class Action Lawsuit" on February 5, 2010. FedEx Office never received any other customer complaints regarding the printing of these digits.

23. After receiving this notice, FedEx Office acted immediately to stop the Express Pay kiosk machines from printing the first two digits of customer card numbers. Within days of receiving Plaintiffs' notice, FedEx Office had worked with EFI to develop and implement a software upgrade, referred to as "Express Pay 4.7," which included a function that caused the Express Pay kiosks to cease printing the first two digits of card numbers on customer receipts. This software upgrade was rolled out in a phased deployment process, and the upgrade was complete within different FedEx Office stores across the country at different chronological times. The 4.7 upgrade was started on February 15, 2010, and fully completed nationwide by April 16, 2010.

24. FedEx Office does not generally track the date of when a software roll-out occurs at a particular location. Because FedEx Office operates over 1,800 locations, it would be an arduous and complicated task to determine the date on which the Express Pay 4.5 software as well as the 4.7 upgrade was functioning at each location – and thus the dates on which the receipts containing the first two and last four digits of bank card numbers were printed -- due to the phased roll-out installation dates for both the 4.5 and 4.7 upgrades. Additionally, because this information is not tracked with specificity, the dates that a particular store was printing (or not printing) bank card receipts that showed the first two digits could not be determined with precision.

SF/2632240v1

DECLARATION OF MICHAEL JAVAHERIAN IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## ESTIMATED NUMBER OF RECEIPTS PRINTED BY KIOSKS

25. Because not all bank card customers that use the self-service machines choose to obtain receipts, FedEx Office is unable to determine the number of customers who received bank card receipts generated by the Express Pay 4.5 software between April 15, 2009 and April 16, 2010. The Express Pay kiosks do not have an internal mechanism for determining which customers or how many customers used the kiosks or requested receipts from the kiosks during this timeframe, nor is this information otherwise maintained by FedEx Office. FedEx Office does not maintain copies of receipts for those who used the kiosks during the putative class period, and the act of printing a receipt does not generate data that allows FedEx Office to identify kiosk customers by card number or any other method during the putative class period.

26. The Express Pay kiosks have a transaction history that includes information about whether a receipt was printed in connection with a particular bank card transaction. Information regarding whether a receipt was printed is automatically deleted after 60 days.

27. In connection with discovery requests in this case, FedEx Office recently used a sampling of the 60-day transaction histories from the Express Pay system to estimate the percentage of self-service bank card customers who generally print their receipts. To do this, a random sampling of 30 FedEx Office retail locations was identified, and then the 60-day transaction histories stored in the Express Pay systems in those locations was taken. These FedEx Office locations represented a cross-section of high, medium, and low volume stores. Based on the information contained in these transaction histories, it appeared that, on average, bank card customers using the self-service machines printed their receipts 20.15% of the time.

28. During its regular course of business, FedEx Office stores data that includes the total number of bank card transactions conducted at the self-service

SF/2632240v1

machines over time. Using this information, it was determined that between April 15, 2009 and April 16, 2010, customers conducted 29,135,819 transactions using bank cards at FedEx Office's self-service machines.

29. In order to *estimate* the *approximate* number of self-service bank card customers who *may have* printed a receipt between April 15, 2009 and April 16, 2010, we multiplied the total number of self-service bank card transactions during that time period (29,135,819) by the average percentage of such customers who receive receipts (20.15%). Based upon this calculation, we estimate that the Express Pay 4.5 software generated approximately 5,870,868 bank card receipts between April 15, 2009 and April 16, 2010. It is important to note, however, that this is simply an estimate based on a sampling done later than the relevant period involved in this suit. **The company has no way to know how many receipts were actually printed during that time period, nor is there any way to identify which customers printed receipts during that time.**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 9th day of December 2011, at DALLAS, TX.

_____
MICHAEL JAVAHERIAN

SF/2632240v1

DECLARATION OF MICHAEL JAVAHERIAN IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

**RAZMIG TCHOGOIAN v. FEDEX OFFICE AND PRINT SERVICES, INC.**
U.S. District Court, Central District of California, Case No. 8:10-cv-01008-AG-MLG

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Sedgwick LLP, 333 Bush Street, 30th Floor, San Francisco, California 94104-2834. On December 12, 2011, I served the within document(s):

**DECLARATION OF MICHAEL JAVAHERIAN IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

☐ FACSIMILE - by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

☒ ELECTRONIC TRANSMISSION– by electronically transmitting the document(s) listed above to the electronic notification address(es) of the addressee(s) listed below.

☐ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ PERSONAL SERVICE - by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ OVERNIGHT COURIER - by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via.

Chant Yedalian, Esq.
**CHANT & COMPANY**
A Professional Law Corporation
10866 Wilshire Boulevard
Suite 400
Los Angeles, CA 90024
Telephone: 424.901.8377
Facsimile: 424.744.4177

Attorneys For Plaintiffs
RAZMIG TCHOBOIAN AND
ANGELA POTIKYAN

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the

1.
PROOF OF SERVICE

SF/2198337v1

U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on December 12, 2011, at San Francisco, California.

_____
LAURA A. FLOOD