1  STEPHANIE SHERIDAN (State Bar No.135910)
   stephanie.sheridan@sedgwicklaw.com
2  VICTORIA PAAL (State Bar No. 260396)
   victoria.paal@sedgwicklaw.com
3  SEDGWICK LLP
4  333 Bush Street, 30th Floor
   San Francisco, CA 94104
5  Telephone: 415.781.7900
   Facsimile: 415.781.2635
6
7  Attorneys for Defendant
   FEDEX OFFICE AND PRINT SERVICES, INC.
8
9
10            UNITED STATES DISTRICT COURT
11            CENTRAL DISTRICT OF CALIFORNIA
12

| | |
|---|---|
| RAZMIG TCHOBOIAN and ANGELA POTIKYAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX KINKOS OFFICE AND PRINT SERVICES, INC.); DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: SACV10-01008-JAK-(MLGx)<br><br>**SUPPLEMENTAL DECLARATION OF EVAN HENDRICKS IN SUPPORT OF FEDEX OFFICE AND PRINT SERVICES, INC.'S JOINT REPORT SUBMISSION**<br><br>Judge: Hon. John A. Kronstadt<br>Date: March 26, 2012<br>Time: 8:30 a.m.<br>Ctrm.: 750 – 7th Floor |

SF/2690992v1

-1-

Under penalty of perjury pursuant to 28 U.S.C. section 1746, I, Evan Hendricks, hereby declare and state:

## QUALIFICATIONS & BACKGROUND

1. I make this declaration as an expert in the field of sensitive personal information, including credit and debit card numbers, as it relates to data breaches, data security, identity theft and principles of Fair Information Practices. As such, I have personal knowledge of the facts set forth in this declaration and if called upon to do so, could and would testify competently thereto.

2. Since 1977, information-privacy issues, and the Federal and State laws and policies governing them, have been an integral part of my professional life as an editor and publisher of a specialized newsletter, and for the past decade as an expert witness appearing before courts and Congress, and as an expert consultant to governmental, corporate and non-profit organizations. I was one of the first experts to publish about identity theft when it first surfaced in the 1990s. I was also one of the first experts to publish about data breaches following enactment of the first state law pertaining to them in California, as well as state laws mandating truncation of credit and debit card numbers.

3. My expertise in sensitive personal information, data breaches, data security, and identity theft stems from several of my professional activities, including: (1) Editor/Publisher of a specialty news reporting service that covers credit reporting; (2) author of the book *Credit Scores and Credit Reports: How The System Really Works, What You Can Do* (3rd Ed., Privacy Times 2007), and co-author of a book on information-privacy; (3) an expert witness qualified by the federal courts in litigation involving personal data; (4) an expert who has testified before Congress on numerous occasions, and who has testified twice before the California legislature in regard to legislation on the use of financial data; (5) an expert consultant to government agencies and private corporations; and (6) a

member of the Consumer Advisory Council of Experian, one of the three national Credit Reporting Agencies (CRAs).

4.  Since 1981, I have been Editor/Publisher of *Privacy Times*, a biweekly, Washington-based newsletter that reports on privacy and information law, including the Fair Credit Reporting Act. The newsletter ranges from 8-12 pages, 23 issues per year. This means that in this newsletter (and its three-year predecessor), I have researched, written, edited and published an estimated 2,000 pages relating to information law, policy and organizational practice, including Congressional and State legislative actions, judicial opinions, technology developments, industry trends and actions, executive branch policies and consumer news. These endeavors have allowed me to accumulate a specialized body of knowledge in relation to the collection, use and disclosure of credit report data and personal financial information, and the standards governing them. *Privacy Times* is a subscription-only newsletter. The readers are generally the attorneys and specialists within government agencies, corporations, law firms, universities and public interest groups that are responsible for issues relating to freedom of information and privacy laws, including the FCRA and similar State statutes.

5.  I am author of the book, *Credit Scores and Credit Reports: How The System Really Works, What You Can Do, 3rd Ed.* (Privacy Times 2007). The book has 23 chapters, 399 pages and 415 footnotes. As the title indicates, it describes how the credit scoring and credit reporting systems work and what consumers can do to obtain their reports, read and understand them, correct errors in them and enforce their rights. I also am co-author of *Your Right To Privacy: A Basic Guide To Legal Rights In An Information Society* (2nd Ed., Southern Illinois University Press, 1990), which has a chapter on credit reporting. I was also a contributor to *Fair Credit Reporting, 6th Ed.* (National Consumer Law Center, 2006), the leading manual for FCRA practitioners.

6. Since the early 1990s, I have served as an expert witness in numerous cases involving alleged misuse and/or mismanagement of personal data and have been qualified by the federal courts.

7. I have testified before Congress on numerous occasions, including several hearings focused on breaches of consumers' sensitive personal data. I was intimately involved in the work, discussions and negotiations leading up to the 2003 FACT Act Amendments, including the provisions mandating truncation of credit and debit card numbers. This included communicating and working with officials from the credit card industry. A true and correct copy of my *Curriculum Vitae* is attached hereto as Exhibit A.

