Chant Yedalian, State Bar No. 222325
(chant@chant.mobi)
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Phone: 877.574.7100
Fax: 877.574.9411

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAZMIG TCHOBOIAN and ANGELA POTIKYAN, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>v.<br><br>FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC.); and DOES 1 through 10, inclusive,<br><br>                  Defendants. | Case No.: SACV10-01008 JAK (MLGx )<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with Declaration of Chant Yedalian; and [Proposed] Order, lodged herewith]<br><br>**HEARING**<br>Date:  November 19, 2012<br>Time:  8:30 a.m.<br>Court Room:  750<br>Judge: Hon. John A. Kronstadt |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on November 19, 2012 at 8:30 a.m. or as soon thereafter as the matter may be heard before the Honorable John A. Kronstadt in Court Room 750, located at 255 East Temple Street, Los Angeles, California 90012, Plaintiffs, Razmig Tchoboian and Angela Potikyan, on behalf of themselves and on behalf of the proposed Settlement Class, will and hereby do move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, for an Order granting preliminary approval of the proposed class action settlement on the terms and conditions set forth in the Stipulated Settlement Agreement and Release (hereinafter sometimes referred to as "Settlement" or "Agreement"), a copy of which is attached hereto as Exhibit 1.[1]

Plaintiffs further move the Court for an Order:

1.    Certifying the Settlement Class for settlement purposes;

2.    Appointing Plaintiffs Razmig Tchoboian and Angela Potikyan as the Class Representatives for the Settlement Class;

3.    Appointing attorney Chant Yedalian of Chant & Company A Professional Law Corporation as Class Counsel for the Settlement Class;

4.    Approving the proposed notice to the Settlement Class, including the Summary Notice, Full Notice, and Claim Form attached to the concurrently filed Declaration of Chant Yedalian as Exhibits 2, 4, and 6, respectively;

5.    Directing notice to be made to the Settlement Class as described in the Agreement;

6.    Preliminarily approving the Settlement subject to final review by the Court;

---

[1] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

7.     Establishing deadlines for Settlement Class Members to submit a request for exclusion from the Settlement and to submit objections to the Settlement; and

8.     Setting a final approval and fairness hearing on or about April 8, 2013.

This Motion is based upon this Notice of Motion and Motion and Exhibit 1 attached hereto, the Declaration of Chant Yedalian and Exhibits attached thereto, other documents filed concurrently in support of the Motion, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

DATED:  October 22, 2012      CHANT & COMPANY
                              A Professional Law Corporation


                              By:  __/S/ – Chant Yedalian_____
                                      Chant Yedalian
                              Counsel For Plaintiffs

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION…………………………………………………………1

II.     FACTUAL AND PROCEDURAL SUMMARY………………………..……1

III.    SETTLEMENT DISCUSSIONS…………………………………….......2

IV.     THE SETTLEMENT……………………………………….……………..3

V.      THE SETTLEMENT CLASS………………………………………….6

        A.      Numerosity………………………………………..……………..7

        B.      Commonality…………………………………….…..….….8

        C.      Typicality……………………………….……………...…………9

        D.      Adequate Representation ………………………………………11

        E.      Rule 23(b)(3) Requirements Are Met ……………….…..……11

                1.      Predominance of Common Questions……………………12

                2.      Superiority…………………………………..…………….13

VI.     THE TWO-STEP APPROVAL PROCESS…………….....……………16

VII.    THE PRESUMPTION OF FAIRNESS……………………..…………18

VIII.   THIS SETTLEMENT IS FAIR AND REASONABLE……………..…19

        A.      Risks of Continuing Litigation...……………………...…………20

                1.      "Willfulness"……………………………………………20

                2.      Class Certification………………..………………………20

        B.      Substantial Benefits of Settlement Compared to the Risks
                of Continued Litigation……………………...……………………..22

        C.      Agreement Provides That Change Of Law Before Final
                Approval of Settlement Will Not Compromise Settlement
                Class Members' Benefits..………………………………………24

        D.      The Settlement Is The Product of Extensive Arm's-
                Length Negotiations……………………………………………..25

IX.     PROPOSED NOTICE TO THE CLASS THROUGH SUMMARY
        NOTICE, FULL NOTICE AND CLAIM FORM, SHOULD BE
        APPROVED………………………………………………………25

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Page

X.     DIFFERENCES BETWEEN PLAINTIFFS' AND FEDEX OFFICE'S
       PROPOSED SUMMARY NOTICE, FULL NOTICE
       AND CLAIM FORM…………………………………………………..27

       A.     Differences In The Summary Notice…………………………….28

       B.     Differences In The Full Notice…………………………………29

       C.     Differences In The Claim Form…………………………………30

XI.    AN INCENTIVE AWARD WILL BE SOUGHT FOR EACH
       OF THE NAMED PLAINTIFFS IN CONNECTION
       WITH FINAL APPROVAL OF THE SETTLEMENT…………...………...31

XII.   ATTORNEY'S FEES WILL BE SOUGHT IN CONNECTION
       WITH FINAL APPROVAL OF THE SETTLEMENT……………...…..31

XIII.  CONCLUSION………………………………………………………...32

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                                       **Page(s)**

*Abels v. JBC Legal Group, P.C.*
    227 F.R.D. 541 (N.D. Cal. 2005)……………………………………………11

*Amchem Products Inc. v. Woodward*
    521 U.S. 591 (1997)………………………………………………………15

*Armstrong v. Board of School Directors of the City of Milwaukee*
    616 F.2d 305 (7th Cir. 1980)……………………………………………..17

*Bateman v. American Multi-Cinema, Inc.*
    623 F.3d 708 (9th Cir. 2010)…………………………..12, 14, 16, 21, 23, 24

*Battle v. Liberty National Life Ins. Co.*
    770 F.Supp. 1499 (N. D. Ala. 1991)……………………………………...27

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975)……………………………………………..8

*Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*
    917 F.2d 1171 (9th Cir. 1990)…………………………………………...9-10

*Chalk v. T-Mobile USA, Inc.*
    560 F.3d 1087 (9th Cir. 2009)……………………………………….…14

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992)……………………………………………16

*Craft v. County of San Bernardino*
    624 F.Supp.2d 1113 (C.D. Cal. 2008)……………………..………………23

*Deposit Guar. Nat'l Bank v. Roper*
    445 U.S. 326 (1980)……………………………………………………...14

*Edwards v. First Am. Corp.*
    610 F.3d 514, 517 (9th Cir. 2010)………………………………………24

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974)…………………………………………………7, 14

*Elkins v. Equitable Life Ins. of Iowa*
    1998 WL 133747 (M.D. Fla. 1998)……………………………………15

*Evon v. Law Offices of Sidney Mickell*
    --- F.3d ---,  2012 U.S. App. LEXIS 15861 (9th Cir.  Aug. 1, 2012)………..23

*First Am. Fin. Corp. v. Edwards*
    131 S.Ct. 3022 (June 20, 2011)…………………………………………24

*First Am. Fin. Corp. v. Edwards*
    132 S.Ct. 2536, 2537 (June 28, 2012)……………………………………25

**Page(s)**

*Hammon v. Barry*
     752 F.Supp 1087 (D. D.C. 1990)……………………..……………...18

*Hanlon v. Chrysler Corp.*
     140 F.3d 1011 (9th Cir. 1998)………………………….8, 9, 10, 12, 13, 14

