Chant Yedalian, State Bar No. 222325
(chant@chant.mobi)
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Phone: 877.574.7100
Fax: 877.574.9411

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAZMIG TCHOBOIAN and ANGELA POTIKYAN, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC.); and DOES 1 through 10, inclusive,<br><br>                              Defendants. | Case No.:  SACV10-01008 JAK (MLGx )<br><br>**DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES**<br><br>**HEARING**<br>Date:  April 8, 2013<br>Time:  8:30 a.m.<br>Court Room:  750<br>Judge: Hon. John A. Kronstadt |

## <u>DECLARATION OF CHANT YEDALIAN</u>

I, Chant Yedalian, declare as follows:

I am an attorney at law licensed to practice before all of the courts of the State of California and have been admitted to practice before this Court. I am the attorney for the named Plaintiffs Razmig Tchoboian and Angela Potikyan and the Class Counsel for the Settlement Class, as previously appointed by this Court. As such, I have personal knowledge of, or am informed and believe, the following facts herein stated. If called as a witness, I could and would testify competently to the following:

1.     This Declaration is made in support of the Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payments To The Class Representatives.

## <u>Attorney Time Worked On This Case</u>

2.     Attached hereto as Exhibit 1 is a true and correct redacted copy of my itemized time records which establish the hours which I devoted to this case. These itemized time records show the tasks which I performed, the date I performed the respective task(s), and the amount of time I worked on each task. Certain privileged information, such as dates, have been redacted.

3.     Each and every task which I performed concerns the FACTA cause of action prosecuted, and ultimately settled, in this case. The hours I worked were therefore plainly reasonable and necessary to accomplish these tasks and could and would certainly have been billed to a private client who hired counsel to pursue such litigation.

4.     As shown by my time records, to date I have devoted 2,002.83 hours of my attorney time to this case.

5.     The hours worked include substantial amounts of time caused by litigation decisions and activities of defendant FedEx Office and Print Services, Inc.

("FedEx").   For example, FedEx filed a motion to dismiss and a motion for summary judgment, which I had to oppose and successfully opposed.

6.      My attached time records and this Court's file are replete with many other examples of the substantial litigation time incurred in this case.  For example, my time records reflect the extensive discovery disputes in this case, and the many letters, emails, and conferences that resulted therefrom.  Some of these disputes are reflected in the filings with the Court.  See, for example, Docket Nos. 139, 139-1, 139-2, 139-3, 139-4, 144, 145, 146, concerning a discovery motion, which Magistrate Goldman ultimately decided and through which Plaintiffs and I obtained substantial information.   Yet, many other disputes, including but not limited a discovery motion which FedEx's counsel threatened to bring and which they sent to me and which I briefed and thereafter provided Plaintiffs' opposing portions thereto to FedEx's counsel, were ultimately not filed with the Court (but are reflected in my time records).

7.      The Court is also aware that FedEx often filed briefs and other submissions in excess of the usual Motion-Opposition-Reply framework, thereby resulting in various Plaintiffs' briefs and submissions in response thereto.

8.      In addition to activities caused by FedEx, I also had to engage in extensive efforts to ensure the reasonable prosecution of this case.  These efforts are likewise reflected in my time records.  For example, the Court is well aware of the extensive class certification proceedings which occurred in this case, including the various briefs and hearings required by the Court.  All of these were reasonable and necessary to prosecute this case on a class basis, particularly since, throughout these proceedings, class certification was vigorously contested and opposed by FedEx.

9.      As reflected in my time records, I engaged in many other efforts to reasonably prosecute this case.  Examples of my efforts include investigating the claims and potential defenses, preparing the various pleadings to prosecute the case, performing extensive legal research, reviewing and keeping informed of substantial