8. Since August 1998, I have served under contract as a member of the Social Security Administration's Panel Of Privacy Experts advising the agency on a host of issues. In 2002, the U.S. Postal Service retained me under contract to review its re-writing of its Privacy Act notices to ensure they were understandable to the public and consistent with the Privacy Act's goals of ensuring FIPs. From 2002 – 2004, I served on the Consumer Advisory Council of Experian (formerly TRW), a national CRA and vendor of other information services. In 1990, Equifax, another national CRA, published "The Equifax Report on Consumers In the Information Age," a nationwide opinion survey and analysis by Louis Harris and Associates and Prof. Alan F. Westin. The report listed me as a privacy expert to whom the authors expressed appreciation for my advice on survey coverage.

9. Since 2005, I have served at times as a consultant to ID Watchdog, a company offering identity theft, monitoring, protection and resolution services.

## DETERMINING WHETHER A CARD IS CONSUMER VERSUS BUSINESS-ISSUED

10. I have reviewed plaintiffs' receipts at issue in this case. There is no way that anyone can determine, from the face of these receipts alone, whether they were issued for purchases made with a consumer or business-issued card.

11. Although some credit or debit cards indicate on their face whether they are business-issued, there is no uniform way to determine with certainty from looking at every credit or debit card alone whether that card is consumer or business-issued. It is not apparent on the face of some cards that they are business-issued. I have reviewed VISA, MasterCard, Discover, and AmericanExpress's card rules, and they do not require that all business-issued cards be labeled with language indicating such issuance type. Indeed, while some business-issued cards are labeled "corporate" or "professional," not all bear indicia of the fact that they are business-issued on the face of the card.

12. Any process to determine whether a card is consumer versus business-issued that requires acquiring all or a significant portion of a card number will expose the cardholder to a significantly greater risk of identity theft than he or she faced by the printing of a receipt with the first two and last four digits of the card number. As set forth in my Declaration in Support of FedEx Office's Opposition to Plaintiffs' Motion for Class Certification (Docket No. 90), the numbers immediately following the first six digits (the BIN number) on a debit or credit card (typically digits 7 through 15) are reserved for an account number specific to the individual who receives the card. These digits may be used to create a counterfeit card and defraud a cardholder. If these digits are made publicly available, the cardholder faces a substantial risk of identity theft. In contrast, the printing of the first two digits of a card number, which is what I understand to be the basis of plaintiffs' complaint in this case, does not supply a fraudster with information sufficient to create or even assist in creating a counterfeit card.

13. Potential class members will face significant identity theft risks if, in order to determine who is a consumer for class membership purposes, a party is required to obtain and compile lists of card numbers or portions thereof. In order to protect customer information, a protective order would be necessary from the court. A protective order is not, however, guaranteed to protect customer data, and

-4-

1  the temptation for a fraudster to violate such an order likely rises with the amount
2  of data available.

3      14.    Although BIN lists are publicly available, their accuracy is not always
4  guaranteed. It is likely that a current BIN list would not reflect BINs from 2009
5  and 2010 with complete accuracy, as BIN variations may have occurred in the
6  interim, for instance, where banks have been acquired or merged since 2009.

7      15.    It is not feasible to determine whether one has used a consumer or
8  business-issued card by looking at a card statement alone. If a card itself does not
9  bear indicia of it being business-issued, this information would also not appear on
10 the card statement. As set forth in paragraph 11, not all business-issued cards are
11 labeled as such. Further, issuing banks do not have uniform policies of record
12 retention with respect with card statements. Generally, a cardholder may access
13 his or her online statements from only one or two years prior. Issuing banks also
14 do not follow a uniform procedure with respect to the account information
15 displayed on card statements. Increasingly, card statements display only redacted
16 account numbers, and it is common for statements to display only the last four
17 digits of account numbers. It is also common for card statements to display only
18 certain digits of a statement number and redact the credit or debit card number in
19 its entirety. In these situations, it would be impossible to compare the account
20 number to a BIN list to determine whether one is using a business-issued card.
21 Merchant Category Code ("MCC") summaries on card statements likewise do not
22 provide information by which one can tell if a consumer or business-issued card
23 was used. MCC codes are four digit codes that merely classify businesses as
24 predominately providing goods or services for purposes of facilitating IRS
25 reporting procedures. For instance, 7299 is the MCC code for "Dog Grooming
26 Services." MCC codes do not indicate the type of card a customer has used in a
27 specific transaction.
28

16. It would be a clear violation of financial privacy rules, specifically the Gramm-Leach-Bliley Act (15 U.S.C., Subchapter I, §§ 6801-6809), for a merchant bank or card issuer to provide private customer information upon a third party's request.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 20th day of March 2012, at Cabin John, Maryland.

*Evan D. Hendricks*
Evan D. Hendricks
P.O. Box 302
Cabin John, MD 20818
(301) 229-7002

-6-

SUPPLEMENTAL DECLARATION OF EVAN HENDRICKS IN SUPPORT OF FEDEX OFFICE'S JOINT REPORT SUBMISSION