*Hanon v. Dataproducts Corp.*
     976 F.2d 497 (9th Cir. 1992)…………………………………………….10

*Ingram v. The Coca-Cola Co.*
     200 F.R.D. 685 (N.D. Ga. 2001)…………………………..…………….31

*In re Activision Securities Litigation*
     621 F.Supp. 415 (N.D. Cal. 1985)………………………………………...10

*In re Alcoholic Beverages Litigation*
     95 F.R.D. 321 (D.C. N.Y. 1982)…………………………………………...7

*In re Cendant Corp., Derivative Action Litigation*
     232 F.Supp.2d 327 (D. N.J. 2002)…………………………………..………22

*In re Chicken Anti-Trust Litigation*
     560 F.Supp 957 (N.D. Ga. 1980)……………………………….…………...18

*In re Computer Memories Sec. Litig.*
     111 F.R.D. 675 (N.D. Cal. 1986)…………………..…………………….7-8

*In re Heritage Bond Litigation*
     2005 WL 1594403 (C.D. Cal. 2005)……………………………………...22

*In re Pacific Enters. Sec. Litig.*
     47 F.3d 373 (9th Cir. 1995)………………………..…………….16, 18

*In re Portal Software, Inc. Sec. Litig.*
     2007 U.S. Dist. LEXIS 51794 (N.D. Cal. 2007)……………………….17

*Jordan v. Los Angeles*
     669 F.2d 1311 (9th Cir. 1982)………………..…………………......7, 8

*Kesler v. Ikea U.S., Inc., et al.*
     2008 WL 413268 (C.D. Cal. 2008)………….........................................9, 10

*Lerwill v. Inflight Motion Pictures, Inc.*
     582 F.2d 507 (9th Cir. 1978)…………………………………………….11

*Local Joint Exec. Bd. of Culinary/Bartender
Trust Fund v. Las Vegas Sands, Inc.*
     244 F.3d 1152 (9th Cir. 2001)……………..…………………11, 12, 13

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
     834 F.2d 677 (7th Cir. 1987)…………………………….…………..18

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Page(s)

*Martin v. Pacific Parking Systems, Inc.*,
 2012 WL 2552694 (C.D. Cal. July 2, 2012),
 Rule 23(f) petition for permission for discretionary
 leave to appeal the District Court's denial of certification
 granted by 9th Cir. Docket No. 12-80144…………………………………….21

*Medrano v. WCG Holdings, Inc.*
 2007 WL 4592113 (C.D. Cal. 2007)………………………………...……………9, 10

*Mirfasihi v. Fleet Mortgage Corp.*
 356 F.3d 781 (7th Cir. 2004)…………………….……………………….26-27

*Mullane v. Central Hanover Bank & Trust Co.*
 339 U.S. 306 (1950)………………………………………..………………25-26

*Murray v. GMAC Mortgage Corp.*
 434 F.3d 948 (7th Cir. 2006)………………………………………………14

*Murray v. GMAC Mortgage Corp. ("Murray II")*
 2007 WL 1100608 (N.D. Ill. 2007)…………………………………………...10, 16

*Nat'l Rural Telecomm. Coop. v. DirecTV*
 221 F.R.D. 523 (C.D. Cal. 2004)…..…………………………….………….18, 19

*Officers for Justice v. Civil Service Commission of
City and County of San Francisco*
 688 F.2d 615 (9th Cir. 1982)………………………………………..…19, 20, 22

*Phillips Petroleum Co. v. Shutts*
 472 U.S. 797 (1985)……………………………………………………………14

*Priddy v. Edelman*
 883 F.2d 438 (6th Cir. 1989)……………………………………………...18

*Rodriguez v. West Publ'g Corp.*
 563 F.3d 948 (9th Cir. 2009)…………………………………………27, 29, 30

*Silber v. Mabon*
 18 F.3d 1449 (9th Cir. 1994)……………………………………..………..25

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
 79 F.R.D. 571 (E.D. Pa. 1978)……………………………………….………...18

*Staton v. Boeing Co.*
 327 F.3d 938 (9th Cir. 2003)……………………………...……..7, 19, 20

*Strube v. American Equity Life Ins. Co.*
 226 F.R.D. 688 (M.D. Fla. 2005)………...…………………………….15-16

*Tchoboian v. Parking Concepts, Inc.*
 2009 WL 2169883 (C.D. Cal. 2009)……...……………………….8-9, 10

*Torrisi v. Tucson Elec. Power Co.*
 8 F.3d 1370 (9th Cir. 1993)……………………………………………..19

v

Page(s)

*Valentino v. Carter-Wallace*
     97 F.3d 1227 (9th Cir. 1996)………………………………………………13

*Yokoyama v. Midland Nat'l*
     594 F.3d 1087 (9th Cir. 2010)……………………………………………..14

*Zinser v. Accufix Research Institute, Inc.*
     253 F.3d 1188 (9th Cir. 2001)……………………………………………..12

**Federal Statutes**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA") …………...…..14, 16

15 U.S.C. §1681a(c)……………………………………………………………….4, 6

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")…………………………………..…*passim*

15 U.S.C. § 1681n…………………………………………………..….……….2, 10, 14, 20

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23………………………………………………………………7, 12, 13

FRCP Rule 23(a)…………………………………………………..……………7

FRCP Rule 23(a)(1)…………………………………………………….……7

FRCP Rule 23(a)(2)…………………………………………………......……8

FRCP Rule 23(a)(3)……………………………………………………..………9

FRCP Rule 23(a)(4)…………………………………………………..……11

FRCP Rule 23(b)(3)…………………………..……………......7, 11, 12, 13, 14, 16, 25

FRCP Rule 23(b)(3)(A), (B) (C) and (D)…………………………………..14-15

FRCP Rule 23(c)(2)(B)……………………………...…………………..…25, 29, 30

FRCP Rule 23(e)…………………………………………..….....3, 16, 17, 19

FRCP Rule 23(e)(1)……………………………………………………...…25

FRCP Rule 23(f)……………………………………………….…………......21

**Other Authorities**

*Newberg on Class Actions*, 4th Ed…………..……………..………………….17, 18

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

After extensive negotiations, and with the assistance of the Honorable Edward A. Infante (Ret.), the Parties have reached a proposed class-wide settlement of this lawsuit.

Plaintiffs, Razmig Tchoboian and Angela Potikyan, on behalf of themselves and on behalf of the proposed Settlement Class, hereby respectfully move the Court for an Order granting preliminary approval of the proposed class action settlement.

**II.     FACTUAL AND PROCEDURAL SUMMARY**

Plaintiff Mr. Razmig Tchoboian is a customer of FedEx Office and Print Services, Inc. ("FedEx Office").  Docket # 53: Tchoboian Decl. ¶ 3.  During January of 2010, Mr. Tchoboian made photocopies, print and other purchases at a FedEx Office store near his home in Glendale, California.  *Id.* at ¶ 4.  Mr. Tchoboian paid for his purchases using his debit card.  *Id.* at ¶ 5.  He used a FedEx Office self-service machine (which FedEx Office calls Express Pay kiosk) located in the store to print his debit card receipts.  *Id.* at ¶ 6.