developments in the case law which actually occurred during this case (including as to FACTA and statutes with similar provisions), and performing extensive factual research including, but not limited to, research based upon the thousands of pages of documents I obtained from FedEx through discovery, and research involving the extensive credit and debit card issues relevant to the case such as the issuance of cards, card numbers, card processing, issuing and acquiring banks, brands, and other intermediaries and their respective roles, the data involved, including processing means, methods, retention, and purging, business versus consumer card distinctions and differentiations, and BIN related issues.  As the Court is also well aware, many of these efforts and the information I obtained thereby are reflected in the various pleadings in this case, including the class certification briefs and proceedings before this Court.  Some of these efforts, such as the methods Plaintiffs proposed to differentiate consumer transactions from commercial transactions were quite novel and not previously addressed in other FACTA cases.  Although defendants in other FACTA cases had argued that a consumer versus commercial transaction element exists and made *legal* arguments based thereupon, other FACTA cases did not provide the *factual* analysis or the *factual* evidence and underpinnings to support the differentiation methods that were proposed by the Plaintiffs in this case.  Various other novel issues, including those relating to the type of notice, the timing of notice, opt-in versus opt-out and "show-of-hands" issues, and liability versus damages phase issues, were also raised and addressed.

10.   As reflected in my time records, in addition to prosecuting this case, I also engaged in many settlement related efforts, including, but not limited to a mediation in San Francisco and, nearly a year later, a mediation in San Jose.  I personally prepared for both mediations (including the preparation of a thorough mediation brief for each mediation) and I personally travelled to and participated in the mediation in San Francisco and San Jose.  As the sole Plaintiffs' attorney in this

case, I also participated in all of the other settlement related discussions, exchanges and negotiations in this case.

11.     Once a settlement was reached, I also worked on the various settlement documents and class notices and the necessary pleadings, including the motion for preliminary approval and motion for final approval required to obtain approval of the settlement.  These efforts are likewise reflected in my time records and many of the documents ultimately filed with the Court.

12.     I also ensured (and continue to ensure) that the settlement is fairly and properly administered.   These efforts are likewise reflected in my time records and are also evidenced by the *ex parte* application re notice to the class which I made, and which the Court ruled upon, *during* the notice period to the class (*e.g.*, Docket Nos. 171, 172, 176, 177).

13.     Another example of the extent of this litigation is illustrated by the number of emails.  My email file for this case shows over 1,200 emails related to this case.

14.     In sum, as reflected in the above examples and in my time records, this case required me to devote, and I devoted, extensive time and effort.  I believe the Court is well aware of this fact and the fact is also plainly evidenced by the number of Docket entries and corresponding documents filed in this case.

## **Hourly Rate**

15.     My hourly rate is $550.  My rate is based, in part, on my qualifications and experience, a brief summary of which is set forth in paragraphs 58-73, below.

16.     My hourly rate is also consistent with the prevailing attorney fee rates in Los Angeles and within the Central District of California.  As an attorney with more than ten years of experience, I am familiar with the prevailing market rates for skilled and competent class action attorneys within the Los Angeles legal community, including the Central District of California.  My familiarity is based

upon my own work on attorney fee matters, discussions with other class action attorneys, and review of attorney fee applications and court decisions concerning fees in many class action cases.

17.    My hourly rate is also supported by the concurrently filed declarations of experienced class action attorneys J. Mark Moore and H. Scott Leviant who likewise attest to the prevailing attorney fee rates in Los Angeles and within the Central District of California.  As Mr. Moore and Mr. Leviant also attest, they are each familiar with me and my skills as a lawyer, and they have each worked with me as co-counsel on class action matters.

18.    My hourly rate is also supported by rate determinations in other cases.

19.    For example, and as Mr. Leviant attests, he and I worked as co-counsel for more than two years in a class action case entitled *Tran, et al. v. 21st Century Insurance Company*, Los Angeles Superior Court Case No. BC443726.   In *Tran*, the Hon. Maureen Duffy-Lewis approved as reasonable my hourly rate of $550.

20.    As another example, in *Brown v. American Honda Motor Co., Inc.*, Case No. CV 09-06750 MMM (DTBx), 2010 U.S. Dist. LEXIS 144823 at *24-25, Judge Margaret M. Morrow found in her October 5, 2010 Order awarding attorneys' fees in another consumer class action case, that a rate of $545 was reasonable for an attorney with 10 years of experience ("$545 was typical for an attorney with ten years of experience," and was "reasonable").   A true and correct copy of Judge Morrow's October 5, 2010 Order, which I obtained from LexisNexis, is attached hereto as Exhibit 5.