The receipts which Mr. Tchoboian received from the Express Pay kiosk each display the first two digits and the last four digits of his debit card number.  *Id.* at ¶¶ 6, 8 and Exhibit 1 attached thereto.

Plaintiff Mrs. Angela Potikyan is also a FedEx Office customer.  During April 7, 2010, Mrs. Potikyan made a purchase of photocopies at a FedEx Office store in Los Angeles, California.  Docket # 54: Potikyan Decl. ¶¶ 3-4.  Mrs. Potikyan paid for her purchase using her credit card.  *Id.* at ¶ 5.  Mrs. Potikyan used a self-service Express Pay kiosk located in the store to print her credit card receipt.  *Id.* at ¶ 6.

The receipt which Mrs. Potikyan received from the Express Pay kiosk displays the first two digits and the last four digits of her credit card number.  *Id.* at ¶¶ 6, 8 and Exhibit 2 attached thereto.

The Fair and Accurate Credit Transactions Act ("FACTA"), which is a subset of the Fair Credit Reporting Act, provides that any merchant which accepts credit and/or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681(c)(g)(1). A merchant who "willfully" fails to comply with FACTA is liable for (1) actual damages, if any, or statutory damages of not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs. 15 U.S.C. § 1681n.

Mr. Tchoboian commenced this action on July 1, 2010 by filing a proposed class action complaint against FedEx Office.[2]

On July 9, 2010, Plaintiffs filed a First Amended Complaint (the "FAC"), against FedEx Office.[3]

Plaintiffs' FAC alleges, *inter alia*, that FedEx Office willfully violated FACTA by printing more than the last five digits of credit and debit card numbers on electronically printed receipts printed at a point of sale or transaction.[4]

**III.   SETTLEMENT DISCUSSONS**

On August 28, 2012, the Parties participated in further mediation with the Honorable Edward A. Infante (Ret.).

Through Judge Infante's assistance, the parties reached an agreement on the class-wide settlement structure and settlement benefits to the settlement class members.

Following the further mediation of August 28, 2012, the Parties received additional assistance from Judge Infante, and also negotiated further amongst

---

[2] The action was originally designated a case number SACV10-1008 AG (MLGx).

[3] Mrs. Potikyan joined the lawsuit as a named plaintiff through the FAC.

[4] Pursuant to a May 13, 2011 Order by the Chief Judge, Hon. Audrey B. Collins, the action was transferred to the Hon. John A. Kronstadt, with the case number revised to SACV10-1008 JAK (MLGx) to reflect Judge Kronstadt's initials.

themselves.  The product of all of these negotiations and exchanges resulted in a long-form Stipulated Settlement Agreement and Release (hereinafter sometimes referred to as "Settlement" or "Agreement"), a copy of which is attached hereto as Exhibit 1.[5]

As part of the Agreement, the Parties agreed to the means of notice and the use of a Summary Notice, Full Notice and Claim Form, the form of each of which would be approved by the Court.  Agreement ¶ 15.a. and b.  The Parties also agreed that if they could not agree as to the content of any of these forms, each side would submit their respective proposed forms for the Court to decide.  Docket # 161: Joint Report Regarding Status of Settlement at p. 4 n. 1.  The Parties also explained this agreement to the Court during the October 1, 2012 Status Conference.

Although the Parties have agreed upon much of the content of the Summary Notice, Full Notice and Claim Form, there are a few remaining differences.  These differences are explained in Part X., below.  Plaintiffs' proposed Summary Notice, Full Notice and Claim Form are respectively attached to the Declaration of Chant Yedalian as Exhibits 2, 4 and 6.  The contents of FedEx Office's proposed Summary Notice, Full Notice and Claim Form are respectively attached to the Declaration of Chant Yedalian as Exhibits 3, 5 and 7.

## IV.   THE SETTLEMENT

Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), the parties have agreed to settle this matter upon the terms and conditions set forth in the Agreement.

A summary of the terms of the Settlement is as follows:

- This Settlement concerns consumer receipts printed during the April 2009 to April 2010 time period which display the first two and last four digits of the respective consumer's credit or debit card number.  Agreement ¶ 12.

---

[5] Capitalized terms shall have the same meanings as in the Agreement, unless indicated otherwise.

• The subject receipts were printed at FedEx Office retail store locations nationwide (all 1,795 stores, in all 50 states plus D.C.).[6]

• For the purposes of the Settlement, the Parties have stipulated to the certification of the following Settlement Class: "All consumers, as defined by 15 U.S.C. §1681a(c), in the United States of America who can present an original or copy of a printed FedEx Office receipt printed between April 2009 and April 2010 displaying the first two and last four digits of their credit or debit card number." Agreement ¶ 12.

• This is a claims-made Settlement, which allows Settlement Class members who submit a valid and timely claim, to receive a $50.00 Store Value Card which may be used for the following FedEx Office Express Pay services: copy machines (black and white and color copies), facsimiles, computer rentals, Lapnet Stations, and Sony Picture Stations.  Store Value Cards are fully transferrable, but may not be redeemed for cash, and they have an expiration date of five years, after which the remaining value thereon escheats to the State, subject to any applicable state or federal escheatment laws.  Agreement ¶ 14.a.

• As part of the Settlement, FedEx Office shall also implement a written FACTA compliance policy, which will include a statement that it will not print more than the last five digits or expiration date of a credit or debit card on any printed receipt provided to a customer of FedEx Office.  Agreement ¶ 14.c.

• FedEx Office does not know the identities of absent Settlement Class members.  Docket # 86: Maxey Declaration ¶ 8.  The Parties have therefore agreed that notice to the Settlement Class members will be given in the following ways: For a period of forty-five calendar days, FedEx Office will post a Summary Notice on each ExpressPay kiosk in each FedEx Office Store located in the United States of America.  In addition to describing the available benefits under this Settlement, the

---

[6] Docket # 56-4: Second Supplemental Responses, Response to Interrogatory No. 1 at p. 4:22-25 and Exhibit A attached thereto.

1    Summary Notice shall include the Settlement Website address and a toll-free

2    telephone number.  Agreement ¶ 15.a.  FedEx Office will publish a website on the

3    internet (the "Settlement Website") that will set forth a summary of the terms of the

4    Settlement, state the means by which Settlement Class members may communicate

5    with Class Counsel, and provide instructions regarding opting out of the Settlement.

6    The Settlement Website will also provide, free of charge, viewable, printable, and

7    downloadable copies of each of the following documents in PDF file format: the

8    Agreement; the Court's order preliminarily approving the Settlement and certifying

9    the Settlement Class; proof of claim forms ("Claim Forms"); and the full class

10    action settlement notice ("Full Notice").  Agreement ¶ 15.b.

11        •    Settlement Class members will have forty-five days from the date the

12    Summary Notice is first posted by FedEx Office to submit a completed Claim Form

13    to a third-party settlement administrator.[7]  Agreement ¶ 14.b.

14        •    Settlement Class members will have forty-five days from the date the

15    Summary Notice is first posted by FedEx Office to opt-out of the Settlement by

16    sending a written request to the settlement administrator.  Agreement ¶ 17.a.