21.    As another example, in *Jarchafjian v. American Multi-Cinema, Inc.*, CV09-03434 JHN (AJWx) (C.D. Cal.), which is a FACTA case which I prosecuted as Class Counsel, Judge Jacqueline H. Nguyen (now Judge of the Ninth Circuit) found in her October 6, 2011 Order (at page 3) that my then hourly rate of $500 is

DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES
AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES

"consistent with the rate for an attorney of Class Counsel's experience."[1]  A true and correct copy of Judge Nguyen's October 6, 2011 Order, which I obtained from the Court's CM/ECF system, is attached hereto as Exhibit 6.

22.     That the rate determination in *Brown* was made in October 2010 and the rate determination in *Jarchaffian* was made in October 2011 further support my $550 hourly rate.

23.     Additionally, to account for the delay in payment, district courts have the discretion to apply the attorney's current rates to all hours billed:

> "District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement."  *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007).

24.     The rationale for this is simple.   Unlike a defense attorney who presumably gets paid shortly after the client is billed, there is a significant delay in payment (if payment is recovered at all) for the class action attorney who may prosecute a case for years without getting paid.  The Supreme Court has cogently explained this principle as follows:

> "Clearly, compensation received several years after the services were rendered — as it frequently is in complex civil rights litigation — is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.  We agree, therefore, that an appropriate adjustment for delay in payment — whether by the application of current rather than historic hourly rates or otherwise — is within the contemplation of the

---

[1] My then hourly rate of $500 (which Judge Nguyen approved in 2011) had been in effect since January 1, 2009.  My rate was increased to $550 in April 2012.

1   statute." *Missouri v. Jenkins*, 491 U.S. 274, 283-284, 109 S.Ct. 2463
2   (1989).

3

4   **Lodestar To Date**

5   25.   The 2,002.83 hours of work which I have devoted to this case
6   multiplied by my $550 hourly rate yields a total lodestar of $1,101,556.50.[2]

7   26.   In addition, I intend to augment my time records and request additional
8   fees to the extent that FedEx causes continued litigation of any fee issue.

9   "'[F]ederal courts, including our own, have uniformly held that time
10   spent in establishing the entitlement to and amount of the fee is
11   compensable.' *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir.
12   1985).  This is so because it would be inconsistent to dilute a fees award
13   by refusing to compensate attorneys for the time they reasonably spent in
14   establishing their rightful claim to the fee." *Camacho v. Bridgeport*
15   *Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008).

16

17   **Other Factors Re Fees**

18   27.   Preclusion Of Other Employment:  I can only properly litigate a limited
19   number of cases at any one time.  The demands of this case were substantial as is
20   evidenced by the number of hours I devoted to this case.  Moreover, I must be
21   specially cautious so as to not spread myself too thin by committing to other work
22   when litigating against a corporate giant like FedEx given the arsenal of attorneys
23   and resources at its disposal and its tendency to fight most issues.  As a result of the
24   substantial time actually required by this case and the fact that such litigation is
25   anticipated to consume substantial time and resources, I was precluded from taking
26   on other legal matters which were available to me and where my time could have

27   _____
28   [2] This amount does *not* include time in connection with appearing for the final
    approval hearing and any post-approval Settlement administration related issues, for
    which I reserve the right to seek additional fees.

DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES
AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES

otherwise been spent.  For these reasons, during the years when this case was pending, I turned down another FACTA case, other statutory violation cases, and two unfair competition cases.

28.   <u>Time Limitations</u>:  The time limitations imposed by the circumstances of this case were substantial.  In fact, since 2010, I have devoted substantially more of my time to this case than any other case that I have worked on since that time period.  That this case required a substantial amount of time since its pendency it obvious.  In addition, the case sometimes required substantial amounts of my time during concentrated or narrow time periods to meet specific demands or filing deadlines.   This case also required substantial attentiveness from me and the preparedness to immediately shift my resources to it throughout most of its pendency given the highly litigious and contested nature of the proceedings.  These facts imposed time limitations that required special attentiveness and a commitment by me to devote substantial time and resources to meet those needs any time they arise.  I made this commitment as is evidenced by, among other things, my time records, my time incurred working on this case, and the documents filed in this case.