17        •    Settlement Class members will have forty-five days from the date the

18    Summary Notice is first posted by FedEx Office to object to the Settlement.  Any

19    such objections must be filed with the Court and also served on Class Counsel and

20    counsel for FedEx Office. Agreement ¶ 18.a.

21        •    All notice and settlement administration costs, including but not limited

22    to the costs of a third-party settlement administrator, will be paid for by FedEx

23    Office.  Agreement ¶¶ 14.b and 15.

24        •    As part of this Settlement, Class Counsel will request that the Court

25    order that an award be issued to each of the named Plaintiffs to compensate them for

26    their services as the representatives of the Settlement Class.  FedEx Office reserves

27

28        [7] FedEx Office has informed Plaintiffs that it has selected Kurtzman Carson Consultants LLC as the third-party settlement administrator.

the right to oppose any such application. The award, if and when issued by the Court, will be paid by FedEx Office.   Agreement ¶ 21.

- As part of this Settlement, FedEx Office will pay the reasonable attorneys' fees and costs of Class Counsel in an amount to be determined by the Court.  Class Counsel intends to submit a motion for attorney's fees and costs to the Court.  FedEx Office reserves its right to oppose such motion on any and all grounds, and both parties reserve their respective rights to appeal any orders issued by the Court on such motion.  Nothing in the Settlement precludes the parties and counsel from subsequently reaching a separate agreement regarding Class Counsel's entitlement to attorney's fees and costs, subject to Court approval.  Agreement ¶ 22.

- Class Counsel's motion for an award of attorney's fees and costs will be posted on the Settlement Website no later than thirty calendar days before the final fairness hearing scheduled by the Court.  Any Settlement Class member may object to Class Counsel's motion for an award of attorney's fees and costs.  Any objections must be filed with the Court and also served on Class Counsel and counsel for FedEx Office.  To be effective, any such objections must also be in writing, and must be filed and served no later than twenty-one calendar days before the fairness hearing.  Agreement ¶ 18.b.

## V.    THE SETTLEMENT CLASS

For the purposes of the Settlement, the Parties have stipulated to the certification of the following Settlement Class:

"All consumers, as defined by 15 U.S.C. §1681a(c), in the United States of America who can present an original or copy of a printed FedEx Office receipt printed between April 2009 and April 2010 displaying the first two and last four digits of their credit or debit card number." Agreement ¶ 12.

This Settlement Class is consistent with the class which the Court stated that it is inclined to certify in issuing its tentative rulings on class certification in this case.  Docket # 135: Court's April 23, 2012 Order.

In reviewing a class action settlement, a "district court must assess whether a class exists."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).   The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).   Under these governing standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

## A.    Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."   "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).[8]

In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64, and 71 were large enough such that the other factors need not be considered.  *Ibid.*  "The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (D.C. N.Y. 1982); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish

---

[8]    "Where the class is not so numerous, however, the number of class members does not weigh as heavily in determining whether joinder would be infeasible.  In the latter situation, other factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder."  *Jordan*, *supra*, 669 F.2d at 1319.

1 exact number of class members, but demonstrated that class would "obviously be
2 sufficiently numerous").

3     Here, although the class size is not known, the sheer number of nationwide
4 class members easily surpasses the class sizes in *Jordan* which the Ninth Circuit
5 deemed satisfied the numerosity requirement. Moreover, in issuing its tentative
6 rulings on class certification in this case, this Court stated that "the Court's tentative
7 view is that the numerosity prerequisite has been satisfied." Docket # 135: Court's
8 April 23, 2012 Order.

9     The fact that, by the very nature of the Settlement Class, its members are
10 unknown and cannot be readily identified, further dictates that joinder is
11 impracticable. *Jordan*, 669 F.2d at 1319-1320.

12     **B.**   **<u>Commonality</u>**

13     Rule 23(a)(2) requires that there be "questions of law or fact common to the
14 class." This commonality requirement must be "construed permissively." *Hanlon v.*
15 *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law
16 need not be common to satisfy the rule. The existence of shared legal issues with
17 divergent factual predicates is sufficient, as is a common core of salient facts
18 coupled with disparate legal remedies within the class." *Ibid*. Where a class is
19 united by a common interest in determining whether a defendant's broad course of
20 conduct is actionable, commonality is not defeated "by slight differences in class
21 members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).
22 Commonality cannot be disputed here.

23     All class members share two common legal questions – whether FedEx Office
24 violated FACTA by printing the first two and last four digits of card numbers on
25 receipts, and whether its practice of doing so was "willful." None of the relevant
26 questions relates to the conduct of the class members, but rather all focus on FedEx
27 Office's conduct and culpability in violating FACTA. See, e.g., *Tchoboian v.*
28 *Parking Concepts, Inc.*, 2009 WL 2169883 *5 (C.D. Cal. 2009), petition for

permission to appeal grant of certification denied October 20, 2009, 9th Cir. Docket No. 09-80132 ("The overriding legal issue is whether [defendant']s alleged noncompliance was willful so that the class members are entitled to statutory damages.  Moreover, whether [defendant] violated FACTA is a combined question of law and fact common to all members."); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113 *2 (C.D. Cal. 2007) ("There is a common core of salient facts across the class.  Each member of the proposed class received a non-compliant receipt from [Defendant] after the applicable compliance deadline."); *Kesler v. Ikea U.S., Inc., et al.*, 2008 WL 413268 *3 (C.D. Cal. 2008) ("In this case, the facts and legal issues of each class member's claim are nearly, if not entirely, identical.  There is a common core of salient facts across the class.  Each member of the proposed class received a non-compliant receipt from IKEA after the December 4, 2006 FACTA compliance deadline.  The overriding legal issue is whether IKEA's noncompliance was willful, so that the class members are entitled to statutory damages.")

   In issuing its tentative rulings on class certification in this case, this Court adopted similar reasoning and explained as follows: "The statute at issue authorizes statutory damages for willful violations.  Thus, limiting the class to those persons affected by Defendant's allegedly willful conduct will ensure that the requisite commonality exists because whether Defendant violated the statute willfully will be subject to common proof, as will the question of the appropriate amount of statutory damages."  Docket # 135: Court's April 23, 2012 Order.

   **C.   Typicality**

   Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims ... of the class."   "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Named plaintiffs need not be "identically situated" with all other class members; rather, "[i]t is enough if their situations share a 'common issue of law or fact' [citation] and are 'sufficiently

parallel to insure a vigorous and full presentation of all claims for relief.'"   *Cal.
Rural Legal Assistance, Inc. v. Legal Services. Corp.*, 917 F.2d 1171, 1175 (9th Cir.
1990).   Moreover, typicality refers to the "nature of the claim … of the class
representative, and not to the specific facts from which it arose or the relief sought."
*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).   The test of
typicality is thus "whether other members have the same or similar injury, whether
the action is based on conduct which is not unique to the named plaintiffs, and
whether other class members have been injured by the same course of conduct."
*Ibid*.