29.   <u>Undesireability Of The Case</u>:  From a risk vantage point, this was an extremely undesireable case at the time I agreed to prosecute it.  When this lawsuit was filed, the overwhelming majority of district courts within the Central District of California had previously denied class certification in FACTA cases.  Although the Ninth Circuit later decided *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (2010), which reversed the denial of class certification in another FACTA case, this Court is well aware of the substantial class certification issues that remained.  These included a multitude of factual issues such as, for example, consumer versus business card distinctions and means and methods to differentiate same, proof of receipt issues, and identification and notification of potential class members.

30.   Despite the Ninth Circuit's decision in *Bateman*, many legal issues also continued to remain.  For example, while this FACTA case was pending, in a case

involving another statute, the Real Estate Settlement Procedures Act of 1974 ("RESPA"), the Ninth Circuit reaffirmed the principle that a violation of statute gives rise to Article III standing: "The injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010). However, the United States Supreme Court granted *certiorari* in the *Edwards* case to consider the Article III standing issue. *First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (June 20, 2011). The Supreme Court's anticipated decision was expected to have potentially far reaching effects in the area of statutory violation and class action cases. The Supreme Court's grant of *certiorari* caused substantial uncertainty and provided defendants facing statutory violation allegations with a potential defense that the law may change. This uncertainty created substantial undesireability and posed substantial risk for more than a year during the pendency of this case. On the last day of the Supreme Court's term, the Supreme Court dismissed the writ of certiorari as improvidently granted. *First Am. Fin. Corp. v. Edwards*, 132 S.Ct. 2536, 2537 (June 28, 2012). Thus, while no change of law ultimately occurred, the risk and undesireability posed was serious and endured for a more than a year during the pendency of this case and *while* some of the heaviest litigation in this case was taking place. Other risks likewise remained. For example, one District Court within the Central District denied class certification in a FACTA case, and FedEx Office brought that to the attention of this Court, see Docket No. 157 citing *Martin v. Pacific Parking Systems, Inc.*, 2012 WL 2552694 (C.D. Cal. July 2, 2012). Despite the substantial uncertainty and risk, I zealously, consistently and continuously committed myself and my resources throughout this litigation.

31. <u>Nature And Length Of Relationship With Clients</u>: As reflected in greater detail in the section below concerning the incentive awards to the Class Representatives, the Class Representatives and I continuously committed ourselves

throughout the years of this litigation to ensure a favorable outcome for the best interests of the Settlement Class.

32. <u>Risks Taken By Class Counsel</u>: Class action work requires specialized learning and, particularly with a case like this, the willingness to take large risks. This Court can appreciate that litigating a high-stakes and time-consuming class action case against a large corporate defendant with an arsenal of lawyers and resources at its disposal, with litigation lasting several years, is not appealing to most lawyers. I undertook this lawsuit without any guarantee of any payment, and with any fees that I may recover entirely contingent on obtaining payment from FedEx . Thus, I have borne, and continue to bear, the entire risk of obtaining a fee recovery in this case.

## **Reimbursement Of Costs**

33. I seek reimbursement in the amount of $14,618.94 consisting of the following costs:

| | |
|---|---|
| Complaint Filing Fee: | 350.00 |
| First Mediation Fees: | 6,275.00 |
| Travel & Related For The First Mediation: | 716.25 |
| Second Mediation Fees: | 3,275.00 |
| Travel & Related For The Second Mediation: | 202.74 |
| Expert Fees Re Credit/ Debit Card Issues: | 1,299.95[3] |
| Notice To Class Fees TopClassActions.com: | 2,500.00 |

[3] This consists of a $99.95 fee for a temporary subscription to a website that allows interaction with experts and which I used to find expert Daniella Flanagan. The remaining $1,200 are the fees which were paid to Ms. Flanagan. The amount paid to Ms. Flanagan is not just reasonable, it is quite low considering the services she provided. The issues involved piqued Ms. Flanagan's interest, it was also our first time working together, and she did not charge for much of the time which she devoted to this matter.

DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES

TOTAL:                    $14,618.94

Each of the foregoing costs are accurate, reasonable, necessary and actually incurred and paid.  All of the requested costs are costs that would be billed to a fee paying client separate from hourly rates consistent with the prevailing practice in the Los Angeles legal community, including the Central District of California.

34.     In addition to the foregoing costs, I and/or Chant & Company A Professional Law Corporation incurred and paid various other costs to prosecute this case, including mail and postage, attorney service and courier, parking, online research, copying, court reporter transcript fees and other charges.  However, I am not seeking to recover any of those charges and I am only seeking the recovery of costs itemized in paragraph 33, above.

## Incentive Awards To The Class Representatives

35.     I respectfully request an incentive award in the amount of $7,500 for each of the two Class Representatives.

36.     Were it not for the Class Representatives stepping forward and shouldering the duties of protecting and prosecuting the interests of other Settlement Class members, it is likely the interests of the Settlement Class would neither have been prosecuted, nor benefited.  The parties have acknowledged that, to their knowledge, there is no other litigation, either pending or otherwise, on a class or individual basis, concerning the claims in this lawsuit.

37.     Moreover, I believe the Class Representatives have done all things reasonably expected of them in their capacity as Class Representative to protect and prosecute the best interests of the Settlement Class.

38.     The Class Representatives assisted me in developing the factual background involved in this case, such as their respective experiences at FedEx's facility.

- 11 -

DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES

39.   They also regularly and consistently communicated with me (including in-person, by phone and by email) throughout the years that this lawsuit was pending.

40.   Based upon my discussions and interactions with them I know that the Class Representatives reviewed relevant pleadings and documents, provided their input, and otherwise kept apprised of the litigation related events and developments at all relevant times throughout this case.

41.   Each of the Class Representatives had their deposition taken by the defense and I was present and defended each deposition.   In advance of their deposition each Class Representative spent a significant amount of time with me, including in-person meetings, during which I prepared them for their deposition.

42.   I believe that the Class Representatives committed themselves to this case at all times despite the adversity and potential risks that they faced.

43.   For example, the Class Representatives were subjected to intrusive discovery, including inquiries into their financial and other personal aspects of their life.

44.   As another example, they were subject to liability for defense costs in the event this litigation was unsuccessful.

45.   Nonetheless, I believe they did all things necessary to protect and prosecute the best interests of the Settlement Class.

46.   This also included their participation in the various settlement negotiations that occurred during this case.   For example, each of the Class Representatives travelled from Los Angeles to San Francisco and participated in-person in the first mediation before Judge Infante.   Each of them also provided their respective ideas and input to me in the rounds of negotiations and exchanges that preceded and followed that first mediation, including discussions leading up to the second mediation and the many discussions that followed.   They each also

1 | participated in the process to finalize the written settlement terms and documents,
2 | and the post-agreement phases that followed.

3 |      47.    In sum, each of the Class Representatives contributed as much of their
4 | valuable time as this litigation demanded to ensure a vigilant prosecution of and
5 | favorable outcome for the best interests of the Settlement Class.

6 |      48.    It is fair to say that but for the Class Representatives' actions, there
7 | would be no resulting benefit to individual Settlement Class members.   It is only as
8 | a result of this lawsuit and Settlement that Settlement Class members will receive
9 | pecuniary benefits.   It is also only as a result of this lawsuit and Settlement that
10 | FedEx agreed to implement, for the first time, a written FACTA compliance policy,
11 | which it never previously implemented despite having been previously sued for
12 | other FACTA violations.   Thus, the Class Representatives and I have effectuated
13 | substantial change of conduct, thereby accomplishing the "deterrent" objectives of
14 | FACTA.[4]

15 |      49.    The fact that the Court has already made a preliminary finding that the
16 | Settlement is fair, adequate and reasonable, supports the significance of the benefits
17 | achieved through the Class Representative's initiative and perseverance.