Here, Plaintiffs and all other class members allege the same injury, violation
of their FACTA rights resulting from the same course of conduct — the printing of
more than the last 5 digits of their card number on credit or debit card receipts.
Accordingly, this lawsuit is based on conduct which is not unique to Plaintiffs, but
on standardized, uniform conduct that is common to all class members.  Moreover,
the same relief, specifically, statutory damages under 15 U.S.C. § 1681n, is sought
for all class members for FedEx's "willful" violation of FACTA.  Accordingly, the
typicality requirement is satisfied.  *Tchoboian*, 2009 WL 2169883 *5 (C.D. Cal.
2009) (holding that typicality is satisfied because "[Plaintiff]'s claim is, in fact,
'substantially identical' to the claims of the proposed class members-namely, he
alleges that [defendant] issued him a noncompliant receipt in willful violation of the
FACTA"); *Medrano*, 2007 WL 4592113 *3 (same); *Kesler*, 2008 WL 413268 *4
(same); *Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608 *5 (N.D. Ill. 2007)
("Murray II") (typicality satisfied where, despite minor factual discrepancies, all
putative class members had "the same essential characteristics"); *In re Activision
Securities Litigation*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only
material variation among class members is the amount of damages to which each
member is entitled" and that "[s]uch differences are insufficient to defeat class
certification.")

### D.    **Adequate Representation**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Representation is adequate if (1) class counsel is qualified and competent and (2) the class representative and his or her counsel are not disqualified by conflicts of interest. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, there are no conflicts of interest between Plaintiffs and Settlement Class members.  Plaintiffs and each class member assert identical claims for statutory damages arising from the same facts, *i.e.*, FedEx Office's printing of the first two and last four digits of the respective card number on receipts.  Thus, there is no potential for conflicting interests in this action.  *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (no conflict where claims asserted by plaintiff and class members arise from defendants' use of form letters allegedly violating the Fair Debt Collection Practices Act).  Moreover, there is no basis for asserting against Plaintiffs any unique defenses that FedEx Office could not assert against any other Settlement Class member.  Nor is there any basis to suggest that Plaintiffs lack sufficient zeal or competence.

Nor are their any conflicts with Plaintiff's counsel.  Plaintiffs are represented by highly capable and competent counsel experienced in class action litigation, including FACTA lawsuits.  Yedalian Decl. ¶¶ 26-40.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

### E.    **Rule 23(b)(3) Requirements Are Met**

The Parties seek certification pursuant to Rule 23(b)(3), which authorizes certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." FRCP 23(b)(3). Rule 23(b)(3)'s predominance and superiority factors are satisfied.

### 1.      Predominance of Common Questions

To satisfy predominance, common questions of law or fact must "present a significant aspect of the case" and be capable of resolution "in a single adjudication." *Hanlon*, 150 F.3d at 1022-1023; *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

In this case, whether FedEx Office violated FACTA "willfully" is the central issue that clearly predominates over any individual issues. Whether FedEx Office did so depends upon facts concerning its own conduct — conduct that applies uniformly to all class members in this case.

That common issues predominate is also bolstered by the fact that the available remedy in this case is statutory damages. As the Ninth Circuit explained in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010), "irrespective of whether Bateman and all the potential class members can demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages."

That common issues predominate is also evidenced by the fact that all class members' claims involve the very same conduct by FedEx Office—the printing of receipts which contain the first two and last four digits of a card number.

In issuing its tentative rulings on class certification in this case, this Court explained as follows: "The proposed class would meet the requirements of Rule 23,

with a resulting trial on liability featuring the common 'glue' of whether Defendant acted willfully in allegedly violating the operative statute by printing the receipts with the unauthorized credit card digits." Docket # 135: Court's April 23, 2012 Order.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

### 2. Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alterative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

In *Local Joint Executive Board of Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330. Here, class members can recover, at most, statutory damages in an amount between $100 and $1,000 per violation. As in *Culinary/Bartender Trust Fund*, "This case involves multiple claims for relatively small individual sums.... If plaintiffs cannot proceed as a class, some-perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. 'Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Id*. at 1163; see also *Hanlon*, 150 F.3d at

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1023 (explaining that "In this sense, the proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir. 2010); ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009)  ("policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the FCRA[9], the Seventh Circuit held as follows: "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

The Supreme Court has similarly held.  *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797, 809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs totaled $1,006.00.  Such plaintiffs would be unlikely to obtain legal redress…. This, of course, is a central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount.  Economic reality dictates that petitioner's suit [involving individual damage of $70] proceed as a class action or not at all").

The above authorities clearly dictate that the superiority requirements of Rule 23(b)(3) are satisfied here.

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are (A) the interest of class members in individually controlling the prosecution of separate actions; (B) the extent and nature of any

---

[9] "FACTA and other provisions of the FCRA [the Fair Credit Reporting Act] share the same statutory damages provision, see 15 U.S.C. § 1681n."  *Bateman, supra*, 623 F.3d at 715.

litigation concerning the controversy already commenced by other class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in
the particular forum; and (D) the difficulties likely to be encountered in the
management of a class action.   However, when a court reviews a class action
settlement, the fourth factor does not apply.   In deciding whether to certify a
settlement class action, a district court "need not inquire whether the case, if tried,
would present intractable management problems." *Amchem Products Inc. v.
Woodward*, 521 U.S. 591, 620 (1997).   The remaining factors set forth in Rule
23(b)(3)(A), (B) and (C) all favor class certification in this case.

First, class members have no particular interest in individually controlling the
prosecution of separate actions.   Statutory damages cannot exceed $1,000, and the
fact of the matter is that there is no other known separate action filed or prosecuted
by any other class members.   Moreover, any Settlement Class member who wants to
pursue actual damages can opt out of the Settlement.

Second, and as explained above, the Parties are not aware of any other
litigation regarding the FACTA violations at issue in this case.

Third, it is desirable to concentrate the litigation in this forum because all of
the named parties, including FedEx Office, reside in California[10] and the alleged
FACTA violations involve all of FedEx Office's stores in California and within this
district.   Moreover, the Parties have actively litigated this matter in this Court and
neither party has moved to transfer venue to another district.   Further, well before
the proposed Settlement in this case, FedEx Office "admit[ed] that venue is proper
in this district."   Docket #23: FedEx's Answer ¶ 8.   Moreover, the parties have
reached a Settlement.   "With the settlement in hand, the desirability of concentrating
the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Iowa*, 1998
WL 133747 *19 (M.D. Fla. 1998); *Strube v. American Equity Life Ins. Co.*, 226

---

[10]   In its Answer, "FedEx Office admits that it does business and resides in
this district."   Docket #23: FedEx's Answer ¶ 7.   Plaintiffs likewise reside in this
district. Docket #4: FAC ¶¶ 9-10.

F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").

The conclusion is inescapable that there simply is no better method than a class action for resolving all the claims of the Settlement Class Members in this case. The conclusion of the court in *Murray II*, where the court certified a case involving claims for statutory damages under the FCRA, applies equally here:

> "This is a case where class certification presents the most efficient means of adjudicating the controversy. The class is numerous but the potential recovery for each class member is quite small. Indeed, it is exceedingly unlikely that many individuals would wish to go to court for a potential recovery of $100-or that they could find counsel willing to represent them." *Murray II*, 2007 WL 1100608 *7.

Finally, FACTA is a consumer protection statute which serves not just to compensate, but also to "deter" future violations. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010). As the Ninth Circuit has also explained, this "deterrent purpose" of FACTA is served by certification: "we are quite sure that certification of a class here would preserve, if not amplify, the deterrent effect of FACTA." *Id.* at 723.