18 |      50.    The requested incentive payment of $7,500 to each of the Class
19 | Representatives for the valuable time and resources they contributed to advance this
20 | litigation is fair and reasonable.

21 | //
22 | //
23 | //
24 | //
25 | //

26 |

27 |     [4]   Exhibit 2 attached hereto is a true and correct copy of the Stipulated
Settlement Agreement and Release (herein sometimes referred to as "Settlement" or
28 | "Agreement").  Capitalized terms used herein shall have the same meanings as in the
Agreement, unless indicated otherwise.

DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES
AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES

### Deterrent Objectives Of FACTA Achieved By

### This Lawsuit And Settlement

51.     As this Court is aware, FedEx is a repeat violator of FACTA, having been sued no less than twice in 2006[5] and once in 2007[6] for earlier FACTA violations.  None of those lawsuits resulted in the recovery of any relief to any plaintiff.

52.     Nor, despite earlier FACTA lawsuits against it, did FedEx ever implement any written policy concerning FACTA.  That fact became evident only as a result of this lawsuit, the discovery sought in this lawsuit, and the information ultimately obtained through an order issued by Magistrate Goldman on a discovery motion which Plaintiffs and I prosecuted.

53.     Specifically, during this lawsuit Plaintiffs served discovery seeking FedEx's company policies concerning FACTA and any training that FedEx provided to its employees concerning compliance with FACTA.  Plaintiffs' discovery included the following requests to produce documents:

"24. Each and every one of YOUR company policies, at any and all times after December 3, 2003, (whether in the form of a manual or otherwise and including any and all versions, and modifications thereto) CONCERNING FACTA."  Docket No. 139-1 at p. 58 of 66.

"27. All DOCUMENTS CONCERNING any training YOU provided to YOUR employees after December 3, 2003 CONCERNING compliance with FACTA."  Docket No. 139-1 at p. 62 of 66.

54.     I prepared and on behalf of the Plaintiffs ultimately filed a discovery motion (*e.g.*, Docket Nos. 139, 139-1, 139-2, 139-3, 139-4, 144, and 146) and

---

[5] *William Harrison v. Fedex Kinko's Office And Print Services, Inc.*, Case No. CV-06-08206 FMC (SSx) (C.D. Cal. 2006), and *Jiyoung Moon and Craig Stanford v. Fedex Kinko's Office And Print Services, Inc.*, Case No. C-06-07657 SI (N.D. Cal. 2006).

[6] *Farah Payan* v. *Fedex Kinko's Office And Print Services, Inc.*, Case No. CV-07-00971 ABC (AJWx) (C.D. Cal. 2007).

DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES
AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES

Magistrate Goldman issued an Order on that motion (Docket No. 153) requiring FedEx to provide further information as follows:

> "Plaintiff is entitled to those documents in the possession of Defendant which mention the Fair and Accurate Credit Transaction Act, the code section of the act, or the creation and implementation of practices, policies, and procedures relating to Defendant's compliance with the act…. Within fourteen (14) days of this date, Defendant shall produce any additional documents meeting this description or submit a declaration from a person with knowledge describing under oath the search conducted for such documents and the result of that search." Docket No. 153.

55.    In response, FedEx ultimately provided a declaration in which it conceded, under oath, that there are NO documents responsive to Plaintiffs' production requests that "reference 'FACTA,' 'the Fair and Accurate Credit Transactions Act," or 15 U.S.C. § 1681c(g)' or its subdivisions." Exhibit 4, ¶ 2. A true and correct copy of that declaration which I received from FedEx's counsel is attached hereto as Exhibit 4.

56.    It is only after it was served with a copy of the Complaint that FedEx ceased its offensive conduct.  See, e.g., Exhibit 3 (conceding steps taken to stop FACTA violations only after it received notice of this lawsuit).  A true and correct copy of pertinent pages from FedEx's Supplemental Responses To Plaintiffs' Interrogatories, Set Two, is attached hereto as Exhibit 3.