## VI.   THE TWO-STEP APPROVAL PROCESS

There is a "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of continued litigation. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

A settlement of class litigation must be reviewed and approved by the Court. FRCP Rule 23(e). This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final review after notice has been distributed to the class members for their comment or objections. This Motion concerns the first step.

"The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)).  The purpose of this hearing is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."  *Ibid.* "[I]f the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'" *In re Portal Software, Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794 at 14-15 (N.D. Cal. June 30, 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

At the second step of the approval process (usually referred to as the fairness hearing or final approval hearing), after class members have been notified of the proposed settlement and have had an opportunity to be heard, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314.

Thus, the preliminary approval of the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements. As Professor Newberg comments, "The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary.  The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing." *Newberg on Class Actions*, 4th Ed., § 11:26.

## VII. THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered. In short, there is a presumption that the negotiations were conducted in good faith. *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been intimately involved in this litigation. *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. [citation.] This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also Newberg*, § 11:47.

An additional compelling fact in this case is that the Settlement was reached with the assistance of the Honorable Edward A. Infante (Ret.), the former Chief Magistrate Judge of the United States District Court for the Northern District of

1  California, who has substantial experience with class action settlements.[11]  Yedalian

2  Declaration ¶¶ 2-4.

3  **VIII.  THIS SETTLEMENT IS FAIR AND REASONABLE**

4          The Settlement is well within the range of reasonableness and preliminary

5  approval should be granted.  No single criterion determines whether a class action

6  settlement meets the requirements of Rule 23(e).  In connection with final approval

7  determinations, the Ninth Circuit has directed district courts to consider a variety of

8  factors without providing an "exhaustive list" or suggesting which factors are most

9  important.  *Staton*, *supra*, 327 F.3d at 959.  "The relative degree of importance to be

10  attached to any particular factor will depend upon and be dictated by the nature of

11  the claim(s) advanced, the type(s) of relief sought, and the unique facts and

12  circumstances presented by each individual case."  *Officers for Justice v. Civil*

13  *Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th

14  Cir. 1982).  Indeed, "one factor alone may prove determinative in finding sufficient

15  grounds for court approval."  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D.

16  523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376

17  (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

18          Due to the impossibility of predicting any litigation result with certainty, a

19  district court's evaluation of a settlement essentially amounts to "nothing more than

20  'an amalgam of delicate balancing, gross approximations and rough justice.'"

21  *Officers for Justice,* 688 F.2d at 625.  The ultimate touchstone, however, is whether

22  "class counsel adequately pursued the interests of the class as a whole."  *Staton*,  327

23  F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*, the district

24  court's role in evaluating a class action settlement is therefore tailored to meet that

25  narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary

26  to reach a reasoned judgment that the agreement is not the product of fraud or

27

28  _____
   [11]  Judge Infante's "Biography" is posted on the internet at the URL
   http://www.jamsadr.com/infante/.

overreaching by, or collusion between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest. *Staton*, 327 F.3d at 961. Some of the factors which were considered in evaluating the reasonableness of this Settlement are as follows:

### A. <u>Risks of Continuing Litigation</u>

Absent this Settlement, there are very real risks involved in continued litigation, including extensive delays, potential appeals and the possibility that Settlement Class members may ultimately end up with no recovery.   Yedalian Declaration ¶ 5.

### 1. "Willfulness"

In order to recover any statutory damages and other remedies under 15 U.S.C. § 1681n, Plaintiffs must show that FedEx Office engaged in "willful" conduct. However, FedEx Office has vigorously denied that its conduct was willful.  For example, FedEx Office has claimed among other things, that the printing of the first two and last four digits on customer receipts occurred inadvertently and as a side effect of a software upgrade.  In contrast, Plaintiffs believe, among other things, that the printing of excess digits was reckless and the result of a lack of adequate measures to safeguard consumer rights.

Regardless of how strongly the Parties' feel about the merits, the Parties face issues and risks concerning how the legal requirements for a "willful" violation of FACTA will be applied to the particular facts of this case.  Yedalian Declaration ¶ 7.

### 2. Class Certification

The Court is also well aware of the sharply divergent positions on class certification in this case, absent a settlement.  FedEx Office has denied that for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment.  Yedalian Declaration ¶ 8.

At this time this lawsuit was filed (on July 1, 2010), the overwhelming majority of district courts within the Central District of California had previously denied class certification in FACTA cases.  Yedalian Declaration ¶ 9.

Plaintiffs believe that the Ninth Circuit's decision in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 717 (9th Cir. Sept. 27, 2010), which reversed the denial of class certification in an another FACTA case involving the printing of excess digits, changed the landscape with respect to FACTA cases and strongly supports certification in this case.  Yedalian Declaration ¶ 10.

Additionally, the Court in this case, although expressing its intent to limit the class to those consumers who presently posses a receipt with the first two and last four digits of their card number, has stated that its tentative view is to grant class certification.  Docket # 135: Court's April 23, 2012 Order.

Yet, as demonstrated by the Docket entries in this case, absent a settlement, class certification remains a hotly contested matter in this case, and there are risks attendant in continued litigation of these issues, including, at a minimum, delays and potential appeals.  Yedalian Declaration ¶ 12.

For example, even after the Ninth Circuit's decision in *Bateman*, one District Court within the Central District recently denied class certification in a FACTA case, and FedEx Office brought that to the attention of this Court, see Docket # 157 citing *Martin v. Pacific Parking Systems, Inc.*, 2012 WL 2552694 (C.D. Cal. July 2, 2012).  On September 6, 2012, the Ninth Circuit granted a Rule 23(f) petition for permission for discretionary leave to appeal the District Court's denial of certification in *Martin* (9th Cir. Docket No. 12-80144).  Yedalian Declaration ¶ 13.

In sum, while Plaintiffs feel strongly about certification in this case, *Martin* is a recent example of a FACTA case demonstrating the risks inherent in certification, including, at a minimum, delays and potential appeals.  Yedalian Declaration ¶ 14.

**B.**     **Substantial Benefits of Settlement Compared to the Risks of Continued Litigation**

The Settlement provides for substantial benefits.

In this case, Settlement Class members who submit a valid claim may receive a $50.00 Store Value Card.  Agreement ¶ 14.a. and b..

The value of the Store Value Card is considerable in that it is 50% of the minimum statutory damages ($100) available for a willful violation of FACTA. Although compared to the maximum possible recovery of $1,000 in statutory damages, $50.00 is a 5% value (which is not insubstantial), the propriety of awarding *full* statutory damages to Settlement Class members who do not claim actual monetary loss is strongly disputed.  Many FACTA defendants have argued that lack of "actual harm" precludes, if not any award of statutory damages to begin with, at the very least "excessive" statutory damages.  Since it remains to be seen how courts will resolve such constitutional challenges to statutory damage awards under FACTA, the value negotiated by the Parties represents a fair compromise well within the range of reasonableness.  Yedalian Declaration ¶ 16.