57.    It is also only as a result of this lawsuit and the Settlement reached in this lawsuit that FedEx has agreed that it will implement, for the first time, a written FACTA compliance policy, which it never previously implemented despite having been previously sued for other FACTA violations.  Exhibit 2: Agreement ¶ 14(c). Thus, in addition to obtaining pecuniary relief for the Class, the Class

DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES

Representatives and I have also effectuated substantial change of conduct, thereby accomplishing the "deterrent" objectives of FACTA.

## Qualifications of Counsel

58.     I am an attorney and a consumer activist.

59.     I have been a practicing attorney for more than ten years.

60.     As an attorney, I have had extensive experience in consumer related lawsuits, including complex cases, coordinated matters, multidistrict litigations ("MDL") and class actions and other representative suits (including suits filed under California Business and Professions Code Section 17200 before and after its amendment by Proposition 64).

61.     I have been appointed class counsel on several occasions in both federal and state courts.

62.     I have extensive experience with cases, like the instant case, which allege violations of the Fair and Accurate Credit Transactions Act ("FACTA").

63.     I have personally handled various aspects of FACTA litigation, including, but not limited to, class certification.

64.     My efforts have resulted in the certification of several FACTA class actions where certification was contested by the defense. *See, e.g.*, *In Re: Toys "R" Us – Delaware, Inc. – Fair And Accurate Credit Transactions Act (FACTA) Litigation*, MDL 08-01980 MMM (FMOx) (C.D. Cal.); *Tchoboian v. Parking Concepts, Inc., et al.*, SACV09-422 DMG (ANx) (C.D. Cal.); *McGee, et al. v. Ross Stores, Inc, et al.*, C06-7496 CRB (N.D. Cal.); *Klimp v. Rip Curl, Inc., et al.*, SACV07-1383 JVS (FFMx) (C.D. Cal.).

65.     In addition to successfully certifying FACTA class actions on a contested basis, I have successfully prosecuted to conclusion several FACTA cases on a class basis. *E.g., Sakamoto v. One Parking, Inc. et al.*, SACV11-1249 MLG (C.D. Cal.); *Jarchafjian v. American Multi-Cinema, Inc., et al.*, CV09-03434 JHN

(AJWx) (C.D. Cal.); *Tchoboian v. Parking Concepts, Inc., et al.*, SACV09-422 DMG (ANx) (C.D. Cal.); *McGee, et al. v. Ross Stores, Inc, et al.*, C06-7496 CRB (N.D. Cal.); *Clark v. Stein Mart, Inc., et al.*, CV07-197 RC (C.D. Cal.).

66.    I have handled putative class action cases before the Judicial Panel On Multidistrict Litigation. I have argued before the Judicial Panel On Multidistrict Litigation.   I have also served as a lead counsel on behalf of plaintiffs in two FACTA MDLs.  *In Re: Toys "R" Us – Delaware, Inc. – Fair And Accurate Credit Transactions Act (FACTA) Litigation*, MDL 08-01980 MMM (FMOx) (C.D. Cal.); *In Re: The TJX Companies, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litigation*, MDL Case No. 07-md-1853 (D. Kansas).

67.    I began prosecuting FACTA cases in 2006 and have continued to prosecute them since that time.  As such, and as the foregoing demonstrate, I am among one of the first attorneys in the nation to prosecute FACTA cases and one of the most experienced attorneys in the nation in this type of litigation.

68.    My experience is not just extensive, it is in depth and hands-on.  For example, I have personally conducted extensive research concerning FACTA, including the statute's legislative history.  I have personally authored or co-authored many briefs and have personally and actively participated in discovery and various other matters in many FACTA cases, including this case.   For example, I participated in opposing a defense summary judgment motion, which on November 5, 2007 resulted in an extensive 24-page published opinion by the Honorable Margaret M. Morrow denying summary judgment in a FACTA case, *Nicola Edwards, et al. v. Toys "R" Us- Delaware, Inc., et al.*, 527 F.Supp.2d 1197 (C.D. Cal.).  That was one of the earliest summary judgment rulings in any FACTA case in the nation.  Likewise, in this case, I successfully opposed FedEx's motion to dismiss (Docket No. 21: Court's Order), I successfully opposed FedEx's motion for summary judgment (Docket No. 75: Court's Order), and I also extensively litigated, among other things, class certification and related issues (*e.g.*, Court's Orders at

- 17 -

Docket Nos. 124, 132 and 135 expressing tentative views to grant certification). Other examples include my preparation and filing of a Rule 23(f) petition with the Ninth Circuit in a FACTA case, and my preparation and successful opposition of a Rule 23(f) petition filed with the Ninth Circuit in a FACTA case.

69.    Although FACTA litigation is a relatively new area of the law (given the statute's most recent effective date of December 4, 2006), I am no stranger to "cutting-edge" litigation involving consumer rights.  I have been involved in various novel and "cutting edge" litigation involving the enforcement of consumer rights, including statutory rights and constitutional rights.  I am a sincere believer in protecting the rights of consumers and am committed to act in their best interests. For example, I have personally (as a party and lead attorney) filed lawsuits to help preserve access to the court and jury system.  I filed *Yedalian v. Kaiser Foundation Health Plan, Inc., et al.* (L.A. Superior Court Case No. BC288469), which was a lawsuit against several of California's largest HMO's challenging the enforceability of their arbitration clauses and asserting that their representations to their patient members - that binding arbitration is a member's only means of legal recourse to resolve disputes with their HMO - are false and misleading and violate state consumer protection laws.  *Yedalian* ultimately resulted in a landmark settlement with the Kaiser and PacifiCare groups of defendants (respectively the State's largest and fifth largest HMO's) requiring the HMO's to provide written notification to patient members concerning their rights when disputes arose.

70.    My expertise in protecting consumer rights has been recognized and sought by various organizations.  For example, when the late Peter Jennings decided to air a special, multiple-part series on consumer arbitration clauses on ABC World News Tonight with Peter Jennings, the producers of the show requested my services as a consultant, and I agreed to provide same, ultimately resulting in information and materials which were used in the series, including an interview of one of my clients whose then pending case was featured on the series as a result of my

1  consulting services.  My work and experiences have been featured in multiple other

2  venues including radio, television, newspapers, magazines, etc.

3        71.    My work on behalf of consumers does not end with my legal efforts as

4  an attorney.  I believe I am specially well suited to represent consumers because, in

5  addition to my legal experience, I am a consumer activist.  I have worked hand-in-

6  hand with various consumer protection organizations including the Foundation for

7  Taxpayer and Consumer Rights ("FTCR"), Cal PIRG, AARP, Congress of

8  California Seniors, Sierra Club and others to promote and preserve consumer rights.

9  For example, I along with the FTCR and the California Nurses Association held the

10  very first campaign in Oakland, California spearheading the movement to defeat

11  Proposition 64 (which sought to amend California's Unfair Competition Law, Cal.

12  Bus. & Prof. Code § 17200 et seq.).  This was followed by editorial board meetings

13  and rallies and other grass-root type events throughout California to defeat

14  Proposition 64, in which I actively participated.  Several of the organizations I have

15  worked with including the FTCR and AARP have written articles about my

16  consumer related efforts.

17        72.    In addition to working with consumer organizations, I have also

18  worked with members of the community such as musicians and other artists to

19  create content to educate and galvanize the public on consumer related issues.  An

20  example of one such project, which I produced, directed, and co-wrote, is a video

21  parody about the high-cost of prescription medications confronting seniors and other

22  residents of the United States (viewable at www.todaysspecial.org).

23        73.    In sum, I believe my experience and expertise as a consumer and class

24  action attorney, my genuine interest in protecting consumer rights, and my work to

25  date in FACTA litigation, including but not limited to this case, adequately

26  demonstrate my qualifications.

27

28

DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES
AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES

74.   I do not know of any conflict of interest between myself or my company and any member of the Settlement Class which should or would preclude me from representing the Settlement Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of March 2013 at Los Angeles, California.


        /S/ – Chant Yedalian
        CHANT YEDALIAN
        Declarant

DECLARATION OF CHANT YEDALIAN IN SUPPORT OF MOTION FOR AWARD OF ATTORNEY'S FEES
AND COSTS TO CLASS COUNSEL AND INCENTIVE PAYMENTS TO THE CLASS REPRESENTATIVES