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, *supra*, 688 F.2d at 625.  Moreover, as long as the Settlement is reasonable, it does not matter that under the best case scenario, the potential value of the case may be much higher.  *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

Another benefit of this lawsuit and Settlement is the fact that, as part of the Settlement, FedEx Office has agreed to implement a written FACTA compliance

policy, which will include a statement that it will not print more than the last five digits or expiration date of a credit or debit card on any printed receipt provided to a customer of FedEx Office.  Agreement  ¶ 14.c.  This FACTA compliance policy ensures that FedEx Office will not continue to violate the law, willfully, inadvertently or otherwise.

Such non-pecuniary benefits are properly considered in judging the results of the lawsuit.  *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue).  This is especially true with a consumer protection statute such as FACTA which, as the Ninth Circuit has held, serves both a compensatory and "deterrent purpose." *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010).  "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'"  *Ibid.* The importance of such non-pecuniary benefits was also recently explained by the Ninth Circuit in a case involving another consumer protection statute, the Fair Debt Collection Practices Act:

> "The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like Lemberg to act as private attorney generals to pursue FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to benefit from this case.  Mickell admits that he has ceased his practice of sending letters to debtor's workplaces, a benefit to all class members.  Furthermore, certifying the class will serve a 'deterrent' component to other debt collectors who are engaging, or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of Sidney Mickell*, --- F.3d ---,  2012 U.S. App. LEXIS 15861 at *38-39 (9th Cir.  Aug. 1, 2012).

### C.    Agreement Provides That Change Of Law Before Final Approval of Settlement Will Not Compromise Settlement Class Members' Benefits

A further benefit of the Settlement assures that if there is an intervening change of law before final approval of the Settlement, the Settlement and Settlement benefits will continue to remain valid, enforceable and available to Settlement Class members.  Agreement ¶ 25.

The significance of this benefit cannot be understated.  For example, as explained by the Ninth Circuit in *Bateman*, in 2008 (while many FACTA lawsuits were then pending) Congress enacted the Credit and Debit Card Receipt Clarification Act ("Clarification Act").  The Clarification Act retroactively granted a *temporary* immunity from statutory damages for FACTA violations to those defendants that printed an *expiration date* "between December 4, 2004, and June 3, 2008 [the date the Clarification Act was enacted]."  *Bateman*, *supra*, 623 F.3d at 717.  As a result of the change of law imposed by the Clarification Act, many FACTA class action cases were dismissed without any recovery for consumers.

The risks posed by potential changes in the law through judicial opinions likewise cannot be understated, particularly in the dynamic area of statutory damage issues.  For example, while this FACTA case was pending, in a case involving another statute, the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the Ninth Circuit reaffirmed the principle that a violation of statute gives rise to Article III standing, even in the absence of actual monetary damages: "The injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"  *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010).   However, the United States Supreme Court granted *certiorari* in the *Edwards* case to consider the Article III standing issue.  *First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (June 20, 2011).   The Supreme Court's anticipated decision was expected to have potentially far reaching effects in the area of statutory damage cases.   The Supreme Court's grant of *certiorari* caused substantial

uncertainty and provided defendants facing statutory damage allegations with a potential defense that the law may change.  On the last day of the Supreme Court's term, the Supreme Court dismissed the writ of certiorari as improvidently granted.  *First Am. Fin. Corp. v. Edwards*, 132 S.Ct. 2536, 2537 (June 28, 2012).  Thus, while no change of law occurred as a result of the Supreme Court's actions in *Edwards*, these events likewise demonstrate the potential for changes in law and the real benefits conferred by the Settlement which safeguards against any such potential changes.  Yedalian Declaration ¶ 20.

**D.     The Settlement Is The Product of Extensive Arm's-Length Negotiations**

The Agreement is the product of extensive, adversarial, arm's-length discussions, negotiations, correspondence, factual and legal investigation and research, and careful evaluation of the respective Parties' strengths and weaknesses. Yedalian Declaration ¶ 21.

Moreover, it was reached with the assistance of the Honorable Edward A. Infante (Ret.), the former Chief Magistrate Judge of the United States District Court for the Northern District of California, who has substantial experience with class action settlements.  Yedalian Declaration ¶ 21.

**IX.    PROPOSED NOTICE TO THE CLASS THROUGH SUMMARY NOTICE, FULL NOTICE AND CLAIM FORM, SHOULD BE APPROVED**

Rule 23(e)(1) provides that: "The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice that is practicable under the circumstances."  Like Rule 23(e)(1), Rule 23(c)(2)(B) does not require actual notice or that a notice be actually received.  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, FedEx Office does not know the identities of absent Settlement Class members.  Docket # 86: Maxey Declaration ¶ 8.  The Parties have therefore agreed that notice to the Settlement Class members will be given in the following ways:

**Summary Notice**

For a period of forty-five calendar days, FedEx Office will post a Summary Notice on each ExpressPay kiosk in each FedEx Office Store located in the United States of America.  In addition to describing the available benefits under this Settlement, the Summary Notice shall include the Settlement Website address and a toll-free telephone number.  Agreement ¶ 15.a.

**Settlement Website Notice**

FedEx Office will publish a website on the internet (the "Settlement Website") that will set forth a summary of the terms of the Settlement, state the means by which Settlement Class members may communicate with Class Counsel, and provide instructions regarding opting out of the Settlement.  Agreement ¶ 15.b

**Full Notice and Claim Form**

The Settlement Website will also provide, free of charge, viewable, printable, and downloadable copies of each of the following documents in PDF file format: the Agreement; the Court's order preliminarily approving the Settlement and certifying the Settlement Class; proof of claim forms ("Claim Forms"); and the full class action settlement notice ("Full Notice").  Agreement ¶ 15.b.

In a case like this, where neither the names nor addresses of Settlement Class members can be ascertained despite reasonable effort, notice by publication and website clearly suffices. *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (notice by publication and website adequate where individual notice impossible; also recognizing increasing importance of website notice as a substitute

form of notice); *Battle v. Liberty National Life Ins. Co.*, 770 F.Supp. 1499, 1515, fn.47 (N. D. Ala. 1991) (individual notice not required where absent members are not identified and cannot be located through diligent efforts) *affirmed*, 974 F.2d 1279 (11th Cir. 1992). Posting of notices at all FedEx Office store locations nationwide which targets Settlement Class members who frequent FedEx Office locations, leaves no room for doubt that the Parties have agreed to provide the best notice under the circumstances.

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

## X.   DIFFERENCES BETWEEN PLAINTIFFS' AND FEDEX OFFICE'S PROPOSED SUMMARY NOTICE, FULL NOTICE AND CLAIM FORM

As part of the Agreement, the Parties agreed to the means of notice and the use of a Summary Notice, Full Notice and Claim Form, the form of each of which would be approved by the Court.  Agreement ¶ 15.a. and b.  The Parties also agreed that if they could not agree as to the content of any of these forms, each side would submit their respective proposed forms for the Court to decide.  Docket # 161: Joint Report Regarding Status of Settlement at p. 4 n. 1.  The Parties also explained this agreement to the Court during the October 1, 2012 Status Conference.

Although the Parties have agreed upon much of the content of the Summary Notice, Full Notice and Claim Form, there are a few remaining differences.

Plaintiffs' proposed Summary Notice, Full Notice and Claim Form, including the size, font and contents, are respectively attached to the Declaration of Chant Yedalian as Exhibits 2, 4 and 6.  The contents of FedEx Office's proposed Summary Notice, Full Notice and Claim Form are respectively attached to the Declaration of Chant Yedalian as Exhibits 3, 5 and 7.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## A.    Differences In The Summary Notice

The first paragraph of Plaintiffs' Summary Notice includes the phrase "including a $50.00 FedEx Office Store Value Card" after the word "benefits." FedEx Office's Summary Notice does not include this phrase.  This phrase is important to include because it allows a Settlement Class member that sees the Summary Notice to quickly determine that a Store Value Card is available.  The availability of this particular benefit is important to highlight because Settlement Class members must take steps, and have a deadline to take those steps, to obtain the Store Value Card.

FedEx Office's counsel has claimed that this phrase is not necessary, pointing to a Federal Judicial Center example form.  Exhibit 8 to Yedalian Declaration. However, that form belies rather than supports FedEx Office's argument.  That form specifically states the type of benefit, "a payment," which class members may get from a class action settlement.  Here, instead of "a payment," "a $50.00 FedEx Office Store Value Card" is available and should similarly be included to draw the attention of and inform class members.

It should also be pointed out that the example form which FedEx Office relies upon involves a securities class action.  Exhibit 8 to Yedalian Declaration.   In securities class actions, the identities of class members who purchased the securities are frequently known and individual notice, in addition to published notice, are frequently given.  Yet, as the example published summary notice for a securities class action demonstrates, it highlights that the specific benefit of "a payment" is available.  Here, that the identities of the Settlement Class members are not known and that individual notice will not be given, provide even more compelling reasons to include this phrase in the Summary Notice so as to quickly and efficiently draw the attention of and inform class members that "a $50.00 FedEx Office Store Value Card" is available.

The fourth paragraph of FedEx Office's Summary Notice includes the following sentence as the last sentence "If you are affected, you have to decide whether to participate in the Class and be bound by its results, or ask to be excluded and keep your right to sue FedEx Office."  Plaintiffs' Summary Notice does not contain this sentence and Plaintiffs believe that this sentence is not only out of place, but also redundant because the issue is already covered in greater detail in the paragraph of the Summary Notice entitled "WHAT ARE YOUR OTHER OPTIONS?"  Settlement notices must be "clearly and concisely state[d] in plain, easily understood language." Rule 23(c)(2)(B).  "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

For the foregoing reasons, Plaintiffs' proposed Summary Notice should be approved instead of FedEx Office's proposed Summary Notice.

### B.  Differences In The Full Notice

The first paragraph of Plaintiffs' Full Notice includes the phrase "including a $50.00 FedEx Office Store Value Card" after the word "benefits."  FedEx Office's Full Notice does not include this phrase.  The is the same difference that is present with the Summary Notice and the same arguments, stated above, are applicable here.

FedEx Office's Full Notice at page 3, in the paragraph entitled "WHEN CAN I GET A $50 STORE VALUE CARD?" contains the sentence "If the Court approves the settlement, someone may appeal the decision, which could take more than a year to resolve."  Plaintiffs' Full Notice contains the sentence "If the Court approves the settlement, someone may appeal the decision, and that may take additional time to resolve."  There is no reason to include "a year" language or to otherwise speculate, in any way, a time period for any potential appeal.

FedEx Office's Full Notice at page 4, in the paragraph entitled "CAN I EXCLUDE MYSELF FROM THE CLASS?" contains the sentence "You will,

however, keep any rights to sue FedEx Office for these claims and will not be bound by any orders or judgments of the Court."  Plaintiffs' Full Notice does not contain this sentence.  The entire sentence is redundant since the issue is covered in greater detail and has its own section, the very next section at page 4, entitled "IF I DON'T EXCLUDE MYSELF, CAN I SUE THE DEFENDANT FOR THE SAME THING LATER?"  Again, settlement notices must be "clearly and concisely state[d] in plain, easily understood language." Rule 23(c)(2)(B).   "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

For the foregoing reasons, Plaintiffs' proposed Full Notice should be approved instead of FedEx Office's proposed Full Notice.

## C.    Differences In The Claim Form

In Part III, the Verification section, of the Claim Form, FedEx Office's Claim Form includes the phrase "under penalty of perjury that."  Plaintiffs' Claim Form does not include this phrase.

The Settlement agreement does not require class members to make an attestation under penalty of perjury.  It requires them to submit their receipt or a copy of their receipt.  Plaintiffs' Claim Form also requires them to provide their signature and verify that the information they provided is true and correct.  There is no reason to make the Claim Form or claims process more onerous by mandating a "penalty of perjury" term.

For the foregoing reasons, Plaintiffs' proposed Claim Form should be approved instead of FedEx Office's proposed Claim Form.

//
//
//

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## XI.  AN INCENTIVE AWARD WILL BE SOUGHT FOR EACH OF THE NAMED PLAINTIFFS IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

The Parties have agreed as follows:

"21. **Compensation to Class Representatives.**  As part of this Settlement, Class Counsel may request that the Court order that an award be issued to each Plaintiff to compensate them for their service as the representatives of the Settlement Class.  FedEx Office reserves the right to oppose any such application.  The award, if and when issued by the Court, will be paid by FedEx Office by delivering checks (one solely payable to 'Razmig Tchoboian,' and the other solely payable to 'Angela Potikyan') to Class Counsel within twenty (20) business days of the Settlement Date.  The award will be in addition to any other benefit to which Plaintiffs will be entitled under this Settlement as a Settlement Class Member."  Agreement ¶ 21.

The incentive awards will be sought in connection with final approval of the Settlement.  Agreement ¶ 24.c.

Incentive payments serve to reward named plaintiffs for the time and effort expended on behalf of the class, and for exposing themselves to the significant risks of litigation. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001).

## XII.  ATTORNEY'S FEES WILL BE SOUGHT IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

The Parties have agreed as follows:

"22. **Attorneys' Fees and Costs.** As part of this Settlement, FedEx Office will pay the reasonable attorneys' fees and costs of Class

1  Counsel in an amount to be determined by the Court.  Class Counsel
2  intends to submit a motion for attorneys' fees and costs to the Court.
3  FedEx Office reserves its right to oppose such motion on any and all
4  grounds, and both parties reserve their respective rights to appeal any
5  orders issued by the Court on such motion. Nothing in this Settlement
6  precludes the parties and counsel from subsequently reaching a separate
7  agreement regarding Class Counsel's alleged entitlement to attorneys'
8  fees and costs, subject to Court approval."   Agreement ¶ 22.

9  The attorney's fees will be sought in connection with final approval of the
10  Settlement.  Agreement ¶ 24.d.

11  **XIII. CONCLUSION**

12  The proposed class action Settlement is well within the range of reasonable
13  settlements.  It is non-collusive, and it was achieved as the result of informed,
14  extensive, and arm's-length negotiations conducted by experienced counsel and with
15  the assistance of Judge Infante.

16  Plaintiffs respectfully requests that the Court grant preliminary approval of the
17  proposed settlement, sign and enter the proposed Order, and set a final approval
18  hearing on or about April 8, 2013.

19
20  Respectfully submitted,
21
22  DATED:  October 22, 2012  CHANT & COMPANY
   A Professional Law Corporation
23
24
25  By:   /S/ – Chant Yedalian
   Chant Yedalian
26  Counsel For Plaintiffs
27
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT