## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

| Proceedings: | (IN CHAMBERS) ORDER RE PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARD (DKT. 180) |
|---|---|

I.    **Introduction**

Razmig Tchoboian and Angela Potikyan ("Plaintiffs"), brought this action against FedEx Office & Print Services, Inc. ("Defendant" or "FedEx"), on behalf of themselves and all other similarly situated consumers, for alleged violations of the Fair and Accurate Credit Transactions Act ("FACTA"), which amended the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* The First Amended Complaint ("FAC") advances a single cause of action against Defendant seeking damages for the willful violation of 15 U.S.C. 1681c(g)(1). Plaintiffs contend that Defendant did so by printing receipts in connection with purchases that contained more than the last five digits of Plaintiffs' debit or credit card numbers. Dkt. 4.

On August 26, 2012, the parties reached an agreement to enter into a settlement agreement (the "Settlement Agreement"). Dkt. 163, Exh. 1. Under its terms, Defendant agreed to pay reasonable attorney's fees and costs to Plaintiffs' counsel, and an incentive award to the class representatives, both in amounts determined by the Court. *Id.* at ¶¶ 21-22. Plaintiffs brought a motion as to these two issues (the "Motion," Dkt. 180). Plaintiffs seek a fee award of $1,142,394.00,[1] and costs of $14,618.94. Plaintiffs also seek a $7,500.00 incentive award to each of the two class representatives, for a total of $15,000.00.

The Court heard argument on the Motion on April 8, 2013, and then took the matter under submission. Dkt. 206. For the reasons stated in this Order, the Motion is GRANTED IN PART. Thus, attorney's fees in the amount of $521,850.00, costs in the amount of $10,818.99, and a total incentive award of

---

[1] Although the Motion initially requested $1,101,556.50 in fees incurred as of the date of its filing, Plaintiffs' Reply in support of the Motion (Dkt. 192) requested that the amount be adjusted to account for an additional 74.25 hours of time spent on the Reply and related documents. *Compare* Motion at 18 *and* Reply at 22.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|----------|---------------------------|------|----------------|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

$3,400.00 ($1,700.00 to each class representative) are granted.

**II.    Benefits to Class Members Under the Settlement Agreement**

The Settlement Agreement defines the class of plaintiffs (the "Settlement Class") as follows:

> All consumers, as defined by 15 U.S.C. §1681a(c), in the United States of America who can present an original or copy of a printed FedEx Office receipt printed between April 2009 and April 2010 displaying the first two and last four digits of their credit or debit card number.

Settlement Agreement ¶12. With respect to benefits to the Settlement Class, the Settlement Agreement provides:

> a.    **Store Value Cards.** As consideration for the terms of this Settlement, FedEx Office will distribute "**Store Value Cards**." Each Store Value Card will be worth $50.00 and may be used for the following FedEx Office Express Pay services: copy machines (black and white and color copies), facsimiles, computer rentals, Lapnet Stations, and Sony Picture Stations. Store Value Cards are fully transferrable but may not be redeemed for cash or used for the acquisition of goods or services except as expressly described above. The Parties understand that the expiration date on the Store Value Cards is five years, after which the remaining value thereon escheats to the State, subject to any applicable state or federal escheatment laws. All other rights and limitations to Store Value Cards as set forth in state and federal law are applicable. Store Value Cards are not gift cards and the Parties do not intend for any gift card laws to apply to Store Value Cards. . . .

> c.    **FACTA Compliance Policy.** Not later than twenty (20) days after the Settlement Date, FedEx Office shall implement a written FACTA compliance policy, which will include a statement that it will not print more than the last five digits or expiration date of a credit or debit card on any printed receipt provided to a customer of FedEx Office.

*Id.* ¶14.

**III.   The Positions of the Parties**

**A.    Plaintiffs' Request**

**1.    Summary of Request for Fees**

Plaintiffs seek an award with respect to the work performed by Chant Yedalian ("Yedalian" "Plaintiffs' Counsel" and "Class Counsel"). He was the only attorney who acted as class counsel in this action. The request is premised on a lodestar analysis. Dkt.180 at 2, 16. Yedalian declares that he spent 2,077.08 hours in representing Plaintiffs in this matter. He asserts that this amount of time is reasonable because it was "necessary to accomplish" prosecution and successful settlement of the action. Dkt. 181,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|----------|--------------------------|------|----------------|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

Yedalian Decl. in Support of Motion for Attorney Fees ("Yedalian Fees Decl."), ¶¶ 3-4; Dkt. 193, Supplemental Declaration of Chant Yedalian in Support of Motion for Attorney's Fees ("Supp. Yedalain Fees Decl.") ¶31. He also contends that his time should be valued at an hourly rate of $550.00. Yedalian Fees Decl. ¶15. When the hourly rate of $550.00 is applied to the 2077.08 hours, the product is the aforementioned $1,142,394.00.

a)    Description of Services by Counsel

In support of the fee request, Yedalian submitted a declaration to which he attached his contemporaneous time records for the work performed. The statement provides a description of the work by date. Dkt. 181-1. Yedalian contends that his submission demonstrates that he undertook a significant amount of work during the period between July 2010 -- when he filed the initial complaint -- and April 2013, when the Court approved the Settlement Agreement. The work that he undertook included the following:

i.     Responses to a motion to dismiss and a motion for summary judgment (Yedalian Fees Decl. ¶5);

ii.    Responses to many "threatened" motions by Defendant that were never filed (*id.* ¶6);

iii.   The preparation of the class certification motion and extensive briefing and hearings on that issue (*id.* ¶8);

iv.    Settlement negotiations (*id.* ¶10);

v.     Discovery, including the taking and defending of depositions as well as the litigation of "extensive" discovery disputes (*id.* ¶6);

vi.    Responding to developments in the case law that occurred during the pendency of this litigation (*id.* ¶9);

vii.   Fielding more than 1,200 emails relating to this case (*id.* ¶13); and

viii.  Preparation of settlement documents, and ensuring that the settlement is fairly and adequately administered (*id.* ¶10).

Yedalian's declaration also sets forth his background, experience, and credentials. He declares that he has more than ten years of experience as an attorney in this field, (*id.* ¶ 16), and identifies several class actions in which he served as class counsel, (*id.* ¶¶ 19, 21).

b)    Evidence With Respect to Hourly Rates

Yedalian presents two principal types of evidence in support of the reasonableness of the hourly rates he proposes for calculating the lodestar element of the fee analysis. *First*, he describes his qualifications and offers the hourly rates previously approved as to his time charges in other class actions in which he served as class counsel. He also presents evidence about his knowledge of the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | | Date | March 25, 2014 |
|---|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | | |

rates of other lawyers in the relevant marketplace. *Second*, he presents expert evidence: the declarations of attorneys J. Mark Moore (Dkt. 184) and H. Scott Leviant (Dkt. 185). Each provides opinion testimony as to the appropriateness of Yedalian's proposed hourly rate.

With respect to the first type of evidence, Yedalian briefly describes his 10-year legal career. He has tried several class action cases. He claims that his rate of $550.00 is "consistent" with the prevailing attorney fee rates in Los Angeles and the Central District of California. Yedalian Fees Decl. ¶16. Yedalian also contends that his hourly rate is supported by rate determinations in other cases, including some in which he served as class counsel. *Id.* ¶18. For example, in an action filed in a California Superior Court, Yedalian's request for an hourly rate of $550.00 was approved by the court. *Id.* ¶19. Similarly, in 2011 a District Judge in this District found that Yedalian's claimed $500.00 hourly rate was "consistent with the rate for an attorney of Class Counsel's experience."[2] *Id.* ¶21. Yedalian also cites decisions in the Central District in which hourly rates were approved that are within a reasonable range of the $550.00 rate that he seeks here. *Id.* ¶20. Yedalian also argues that the increase in his rate from the time of that 2011 decision should apply retroactively to all time spent on this case to account for the two-year delay in receiving payment. *Id.* ¶¶ 23-24.

With respect to the second type of evidence, Moore[3] states that he has known Yedalian for over six years, has been co-counsel with him on several cases, and believes the proposed rate is reasonable. This opinion is based on his knowledge of the prevailing rates in the Los Angeles legal community and his knowledge of Yedalian's skills as a lawyer. Dkt. 184, Moore Decl., ¶¶ 13-16. Leviant[4] has known Yedalian for two years and has worked with him as co-counsel on one case. He opines that the proposed $550 hourly rate is reasonable based on his knowledge of prevailing rates in the Los Angeles legal community and on his knowledge of Yedalian's performance as a lawyer. Dkt. 185, Leviant Decl., ¶¶ 14-17.

        c)      <u>Litigation Activities</u>

            i.      Pre-Settlement Proceedings

A motion to dismiss brought by Defendant was denied. Dkt. 21. A summary judgment motion brought by Defendant was denied. Dkt. 75. Defendant deposed the two named plaintiffs during the same afternoon. No other depositions were taken by any party. Plaintiffs served two sets of interrogatories and one set of requests for production of documents on Defendant. Plaintiffs brought a motion to

---

[2] In that action Yedalian actually sought, and was awarded, $106,000.00 in fees for 266.75 hours of work.  This results in a de facto hourly rate of $397.38. Dkt. 181, Ex. 6 at 3-4.

[3] Moore graduated from UCLA School of Law in 1995 and is a named partner of Spiro Moore LLP. Dkt. 184, Moore Decl., ¶¶ 1-2. He states that he has considerable experience with class actions, and since 2006 has had a primary role in more than a dozen class actions in which the claims arose under FACTA. *Id.* ¶¶ 3-4.

[4] Leviant is also a partner at Spiro Moore LLP. Dkt. 185, Leviant Decl., ¶1. He states that he has considerable experience with class actions and has published articles and lectured on topics about this practice area. *Id.* ¶6.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

compel, Dkt. 139; it was largely denied, Dkt. 153. A class certification motion (Dkt. 52) was still pending at the time of settlement.

ii.      Settlement

As noted, the Settlement Agreement provides that each class member who can produce "an original or copy of a printed FedEx Office receipt printed between April 2009 and April 2010 displaying the first two and last four digits of their credit or debit card number," may receive a $50.00 Store Value Card.[5] These Store Value Cards may be used to pay for specified services at FedEx stores, and are fully transferable. They escheat to the State in five years. Settlement Agreement ¶14. At the end of the claim period, only 54 claimants had submitted the documentation necessary to qualify for a $50.00 Store Value Card. Dkt. 187, Passarella Decl., ¶4. Therefore, the total class recovery was $2,700.00, excluding payments to the class representatives. The Settlement Agreement also provides for equitable relief in the form of a written FACTA compliance policy. Settlement Agreement ¶14.

2.      Summary of Request for Costs

Plaintiffs seek $14,618.94 in costs. Yedalian Fees Decl. ¶33. The requested costs are shown in the following table:

| | |
|---|---|
| Complaint Filing Fee: | 350.00 |
| First Mediation Fees: | 6,275.00 |
| Travel & Related Costs (First Mediation) | 716.25 |
| Second Mediation Fees: | 3,275.00 |
| Travel & Related Costs (Second Mediation) | 202.74 |
| Subscription Fee To Find Expert | 99.95 |
| Expert Fee Re Credit/Debit Card Issues: | 1,200.00 |
| Notice To Class Fees TopClassActions.com: | 2,500.00 |
| Total | $14,618.94 |

---

[5] Settlement Agreement ¶¶ 12, 14.  The Claim Form also states that "You may only make one claim regardless of whether you have one or more than one receipt."  *Tchoboian v. FedEx Office and Print Services, Inc.* Class Action Website, www.fxoclassaction.com (follow "Class Notice and Claim Form" hyperlink) (last visited Feb. 12, 2014).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

Plaintiffs contend that other costs, including "mail and postage, attorney service and courier, parking, online research, copying, [and] court reporter transcript fees" were incurred. However, their recovery is not sought. *Id.* ¶34.

        3.    <u>Summary of Request for Incentive Awards</u>

Plaintiffs seek a payment of $7,500.00 to each of the class representatives. Tchoboian and Potikyan each represent that he or she spent more than 85 hours on this litigation. Dkt. 182, Tchoboian Decl. in Support of Motion for Attorney Fees ("Tchoboian Fees Decl."), ¶15; Dkt. 183, Potikyan Decl. in Support of Motion for Attorney Fees ("Potikyan Fees Decl."), ¶15. Both were deposed. Tchoboian Fees Decl. ¶9; Potikyan Fees Decl. ¶9. Both attended the first mediation. Tchoboian Fees Decl. ¶14; Potikyan Fees Decl. ¶14. Both reviewed discovery materials, gave input and assisted counsel throughout the litigation. Tchoboian Fees Decl. ¶¶ 6-8, 14; Potikyan Fees Decl. ¶¶ 6-8, 14.

    **B.**    **Defendant's Response**

        1.    <u>Fee Award</u>

Defendant contends that the pre-settlement activity in this case was modest, that the majority of the time spent by Plaintiffs' Counsel was both unnecessary and unproductive, and that his work did not advance the interests of the class. Defendant identifies certain activities by Plaintiffs' Counsel in support of these arguments, including the following:

    i.    An *ex parte* application to strike the summary judgment motion as "duplicative" of Defendant's motion to dismiss. Dkt. 37. It was denied. Dkt. 41.

    ii.    "Excessive" objections and requests to strike declarations filed by Defendant. Dkt. 47, 48, 65, 70, 108-111, 123, 142, 143.

    iii.    A motion to compel, which was described by Plaintiffs' counsel as "narrow," but included more than 390 pages, Dkt. 139. Defendants assert that Plaintiffs' Counsel billed approximately 198 hours preparing these papers and an additional 95 hours meeting and conferring about the dispute. Yedalian Fees Decl., Exh. 1, at 10-41. Defendant contends that these efforts were largely unsuccessful in achieving any substantive benefit to the class. Dkt. 153.

    iv.    Basic meet and confer letters that exceeded 20 pages in length. Dkt. 139-2, Exh. 3.

    v.    Hours billed for preparing for depositions that, according to Defendant, were never scheduled.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

vi.    30 hours researching an issue, Yedalian Decl., Exh. 1 at 49, that the Court rejected, Dkt. 165.[6]

In support of this argument, Defendant's Opposition attaches a chart that identifies what it contends are 1,149.59 hours of "extraneous billing" reflected in Plaintiffs' Counsel's timesheets. Dkt. 186, Ex. 1.

Defendant also contends that, because the settlement in this case resembles a coupon settlement, CAFA's restrictions on corresponding fee awards should apply. Thus, Defendant argues that Plaintiffs' Counsel is only entitled to an award based on a percentage of the value of the coupons actually redeemed by class members.

With respect to the lodestar calculation, Defendant makes four primary arguments: (i) Yedalian's reasonable hourly rate should be $500.00 because, in another action, he testified that it was his hourly rate through April 2012; (ii) the fee award is grossly disproportionate to the result achieved for class members and to the typical fee award in a FACTA case; (iii) Yedalian's billing statements show that he was inefficient and spent time on unnecessary tasks; and (iv) Yedalian spent an unreasonable amount of time on the matter, performed tasks that a person other than an attorney should have performed, and billed for time spent on legal research in connection with the drafting of documents used in this action that were substantively identical to those filed by counsel in other actions. Defendant notes that Plaintiffs' Counsel was awarded between $100,000.00 and $200,000.00 in those prior actions. Defendant also contends that the fee awards in these and similar actions and the absence of any showing that this was a matter that was undesirable for counsel or that it precluded him from working on other matters, all support a downward adjustment of the lodestar. Defendant also contends that Plaintiffs' Counsel should not be awarded fees for time spent on this Motion.

2.    Costs

Defendant only opposes the cost of the supplemental notice and the costs related to the fees of experts. Dkt. 186 at 20. Defendant contends that it never agreed to any additional, unilaterally-selected addition to the agreed-upon notice program. Defendant also contends that it should not be required to pay for the subscription fee for a service that locates experts. Similarly, it opposes an award of the cost of what it contends is the unsubstantiated fee paid to an expert whom Defendant could not depose and who apparently did not have a regular business address.

3.    Incentive Awards

Defendant contends that an appropriate award for each class representative is no more than $5,000.00. Dkt. 186 at 21. Defendant argues that the incentive awards made in other cases in which

---

[6] The issue was the reopening of discovery for defense fees. The Court did not reject the request substantively, but instructed Plaintiffs to raise the issue in their reply to the Motion for Attorney's Fees, so the Court could evaluate the request in context.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

Yedalian was counsel have never exceeded that amount. *Id.*

### C.   Plaintiffs' Reply

Plaintiffs contend that this case is not a coupon settlement and that, even if it were, the equitable relief obtained warrants a lodestar analysis. Plaintiffs note that, even accepting Defendant's proposed hourly rate and ignoring all challenged hours billed, the lodestar figure would be $426,620.00 based on the undisputed 853.24 hours that Yedalian spent on this action.[7] Plaintiffs also contend that many of the hours were spent as a result of Defendant's vigorous defense of this action, and that the comparison to other actions is inappropriate because they presented far simpler issues.

Plaintiffs seek discovery on fees incurred by Defendant in this action.

### D.   Defendant's Sur-Reply

Defendant contends that discovery into its fees is not appropriate because it never opened the door on the issue. Thus, it has not argued that its own fees should be considered as part of its challenge to Plaintiffs' fees.

## IV.   <u>Analysis</u>

### A.   Fees for the Underlying Action

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23. As noted, the Settlement Agreement provides that "FedEx Office will pay the reasonable attorneys' fees and costs of Class Counsel in an amount to be determined by the Court." Settlement Agreement ¶22. "FACTA allows prevailing parties to recover attorneys' fees and costs." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 717 (9th Cir. 2010) (citing 15 U.S.C.§ 1682n(a)3)); 15 U.S.C.A. § 1681n(a)(3 ("in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court"). This provision allows for the award of non-taxable costs to prevailing plaintiffs. *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 579-82 (9th Cir. 2010).

### 1.   <u>This is Not a Coupon Settlement under the Class Action Fairness Act</u>

Under the Class Action Fairness Act ("CAFA"), attorneys' fees awarded in class action "coupon" settlements "shall be based on the value to class members of the coupons that are redeemed." 28 USC § 1712(a). As noted, Defendant argues that the settlement in this action should be deemed a "coupon"

---

[7] Plaintiffs have calculated this figure by subtracting the 1,149.59 hours that FedEx asserts were extraneous, from the 2,002.83 hours Plaintiff's Counsel claimed in his moving papers.  Reply at 9.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

settlement for the purposes of determining an appropriate fee award. Under this standard, Defendant argues that the Court should either delay ruling on the appropriate fee award until the redemption rate is determined, or award fees using the Ninth Circuit's "benchmark" of 25% of the class recovery. Opp. at 7-8 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). The application of this formula to the 54 valid claims submitted by the end of the claim period[8] would yield a total class recovery of $2,700.00 and a 25% "benchmark" fee amount of $675.00.

CAFA does not clearly define a "coupon" for settlement purposes. However, courts have distinguished between "coupons," which provide "*discounts* on merchandise or services offered by the defendant," and "vouchers," which provide "*free* merchandise or services." *Foos v. Ann, Inc.*, 2012 WL 5352969, at *2 (2013)(emphasis in original); *In re Toys R US- Delaware, Inc.- Fair and Accurate Credit Transactions Act (FACTA) Litigation*, -- F.R.D. --, 2014 WL 198665, at *17 n.95 (C.D. Cal. Jan. 17, 2014). Specifically, it has been held that a voucher is "more like a gift card or cash where there is an actual cash value, is freely transferable and does not require class members to spend additional money in order to realize the benefits of the settlement." *Foos*, 2012 WL 5352969, at *2.

It is appropriate to adopt this approach and to recognize these distinctions here. The vouchers provided to class members are not properly deemed "coupons" because they are freely transferable. Moreover, they do not require class members to make any additional expenditures in order to receive the value of a voucher. Thus, many of the services available at FedEx cost $50.00 or less. Indeed, "[t]he average FedEx Office transaction is for $8.82." Dkt. 88, Javaherian Decl., ¶4. Defendant effectively concedes that the store value cards provided by the Settlement Agreement are distinguishable from typical "coupon" awards. *See* Opp. at 11. Therefore, the attorney's fee award is not properly based on the value of redeemed store value cards.

        2.    The Lodestar Approach

The "lodestar" approach is the appropriate method for calculating reasonable attorneys' fees in class actions brought under fee-shifting statutes. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* After the lodestar amount is determined, a trial "court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 n.2 (9th Cir. 2000).

"The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Van Gerwen v. Guarantee Mutual Life Co.*,

---

[8] The Claim Administrator declared that, although it received 627 claims, only 54 claimants submitted valid receipts "printed between April 2009 and April 2010 and showing the first two digits of their card numbers," as required to establish class membership and eligibility for a store value card. Passarella Decl. ¶4.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|----------|--------------------------|------|----------------|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

214 F.3d 1041, 1045 (9th Cir. 2000). With respect to the hourly rate, the trial court is to determine and then apply "the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno*, 534 F.3d at 1111. "Quality of representation is generally considered at the lodestar stage in determining what is a reasonable hourly rate." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1046 (9th Cir. 2000).

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The hours compensated in a fee award "must be reasonable in relation to the success achieved." *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994) ("Lawyers might reasonably spend $148,000 worth of time to win $234,000. But no reasonable person would pay lawyers $148,000 to in $34,000."); *see also Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988). In deciding what constitutes "reasonable hours" for purposes of a lodestar calculation, a court may examine time records or other evidence to determine whether to disallow and exclude from the calculation hours "that are excessive, redundant or otherwise unnecessary." *Hensley,* 461 U.S. at 434. The district court should exclude such hours by either: (1) conducting an hour-by-hour analysis of the fee request to exclude unreasonable hours; or (2) make an across-the-board percentage cuts either to number of hours claimed, or to the final lodestar figure.[9] *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013).

After computing the "lodestar" amount, "the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure" based on the "*Kerr* factors." *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). The 12 *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Morales*, 96 F.3d at 363 n.8.  Among these Kerr factors, the following are presumably subsumed within the lodestar approach, and should not give rise to an additional adjustment: (i) the novelty and complexity of the issues; (ii) the skill and experience of counsel; (iii) the quality of representation; (iv) the results obtained; and (v) the contingent nature of the fee agreement. *Id.* at 364 n.9 (citations omitted).

In *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S. Ct. 1662 (2010), the Court described the lodestar approach as one that has "achieved dominance in the federal courts . . ." *Id.* at 551 (citation omitted) (internal quotation marks omitted). The Court then explained:

---

[9] The Ninth Circuit noted that, due to the associative property of multiplication, "it makes no difference in terms of the final amount to be awarded whether the district court applies the percentage cut to the number of hours claimed, or to the lodestar figure." *Gonzalez*, 729 F.3d at 1203.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). …[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, it is readily administrable … and … "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

599 U.S. at 551 (emphasis in original).

In *Perdue*, the Court stated that its prior decisions under federal fee-shifting statutes "have established six important rules" in this area:

First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . .("[I]f plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee shifting statute has been satisfied"); …("[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys")…. Section 1988's aim is to enforce the covered civil rights statutes, not to provide "a form of economic relief to improve the financial lot of attorneys." …

Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. . . . Indeed, we have said that the presumption is a "strong" one. . . .

Third, although we have never sustained an enhancement of a lodestar amount for performance . . . we have repeatedly said that enhancements may be awarded in "'rare'" and "'exceptional'" circumstances. . . .

Fourth, we have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," . . . and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. . . .

Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant . . . .

Finally, a fee applicant seeking an enhancement must produce "specific evidence" that supports the award . . . .

599 U.S. at 552-53 (internal citations omitted).

The Ninth Circuit has described the lodestar process in these terms:

When the district court makes its award, it must explain how it came up with the amount.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

The explanation need not be elaborate, but it must be comprehensible. As *Hensley* described it, the explanation must be "concise but *clear*." 461 U.S. at 437, 103 S. Ct. 1933 (emphasis added). Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected. *See Bogan v. City of Boston,* 489 F.3d 417, 430 (1st Cir. 2007).

*Moreno,* 534 F.3d at 1111.

        3.     <u>Application of the Lodestar Factors</u>

           a)     *The Proposed Hourly Rate*

The determination of an appropriate hourly rate is undertaken on a case-by-case basis. Thus, in general, every case presents unique factors that are to be considered, including the complexity of the issues and the performance of counsel.

As noted above, Plaintiffs' Counsel has, through his declaration and those of two other attorneys, presented evidence to support this proposed $550.00 hourly rate in making the lodestar calculation. The declarations of Leviant and Moore lack substantial and specific evidence. Each states that an hourly rate of $550 is appropriate for a Los Angeles attorney with ten years of experience. However, neither discusses the specific type of legal work to which this opinion applies. Nor does either declarant express any familiarity with the specific work performed by Plaintiffs' Counsel in this action. Neither declarant provides evidence of an equivalent hourly rate being charged or awarded in a similar case for the type and nature of the work performed here by Plaintiffs' Counsel. Instead, each provides only a few examples of other hourly rates. In light of the foregoing, this evidence in support of the proposed $550.00 hourly rate is entitled to, and is given, little weight.

The Court has substantial familiarity with hourly rates in Los Angeles as a result of its consideration of hundreds of fee applications during more than a decade while serving as a federal and state court bench officer. Further, the Court had first-hand experience in observing the work of Plaintiffs' Counsel both in reviewing his written filings and in observing his presentations at many hearings. These observations are significant with respect to both the capability of plaintiffs' counsel and his level of skill and experience in connection with the matters that arose during this litigation.

Furthermore, the Court finds that the fee award in *Tchoboian v. Parking Concepts, Inc.* (C.D. Cal. Case No. 09-cv-422-DMG) ("*Tchoboian I*"), another FACTA class action filed by Yedalian where Mr. Tchoboian also served as named plaintiff, is helpful in determining a reasonable rate in the instant action. In *Tchoboian I*, Yedalian claimed that his reasonable hourly rate was $500.00 per hour, yielding a lodestar of $317,290.00 for the 634.58 hours of work that was identified.  *Tchoboian I*, Dkt. 91, ¶¶ 5, 7.  However, Yedalian actually sought -- and the court approved -- a $192,000.00 fee award, *Tchoboian*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

*1* (Dkt. 98), which resulted in a de facto hourly rate of $302.56.[10]

Based on all of the foregoing, considering counsel's background and performance, the nature of the issue presented in the action, and the effective hourly rate approved in *Tchoboian I*, the Court concludes that a reasonable hourly rate for the services performed by Plaintiffs' Counsel in this case is $375.00.

This rate is deemed appropriate because it is within the range of hourly rates "prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986).  It is also consistent with the hourly rates that the Court has approved in other commercial litigation matters for work of the nature and quality of that performed by Yedalian in this action. It is also appropriate in light of the increased competition among attorneys in recent years based on the state of the local economy as well as the number of available attorneys.

> b)     *The Reasonableness of the Hours Recorded as to this Action*

Plaintiffs' Counsel submitted billing records reflecting that he charged a total of 2,077.08 hours for his work on this matter. This includes 2002.83 hours of work performed through the time that the Motion was filed, Yedalian Fees Decl., Exh. 1, and an additional 74.25 hours of work on Plaintiffs' Reply supporting the Motion for Attorney's Fees, Yedalian Supp. Fees Decl. ¶31. A review of these filings shows the following:

> i.      The entries reflect work on the matters described earlier in this Order, including the responses to motions filed by Defendants as well as Plaintiffs' unsuccessful *ex parte* application to strike Defendant's motion for summary judgment. The entries also reflect work related to discovery disputes, which included substantial time spent on meet and confer correspondence, and drafting the Motion for Class Certification.

> ii.     Work by Plaintiffs' Counsel on different projects within a single day is reflected in separate time entries. For example, on October 4, 2010, Plaintiffs' Counsel had separate time entries for work related to: (1) correspondence with opposing counsel; (2) compiling the first amended complaint; (3) emailing the *Bateman* opinion to plaintiff Tchoboian; and (4) a follow-up conversation with plaintiff Tchoboian regarding the *Bateman* opinion. Yedalian Fees Decl., Exh. 1 at 4.

---

[10] Other cases filed by Yedalian reflected slightly higher de facto hourly rates, *i.e.,* the amount of fees awarded, divided by the number of hours claimed. In *Jarchafjian v. American Multi-Cinema, Inc.* (09-cv-3434) counsel was awarded a de facto hourly rate of $397.38, and in *Sakamoto v. One Parking, Inc.* (11-cv-1249) counsel was awarded a de facto hourly rate of $364.00. The Court also considered these figures and the nature of the prior actions in its calculation of the appropriate rate here.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

iii.  The billing statements include projects for which there are multiple entries over the course of several days. However, these lack specific detail describing or otherwise distinguishing the work completed each day. For example, Yedalian's billing records include 15 entries that refer only to "research" for, or "drafting" of, the Opposition to Defendant's Motion to Dismiss. Appendix A, at 2-3; Yedalian Fees Decl., Ex. 1 at 6-7. Although these entries range in length from 35 minutes, to 9 hours and 5 minutes, none describes what specific portions of the Opposition was researched or drafted. Indeed, five consecutive entries state simply "Continue drafting opp to defense motion to dismiss and research related thereto." *Id.*

iv.  The billing statements include tasks that are clerical in nature, and that could not reasonably have been billed to a private client at an attorney's billing rate. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989). For example, Plaintiffs' Counsel billed almost 5 hours to making travel arrangements for the first mediation. Yedalian Fees Decl., Ex. 1 at 18-19.

v.  Certain time entries include substantial hours charged to a single day, *e.g.,* 17 hours and 20 minutes on October 22, 2011. Yedalian Fees Decl., Ex. 1 at 27.

vi.  Plaintiffs' Counsel spent 43 hours preparing an *ex parte* application to strike Defendant's Motion for Summary Judgment for being "duplicative" of Defendant's Motion to Dismiss. Yedalian Fees Decl., Ex. 1 at 26-27. Experienced counsel should know that such a request, which is quite unusual, is not sufficiently exigent to warrant *ex parte* relief. Moreover, this amount of time is not reasonable in light of the contention of Plaintiffs' counsel that he was required to address the same issues that had been raised and briefed in the Defendant's motion to dismiss.

vii.  The time recorded for certain tasks is excessive. For example, Plaintiffs' Counsel claims that he spent 7.5 hours drafting the initial Complaint in this case. Yedalian Fees Decl., Ex. 1 at 1-3. However, the Complaint in this action is almost an exact copy of the First Amended Complaint filed in *Tchoboian I. Compare* Dkt. 1 *and Tchoboian I,* Dkt 48. After comparing the two complaints side-by-side, the Court found that more than 95% of the language is identical.[11] It is unreasonable for an experienced attorney to spend or

---

[11] The changes identified by the Court were minor.  For example, the class definition in *Tchoboian I* specified the precise parking structure at issue.  *Tchoboian I* Dkt. 48 ¶14.  In paragraphs 31 and 32, the prepositional phrase of "On and after December 4, 2006," was changed to "After December 3, 2006." *Compare id.* ¶¶ 31-32 *and* Compl. ¶¶ 31-32. In addition, the following sentence was added to paragraph 34 of the FedEx Complaint: "In fact, FEDEX OFFICE AND PRINT SERVICES, INC. (f/k/a FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC.) was sued at least twice in December 2006 and once in 2007 for violating FACTA through its printing of credit and debit card expiration dates on its customer receipts." Compl. ¶34. Finally, a paragraph was inserted with respect to notices given by the Federal Trade Commission reminding businesses to truncate credit and debit card information on receipts. Compl. ¶36. The Court also notes that the complaint used in this action is strikingly similar to the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

charge 7.5 hours for changes that could have been made in far less time. Plaintiffs'
Counsel also billed an additional 6.5 hours to drafting the FAC. Yedalian Fees Decl., Ex.
1 at 3-4. Yet, a comparison of the original Complaint and the FAC shows that only minor
changes were made in the process. The most notable of these are: (1) changes to
ensure subject-verb agreement to account for the second named plaintiff; (2) the
addition of paragraphs stating that FedEx provided each plaintiff with receipts in violation
of FACTA at the point of sale; and (3) the addition of a sentence stating that Defendant
had copies of the FACTA complaints filed in 2006 and 2007 by no later than February
2007. A reduction in hours is appropriate when the court determines that the preparation
of documents "demanded little of counsel's time." *Welch v. Metropolitan Life Ins. Co.*,
480 F.3d 942, 950 (9th Cir. 2007) (citation omitted) (internal quotation marks omitted).
Further, Yedalian charged over 151 hours for drafting Plaintiffs' Opposition to
Defendant's Motion for Summary Judgment ("MSJ"), although he asserted that the MSJ
was duplicative of Defendant's Motion to Dismiss ("MTD").  *See* Dkt. 37, *Ex parte* to
Strike MSJ. A comparison of the two opposition briefs reveals that large portions of
Plaintiffs' Opposition to the MSJ were copied and pasted from Plaintiffs' Opposition to
the MTD. *Compare* Dkt. 16 *and* Dkt. 45. Yet Yedalian had previously charged over 116
hours to the Opposition to the MTD.

viii.   Plaintiffs' Counsel also claims to have spent approximately 30 hours meeting and
speaking with each named plaintiff to prepare for their respective depositions. This figure
is excessive, given both the factual simplicity of the case and that, collectively, the two
depositions took less than six hours to complete. Further, the Court notes that
Tchoboian was previously deposed in *Tchoboian I*, another FACTA class action. *See
Tchoboian I*, Dkt. 31.

The Court notes that the final agreed class award of $50.00 Store Value Cards -- *only* to individuals
who could produce copies of FedEx Office receipts printed between April 2009 and April 2010 showing
the first two and last four digits of credit or debit card numbers -- is less than half of the statutory
damages sought per class member in the FAC. *See* FAC ¶45 (stating that Defendant was liable in the
"statutory damage amount of 'not less than $100 and not more than $1,000' for each violation.")
(quoting 15 U.S.C. § 1681n). It is important to consider this low level of success when evaluating the
reasonable number of hours expended in this action. It is also significant that the limitation of a single
$50.00 Store Value Card per class member meant that those who had maintained more than one
receipt were not permitted to recover for all potential "violations."

Plaintiffs' Counsel argues that FedEx's implementation of a written FACTA compliance policy
constitutes a substantial non-pecuniary benefit to all class members and others. However, it is not clear
that such a policy actually provides a significant benefit. The FACTA violations at issue involve receipts
generated by self-service machines, which by definition do not require employee operation or oversight.

complaint filed on May 14, 2009 in *Jarchafjian v. American Multi-Cinema, Inc.*, 09-cv-3434, Dkt. 1 (C.D. Cal.).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

*See* Plaintiffs' Motion for Class Certification at 2, 5, 6. Moreover, Plaintiffs acknowledge that FedEx already discontinued printing of such receipts by April 10, 2010. Therefore, a written policy aimed at past violations by unmanned self-service machines has little benefit to class members.

Finally, although Defendant challenges the request for fees by Plaintiffs' Counsel with respect to the time spent in preparing the fee request, "in statutory fee cases, federal courts. . . have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (citation omitted) (internal quotation marks omitted).

Taking all of the foregoing into account, and based on an assessment of the billing statements, and the Court's experience with the pre-trial and trial proceedings, the Court concludes that the hours claimed by Plaintiffs' Counsel must be reduced significantly. The Court finds it more appropriate to conduct a percentage reduction to the hours claimed, rather than an hour-by-hour analysis. This is the result of the cursory descriptions for billing entries made by Plaintiffs' Counsel. They make it difficult to review the propriety of each entry in a comprehensive manner. However, the Court has undertaken a cross-check of the percentage reduction by comparing the hours charged for certain tasks, including the preparation of the Complaint, the First Amended Complaint and the Motion for Class Certification (Dkt.181-1) with what the Court finds would have been a reasonable number of hours based on the quality of the pleadings that were submitted. The Court attaches Appendix A, which shows the total time Plaintiffs' Counsel claimed for specific projects. The Court finds that it is appropriate to reduce by 33% the hours claimed to account for the excessive billing noted above.

The Court finds that the percentage reduction is also justified by the very modest class recovery. The Settlement Agreement awarded less than half the statutory value sought by Plaintiffs per class member. Further, only 54 class members submitted what became successful claims. In light of this, the more than 2000 hours identified by Plaintiffs' Counsel, which is the equivalent of a year of work, assuming a 40-hour work week, is unreasonably high. *See McGinnis*, 51 F.3d at 810 ("Lawyers might reasonably spend $148,000 worth of time to win $234,000. But no reasonable person would pay lawyers $148,000 to win $34,000.").

Applying this 33% total reduction, the Court finds that the total number of reasonable hours is 1391.6.

In making its review and determinations, the Court is mindful of the rule that a trial court making adjustments to the amount of time sought in a fee request, "must explain how it came up with the amount. The explanation need not be elaborate, but it must be comprehensible." *Moreno*, 534 F. 3d at 1111. "Where the difference between the lawyer's request and the court's award is relatively small, a somewhat cursory explanation will suffice. But where the disparity is larger, a more specific articulation of the court's reasoning is expected." *Id.* In addition, the Court is mindful of the following statement in *Moreno*:

> lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

professional judgment as to how much time he was required to spend on the case; after
all, he won, and might not have, had he been more of a slacker.

*Id.* at 1112. However, a review of the time records here has led the Court to conclude that time was not
spent efficiently or appropriately.

> c)   *Appropriate Lodestar Amount*

As stated above, the Court finds that the reasonable hourly rate in this case is $375.00, and that the
reasonable amount of hours is 1391.6. Therefore, the Lodestar amount is $521,850.00.

> 4.   <u>Adjustments to the Lodestar</u>

Defendant argues that the lodestar figure should be adjusted to account for the "customary fee" and
"awards in similar cases." Opp. at 17-18. However, the Court finds that such an adjustment is
unwarranted. Defendant cites the $192,000.00 fee award in *Tchoboian I* as the highest amount that
Plaintiffs' Counsel has requested and received. Although the Court notes parallels between the two
actions, it also recognizes that the present case was litigated over a much longer time period than
*Tchoboian I*, and that opposing counsel and Yedalian appeared to disagree on far more issues in this
matter, leading to a much greater amount of disputes that required briefing. Therefore, the higher -- but
presumptively reasonable -- lodestar amount needs no adjustment to conform to fee awards in "similar"
cases.

> **E.   Costs**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that
are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23. As noted, the Settlement
Agreement provides that "FedEx Office will pay the reasonable attorneys' fees and costs of Class
Counsel in an amount to be determined by the Court." Settlement Agreement ¶22. "[P]revailing plaintiffs
[may] recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties."
*Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). "'[R]easonable attorney's
fees' include litigation expenses only when it is 'the prevailing practice in a given community' for
lawyers to bill those costs separately from their hourly rates." *Trustees of Const. Indus. & Laborers
Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (quoting *Missouri v.
Jenkins by Agyei*, 491 U.S. 274, 286-87 (1989)).

Plaintiffs' Counsel represents that all of the costs for which reimbursement is sought are ones that
would have been billed to a fee paying client, consistent with the prevailing practice. Yedalian Fees
Decl. ¶33.

Plaintiffs seek $14,618.94 in costs. Yedalian Fees Decl. ¶33.

| Complaint Filing Fee: | 350.00 |
|---|---|

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

| | |
|---|---|
| First Mediation Fees: | 6,275.00 |
| Travel & Related Costs (First Mediation) | 716.25 |
| Second Mediation Fees: | 3,275.00 |
| Travel & Related Costs (Second Mediation) | 202.74 |
| Subscription Fee To Find Expert | 99.95 |
| Expert Fee Re Credit/Debit Card Issues: | 1,200.00 |
| Notice To Class Fees TopClassActions.com: | 2,500.00 |
| Total | 14,618.94 |

Plaintiffs contend that other costs, including "mail and postage, attorney service and courier, parking, online research, copying, [and] court reporter transcript fees" were incurred. However, their recovery is not sought. *Id.* at ¶34.

Of the identified costs, Defendant only opposes those for the notice and those related to the expert fees. Dkt. 186 at 20. Defendant contends that it never agreed to an additional, unilateral supplement to the agreed-upon notice program. Defendant also contends that it should not pay for the subscription fee for a general service to locate experts or for the otherwise unsubstantiated expert fee for an expert whom Defendant could not depose.

Although Plaintiffs assert that the expert fees charged by Ms. Daniella Flanagan are "quite low considering the services she provided," Plaintiffs do not provide any details as to the nature of Ms. Flanagan's services, the amount of time she spent working on the case, her hourly rate, or the prevailing hourly rate for similar experts. The copies of unnegotiated checks purportedly issued to Ms. Flanagan submitted with Plaintiffs' Reply do not support the claim that her rate was reasonable. Supp. Yedalian Fees Decl., Exh. 20. Similarly, Plaintiffs provide little evidence to demonstrate that the $99.95 subscription fee for access to the website used to locate Ms. Flanagan, is (1) reasonable, or (2) should be charged to FedEx, given that Plaintiffs' Counsel routinely engages in FACTA litigation.

Finally, the Court finds that FedEx should not be required to pay for the cost of additional notice to class members that Class Counsel unilaterally selected. Class Counsel claims that additional notice was required "*after* FedEx failed to fully comply with the in-store notice necessitating the ex parte application re notice[.]"[12] However, the Court's order on this issue stated that "the evidence does not persuade the Court that Defendants selected the side location of the ExpressPay Kiosk in order to reduce the

---

[12] Reply at 22.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

number of persons who would become aware of this action and the settlement. Nor is the Court
persuaded that the present notice location does not satisfy the terms of the settlement agreement or
the requirements of Civil Rule 23(c)(2)(B)." Dkt. 177 ¶5.

For the foregoing reasons, the Court finds that the following costs are unreasonable, and shall not be
awarded to Plaintiffs' Counsel: (1) the $1,200.00 for Ms. Flanagan's expert fees, (2) the $99.95
subscription fee, and (3) the $2,500.00 for supplemental notice. Therefore, the Court grants reasonable
costs to Plaintiffs' Counsel in the amount of $10,818.99.

> **F.     Incentive Awards**
>
> "[N]amed plaintiffs . . . are eligible for reasonable incentive payments. The district court
> must evaluate their awards individually, using relevant factors including the actions the
> plaintiff has taken to protect the interests of the class, the degree to which the class has
> benefitted from those actions, [and] the amount of time and effort the plaintiff expended
> in pursuing the litigation . . . . Additionally, class members can certainly be repaid from
> any cost allotment for their substantiated litigation expenses, and identifiable services
> rendered to the class directly under the supervision of class counsel can be reimbursed
> as well from the fees awarded to the attorneys."

*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (alterations and quotation marks in original
omitted).

To determine whether to approve an incentive award, district courts consider a number of criteria,
including:

> 1) the risk to the class representative in commencing suit, both financial and otherwise;
> 2) the notoriety and personal difficulties encountered by the class representative; 3) the
> amount of time and effort spent by the class representative; 4) the duration of the
> litigation[;] and[ ] 5) the personal benefit (or lack thereof) enjoyed by the class
> representative as a result of the litigation.

*In re Toys R Us*, 2014 WL 198665 (C.D. Cal. 2014) (MMM) (citation omitted) (alterations in original).
Additionally, courts consider "the number of named plaintiffs receiving incentive payments, the
proportion of the payments relative to the settlement amount, and the size of each payment." *Stanton*,
327 F.3d at 977; *see also Browne v. Am. Honda Motor Co.*, 2010 WL 9499073, at *12 (C.D. Cal. 2010)
(MMM).

The Ninth Circuit has stated that "excess incentive awards may put the class representative in a conflict
with the class and present a "considerable danger of individuals bringing cases as class actions
principally to increase their own leverage to attain a remunerative settlement for themselves and then
trading on that leverage in the course of negotiations." *Rodriguez v. West Publishing Group*, 563 F.3d
948, 960 (9th Cir. 2009). Similarly, "Congress has also expressed concern with the potential abuses of
incentive awards." *Id.* at 960 n.4.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

Plaintiffs seek $7,500.00 for each of the two class representatives. Tchoboian and Potikyan each claim to have spent over 85 hours of time in connection with this litigation. Tchoboian Decl. ¶15; Potikyan Decl. ¶15.  Both were deposed. Tchoboian Decl. ¶9; Potikyan Decl. ¶9. Both attended the first mediation. Tchoboian Decl. ¶14; Potikyan Decl. ¶14. Both reviewed materials, gave input, and assisted counsel at various stages of the litigation throughout the years. Tchoboian Decl. ¶¶ 6-8, 14; Potikyan Decl. ¶¶ 6-8, 14. The requested award equates to an hourly rate of $88.00.

The amount requested is disproportionately large when compared to the amount of recovery to the class. Pursuant to the Settlement Agreement, each class member was to receive a $50.00 store value card only after production of a receipt from April 2009 to April 2010, which showed the first two and last four digits of their card numbers. Dkt. 163, Exh. 1 at ¶14. Only 54 individuals submitted valid receipts within the claim period. This resulted in a total class recovery of $2,700.00. Thus, the amount of incentive payment requested for *each* class representative is almost three times the total recovery to the entire class. Furthermore, the requested incentive award per plaintiff is 7.5 times the maximum statutory damage amount for willful violations of FACTA. *See* FAC ¶45 (quoting 15 U.S.C. §1681n).

Finally, the Court is not persuaded that the issues presented in this litigation required the named plaintiffs collectively to devote 170 hours to the litigation. The facts were straightforward. Each named plaintiff alleges that he used a FedEx Express Pay kiosk to make purchases – on three separate dates – and requested receipts for these transactions. Dkt. 53, Tchoboian Decl. in Support of Class Certification, ¶¶4-8; Dkt. 54, Potikyan Decl. in Support of Class Certification, ¶¶ 4-8. The receipts displayed the first two and last four digits of their respective credit cards. *Id.* Tchoboian and Potikyan did not need to testify about any protracted history with FedEx, or other facts to establish any particular company policy or procedure. Thus, their primary duties as class representatives were: (1) to produce the kiosk receipts they received from their respective visits to FedEx stores; and (2) to sit for their depositions. That their depositions were completed during a single day confirms that their roles in, and percipient knowledge about, the underlying matters were very limited. Thus, their required time investment was modest. It is also notable that Mr. Tchoboian had already been deposed as the named plaintiff in another FACTA case before this action was filed;[13] as noted earlier, this should have reduced the time needed to prepare him for his deposition in this matter.

In light of this evidence, the Court awards incentive awards in the amount of $1,700.00 to Tchoboian and $1,700.00  to Potikyan. Assuming that all time each spent was both necessary and reasonable, this would reflect an hourly rate of $20.00, which the Court finds reasonable. And, this is confirmed by the Court's view that each could have been effective as a class representative by spending half of the time that each claims. Thus, a full work week of time should have been sufficient for each to have performed his role as a class representative.

---

[13] *See Tchoboian v. Parking Concepts Inc., et al.* (C.D. Cal. Case No. 09-cv-422), Dkt. No. 31, Notice of Demand, and Demand, for Lodging of Original Transcript of the Deposition of Plaintiff Razmig Tchoboian in Support of Plaintiff's Motion for Class Certification, filed on June 30, 2009.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV10-01008 JAK (MLGx) | Date | March 25, 2014 |
|---|---|---|---|
| Title | Razmig Tchoboian et al. v. Fedex Office and Print Services, Inc., et al. | | |

**V.     Plaintiffs' Request to Reopen Discovery**

Plaintiffs also request that the Court allow additional discovery regarding Defense counsel's fees in this case.  As the foregoing demonstrates, the Court has sufficient information to determine a reasonable amount of attorney's fees in this case, and it is awarding the "presumptively reasonable" lodestar amount.  Therefore, Plaintiffs' request for additional discovery is DENIED.

**VI.     Conclusion**

For all of the foregoing reasons, the Court awards $521,850.00 in attorney's fees for the work on this action; $10,818.99 in reasonable costs; and an incentive award of $1,700.00 to each named plaintiff.

The Court has received Plaintiffs' Proposed Order Granting Motion for Final Approval of Class Action Settlement and Judgment, Dkt. 178-1. The parties are to submit any updates to this Proposed Order within ten (10) days. Upon receiving any proposed updates or any corresponding objections, the Court will resolve any disputes and enter a final Judgment. Upon its entry, the action will be dismissed with prejudice in accordance with the terms of the Settlement Agreement; provided, however, and without affecting the finality of the Judgment in any way, the Court shall retain continuing jurisdiction over the interpretation, implementation and enforcement of the Settlement Agreement, and all orders and the Judgment entered in connection therewith.


**IT IS SO ORDERED.**


                                                            _____ : _____

                                    Initials of Preparer    ak

# APPENDIX A:
## Total Time Spent by Plaintiffs' Counsel on Select Projects

COMPLAINT
(Dkt. 1, Filed 7/1/2010)

| Date | Time (h:mm) | Description | Citation[1] |
|---|---|---|---|
| Redacted | 3:35 | Begin drafting Complaint | p. 1 |
| Redacted | 3:25 | Finalize complaint, and prepare summons, civil cover sheet, and notice of interested parties | p. 1 |
| 7/1/2010 | 0:20 | Have Complaint and case initiating documents filed today | p. 3 |
| 7/2/2010 | 0:10 | Have conformed complaint and other initiating case documents sent to civil intake email address | p. 3 |
|  |  |  |  |
| **TOTAL** | **7:30** |  |  |

FIRST AMENDED COMPLAINT
(Dkt. 4, Filed 7/4/2010)

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| Redacted | 1:05 | Begin drafting first amended complaint | p. 3 |
| Redacted | 1:25 | Continue drafting first amended complaint and related documents | p. 3 |
| Redacted | 2:50 | Finalize first amended complaint and related documents and prepare for filing; prepare notice of manual filing | p. 3 |
| 7/9/2010 | 1:10 | File notice of manual filing electronically, have FAC and related documents filed and email PDF files of filed documents to court's intake department | p. 3 |
| 10/4/2010 | 0:35 | Compile first amended complaint and related documents and foregoing letter and provide to process server along with instructions for service | p. 4 |
| 10/8/2010 | 0:35 | Review POS re FAC and related documents and notice error, call attorney service to revise and send corrected POS, receive and review corrected POS | p. 4 |
| 10/19/2010 | 0:20 | E-file POS | p. 4 |
|  |  |  |  |

---

[1] These citations are to pages within the time records submitted by Plaintiff's Counsel, in support of his Motion for Attorney's Fees.  (Dkt. 181-1.)  The pagination refers to those within the original document, found in the bottom center of each page.

| TOTAL | 8:00 | | |
|---|---|---|---|

**OPPOSITION TO MOTION TO DISMISS**
**(Dkt. 16, Filed 1/10/2011)**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 10/20/2010 | 3:05 | Initial research of issues raised by defense | p. 4 |
| 10/21/2010 | 5:35 | Continue researching issues raised by defense re their motion to dismiss | p. 4 |
| 11/1/2010 | 4:35 | Continue research regarding digits theory claimed by defense as one basis for motion to dismiss | p. 5 |
| 11/19/2010 | 3:10 | Continue research re motion to dismiss by finding and compiling credit card exemplars and exemplar images concerning digit issues | p. 5 |
| 11/20/2010 | 3:50 | Continue research re credit card exemplars and motion to dismiss issues | p. 5 |
| 11/23/2010 | 1:35 | Research and obtain documents from Broderick case and review receipts and other doc in preparation for call with defense | p. 5 |
| 11/23/2010 | 0:35 | Call with defense re motion to dismiss and further possible settlement discussions and need for underlying factual info | p. 5 |
| 11/24/2010 | 0:20 | Initial review of defense motion to dismiss filed today | p. 5 |
| 12/1/2010 | 9:05 | Further review of motion to dismiss and research of issues and begin drafting opposition | p. 6 |
| 12/7/2010 | 2:35 | Further research of cases and also legislative history and also filings in Broderick case relied upon by defense | p. 6 |
| 12/8/2010 | 7:40 | Continue researching cases, legislative history and extraneous materials | p. 6 |
| 12/10/2010 | 7:30 | Continue drafting opposition to defense motion | p. 6 |
| 12/14/2010 | 1:35 | Additional research for opp to defense motion to dismiss | p. 6 |
| 12/15/2010 | 8:05 | Continue drafting opp to defense motion to dismiss and research related thereto | p. 6 |
| 12/16/2010 | 5:40 | Continue drafting opp to defense motion to dismiss and research related thereto | p. 6 |
| 12/17/2010 | 3:25 | Continue drafting opp to defense motion to dismiss and research related thereto | p. 6 |
| 12/20/2010 | 5:10 | Continue drafting opp to defense motion to dismiss and research related thereto | p. 6 |
| 12/21/2010 | 6:05 | Continue drafting opp to defense motion to dismiss | p. 7 |

| Date | Time | Description | Citation |
|---|---|---|---|
| | | and research related thereto | |
| 12/22/2010 | 0:35 | Continue drafting opp to defense motion to dismiss | p. 7 |
| 12/24/2010 | 4:45 | Continue drafting opp to defense motion to dismiss and research related thereto | p. 7 |
| 12/29/2010 | 3:35 | Additional research related to opp mot dismiss | p. 7 |
| 1/3/2011 | 6:10 | Continue drafting opp mot dismiss | p. 7 |
| 1/4/2011 | 5:05 | Continue drafting opp mot dismiss, and begin request for judicial notice and recompiling exhibits therefor | p. 7 |
| 1/5/2011 | 7:15 | Continue drafting opp mot dismiss | p. 7 |
| 1/9/2011 | 3:20 | Continue drafting opp mot dismiss | p. 7 |
| 1/10/2011 | 5:40 | Finalize opp brief and request for judicial notice and exhibits thereto and e-file with court | p. 7 |
| 1/17/2011 | 0:35 | Initial review of defense reply and related documents re motion to dismiss | p. 7 |
| | | | |
| **TOTAL** | **116:35** | | |

## MEET & CONFER PROCESS FOR 1ST SET OF INTERROGATORIES

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 3/18/2011 | 0:20 | Review defense responses to rogs set 1 | p. 10 |
| 3/18/2011 | 1:45 | Begin drafting m&c letter re rogs 1 | p. 10 |
| 3/19/2011 | 3:50 | Continue drafting m&c letter re rogs 1 and research issues re same | p. 10 |
| 3/21/2011 | 5:20 | Continue drafting m&c letter re rogs 1 and research re same | p. 10 |
| 3/22/2011 | 6:15 | Continue drafting m&c letter re rogs 1 and research re same including legal and factual issues concerning kiosks and data retention | p. 11 |
| 3/23/2011 | 3:30 | Continue research re issues and drafting m&c letter re rogs 1 and finalize and send to defense | p. 11 |
| | | | |
| **TOTAL** | **21:00** | | |

## GENERAL DEPOSITION PREPARATION- BOTH PLAINTIFFS[2]

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 6/1/2011 | 3:20 | Review depo transcript from case handled by defense attys and prepare additional depo prep questions based upon same | p. 15 |

---

[2] These entries appear to refer to work billed relating to both named plaintiffs' depositions.

| 6/3/2011 | 3:35 | Receive and begin reviewing depo notice and productions demands made by defense and researching issues related to same | p. 15 |
|---|---|---|---|
| 6/14/2011 | 0:10 | Send confirming email to defense re depo scheduling and receive and review response and request re same | p. 16 |
| 6/17/2011 | 8:35 | Continue drafting response and objections to depo notice and production demands for each of the plaintiffs | p. 16 |
| 6/19/2011 | 0:20 | Communications with both clients regarding schedules for meetings for the upcoming week | p. 16 |
| 6/22/2011 | 2:40 | Finalize response and objections to depo notice and production demands for each of the plaintiffs | p. 17 |
| 6/24/2011 | 0:45 | Compile documents for depositions today | p. 17 |
| 6/24/2011 | 5:50 | Meet with clients and appear for and defend both depositions in downtown, after deposition discuss with defense re date for RFP1 conference | p. 17 |
| 6/24/2011 | 0:55 | Phone discussions with both clients after depo to discuss depo and next steps | p. 17 |
| 7/19/2011 | 0:15 | Email each clients about their transcript and send PDF copy of their respective transcript | p. 18 |
| 8/4/2011 | 0:10 | Communicate with both clients re meet tomorrow to finalize depo transcript changes | p. 20 |
| 8/4/2011 | 0:20 | Email court reporter company to determine where to send the changes and follow-up emails thereto | p. 20 |
| 8/5/2011 | 3:05 | Drive to meet with client Potikyan and drive to and meet with client Tchoboian to finalize changes to transcripts and obtain original signatures for changes | p. 20 |
| 8/7/2011 | 0:35 | Prepare letters to court reporter with copies to defense concerning changes to transcripts of both clients | p. 20 |
| 8/8/2011 | 0:15 | Email court reporter's office to request that they forward attached letters/documents to court reporter and provide explanation | p. 20 |
| | | | |
| **TOTAL** | 30:50 | | |

## DEPOSITION OF TCHOBOIAN – PREPARATION AND REVIEW

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 5/19/2011 | 4:45 | Review FACTA cases and prepare depo prep material for client Tchoboian | p. 13 |
| 5/20/2011 | 4:50 | Meet with client Tchoboian in Glendale and do initial round of depo prep | p. 13 |
| 5/23/2011 | 0:05 | Follow-up with client Tchoboian for further session | p. 14 |

| Date | Time | Description | Citation |
|---|---|---|---|
| | | of depo prep | |
| 5/31/2011 | 0:45 | Calls and emails with client Potikyan and Tchoboian re depos and scheduling and prep issues[3] | p. 14 |
| 5/31/2011 | 5:45 | Meet in Glendale with client Tchoboian and do further depo prep session | p. 14 |
| 6/2/2011 | 3:50 | Review client's depo from previous case and prepare additional prep questions based upon same | p. 15 |
| 6/5/2011 | 6:15 | Meet with client Tchoboian for further depo prep | p. 15 |
| 6/14/2011 | 1:05 | Phone discussions with client Tchoboian regarding depo and depo confirmation and times and answer further questions and address issues about same | p. 16 |
| 6/21/2011 | 6:45 | Meet with client Tchoboian for further depo prep and review draft of response and objections to depo notice and productions demands with him | p. 16 |
| 6/22/2011 | 4:15 | Meet with client Tchoboian for final depo prep | p. 17 |
| 7/4/20111 | 0:10 | Phone discussions with client Tchoboian re status of transcripts and scheduled conference | p. 17 |
| 7/26/2011 | 2:45 | Begin reviewing Tchoboian transcript and notes re possible issues to discuss with him | p. 19 |
| 8/2/2011 | 0:10 | Calls with client Tchoboian re further issues re transcript | p. 19 |
| 8/2/2011 | 0:35 | Prepare revisions to transcript in change form and forward to client Tchoboian with email re same | p. 19 |
| | | | |
| **TOTAL** | 42:00 | | |

**DEPOSITION OF POTIKYAN – PREPARATION AND REVIEW**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 5/20/2011 | 3:15 | Prepare depo prep material for client Potikyan | p. 13 |
| 5/23/2011 | 0:10 | Follow-up call with client Potikyan to discuss status and scheduling meeting for initial depo-prep | p.24 |
| 6/3/2011 | 6:45 | Meet with client Potikyan for initial depo prep | p. 15 |
| 6/6/2011 | 4:40 | Meet with client Potikyan for further depo prep | p. 15 |
| 6/13/2011 | 3:20 | Meet with client Potikyan for further depo prep | p. 15 |
| 6/14/2011 | 0:10 | Phone discussions with client Potikyan regarding depo and depo confirmation and times | p. 16 |
| 6/21/2011 | 5:35 | Meet with client Potikyan for further depo prep and also review draft of response and objections to depo notice and production demands with her | p. 16 |
| 6/23/2011 | 5:35 | Meet with client Potikyan for final depo prep | p. 16 |

[3] Although this entry notes calls and emails with both Potikyan and Tchoboian, the Court does not duplicate this entry in its calculations for the time spent on preparing for Potikyan's deposition.

| 7/17/2011 | 2:35 | Review of Potikyan transcript and make notes of questions to discuss with her | p. 17 |
| 7/18/2011 | 0:30 | Continue review of Potikyan Transript and notes to discuss with her | p. 18 |
| 7/21/2011 | 1:05 | Further review of Potikyan transcript and further issues to discuss with her | p. 18 |
| 7/21/2011 | 0:50 | Phone discussions with client Potikyan re transcript and scheduling issues | p. 18 |
| 7/22/2011 | 1:10 | Further phone discussions with client Potikyan re issues regarding her deposition transcript and flight issues | p. 18 |
| 7/22/2011 | 0:40 | Further review of her transcript based upon discussions re same | p. 18 |
| 7/26/2011 | 0:05 | Phone discussions with client Potikyan re possible additional revisions | p. 19 |
| 8/1/2011 | 2:15 | Reread and review Potikyan depo in light of potential additional changes | p. 19 |
| 8/1/2011 | 0:30 | Revise change form and email client Potikyan for her review and follow-up emails thereto | p. 19 |
|  |  |  |  |
| **TOTAL** | 39:10 |  |  |

**REVIEW OF DEFENDANT'S DOCUMENT PRODUCTION**

| <u>Date</u> | <u>Time</u> <br> **(h:mm)** | <u>Description</u> | <u>Citation</u> |
|---|---|---|---|
| 8/25/2011 | 13:25 | Begin review of 4k+ pages of documents produced by FedEx | p. 21 |
| 8/26/2011 | 8:10 | Continue review of 4k+ pages of documents produced by FedEx | p. 21 |
| 8/30/2011 | 4:50 | Continue reviewing documents products | p. 21 |
| 9/3/2011 | 4:15 | Continue review of discovery documents produced | p. 22 |
| 9/10/2011 | 3:40 | Continue review of documents produced by defense | p. 22 |
| 9/11/2011 | 4:20 | Continue review of documents produced by defense | p. 22 |
| 9/12/2011 | 3:35 | Continue review of 4K+ pages of documents produced by defense | p. 22 |
| 9/24/2011 | 10:15 | Continue review of 4k+ pages of documents produced by FedEx | p. 23 |
| 9/25/2011 | 9:40 | Continue review of 4k+ pages of documents produced by FedEx | p. 23 |
|  |  |  |  |
| **TOTAL** | 62:10 |  |  |

**FIRST MEDIATION BRIEF**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 9/14/2011 | 8:15 | Begin drafting mediation brief | p. 22 |
| 9/19/2011 | 10:05 | Continue drafting mediation brief | p. 22 |
| 9/20/2011 | 8:40 | Continue drafting and finalize mediation brief | p. 23 |
| | | | |
| **TOTAL** | 27:00 | | |

**SECOND MEDIATION BRIEF**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 8/11/2012 | 4:15 | Begin drafting mediation brief | p. 45 |
| 8/12/2012 | 4:20 | Continue drafting mediation brief | p. 45 |
| 8/17/2012 | 4:35 | Continue drafting and finalize mediation brief | p. 45 |
| | | | |
| **TOTAL** | 13:10 | | |

**EX PARTE TO STRIKE MOTION FOR SUMMARY JUDGMENT AND MEET & CONFER RE SAME (Dkt. 37, Filed 10/4/2011)**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 9/30/2011 | 11:50 | Begin researching and drafting ex parte application re improperly filed motion | p. 24 |
| 10/1/2011 | 7:40 | Continue drafting ex parte application | p. 24 |
| 10/2/2011 | 8:10 | Continue drafting ex parte application | p. 24 |
| 10/3/2011 | 1:45 | Leave voicemail messages for defense counsel, call with defense counsel's secretary, and multiple email exchanges with defense counsel concerning ex parte application | p. 24 |
| 10/3/2011 | 5:00 | Continue drafting ex parte application | p. 24 |
| 10/4/2011 | 10:30 | Continue drafting and finalize ex parte application and exhibits, serve on defense, and e-file with court | p. 24 |
| | | | |
| **TOTAL** | 44:55 | | |

**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Dkt. 45, Filed 10/17/2011)**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 10/7/2011 | 15:10 | Begin drafting objections to Hendricks' declaration re summary judgment, and research re deficiencies re same, and begin drafting statement of genuine issues | p. 25 |
| 10/8/2011 | 16:05 | Continue research and drafting of objections to Hendricks' declaration re summary judgment and continue drafting statement of genuine issues | p. 25 |
| 10/9/2011 | 14:40 | Continue research and drafting of objections to Hendricks' declaration re summary judgment and continue drafting statement of genuine issues | p. 25 |
| 10/10/2011 | 13:50 | Begin drafting opposition to summary judgment motion and continue research and drafting of objections to Hendricks' declaration and continue drafting statement of genuine issues | p. 25 |
| 10/11/2011 | 13:05 | Continue drafting opposition to summary judgment motion, and continue research and drafting objection to Hendricks' decl., and drafting of statement of genuine issues, begin compiling exhibits referenced so far | p. 25 |
| 10/12/2011 | 14:25 | Begin drafting CY dec in opposition to motion, and continue drafting opposition to summary judgment motion, and continue research and drafting of objections to Hendricks' declaration, and continue statement of genuine issues | p. 25 |
| 10/13/2011 | 15:35 | Continue drafting CY dec in opposition to summary judgment motion, continue drafting opposition to summary judgment motion, continue research and drafting of objections to Hendricks' declaration, and continue drafting statement of genuine issues | p. 26 |
| 10/14/2011 | 16:15 | Continue drafting opposition to summary judgment motion, objections to Hendricks' declaration, and statement of genuine issues, and begin exhibits document and compiling additional exhibits | p. 26 |
| 10/15/2011 | 10:50 | Continue drafting opposition to summary judgment motion, objections to Hendricks' declaration, and statement of genuine issues | p. 26 |
| 10/16/2011 | 11:40 | Continue drafting opposition to summary judgment motion, and research receipts and stores for possible inclusion as additional exhibits, and draft objections to Sheridan decl | p. 26 |
| 10/17/2011 | 10:05 | Continue drafting opposition to summary judgment motion and related documents, and obtain receipts | p. 26 |

| | | from Walmart, Target, Ralphs and Trader Joes, and redact and prepare as additional exhibits, and then finalize the opposition related documents, and e-file with court | |
|---|---|---|---|
| | | | |
| **TOTAL** | 151:40 | | |

**PREPARATION FOR DEPOSITION OF FEDEX EMPLOYEES**

| **Date** | **Time (h:mm)** | **Description** | **Citation** |
|---|---|---|---|
| 6/6/2012 | 2:40 | Research locations and court reporter services for depositions and avail in Dallas Texas for June and July depos and multiple communications with same | p. 42 |
| 6/6/2012 | 6:50 | Begin preparing for Woodward deposition | p. 42 |
| 6/13/2012 | 7:55 | Continue preparing for 3 depos of FedEx employees | p. 43 |
| | | | |
| **TOTAL** | 17:25 | | |

**MOTION FOR CLASS CERTIFICATION**
**(Dkt. 52, Filed 10/24/2011)**

| **Date** | **Time (h:mm)** | **Description** | **Citation** |
|---|---|---|---|
| 9/30/2011 | 0:25 | Prepare and send to defense letter re class cert motion conference of counsel | p. 24 |
| 10/5/2011 | 0:10 | Email defense confirming call for class cert conference tomorrow | p. 25 |
| 10/6/2011 | 0:10 | Hold conference of counsel with defense re class certification motion | p. 25 |
| 10/6/2011 | 0:20 | Follow-up emails re class cert motion conference of counsel | p. 25 |
| 10/13/2011 | 0:25 | Email each client to see what their availability is for declarations for class cert motion and follow-up emails re same | p. 26 |
| 10/18/2011 | 4:15 | Begin drafting class certification motion | p. 26 |
| 10/19/2011 | 10:40 | Continue drafting class certification motion and research re same | p. 26 |
| 10/20/2011 | 7:15 | Continue drafting class certification motion and research re same | p. 27 |
| 10/20/2011 | 0:25 | Emails to and from clients re update their availability for declarations | p. 27 |
| 10/21/2011 | 14:15 | Continue drafting class cert brief | p. 27 |
| 10/22/2011 | 16:35 | Continue drafting class cert brief and begin working | p. 27 |

| Date | Time | Description | Citation |
|---|---|---|---|
| | | on related documents | |
| 10/22/2011 | 0:25 | Email clients their class cert declarations and follow-up emails re same | p. 27 |
| 10/22/2011 | 0:20 | Phone discussions with client Tchoboian re declaration and class cert motion | p. 27 |
| 10/23/2011 | 13:35 | Continue drafting class cert brief and related documents | p. 27 |
| 10/23/2011 | 0:15 | Email with client Potikyan re class cert declaration | p. 27 |
| 10/23/2011 | 0:05 | Phone discussions with client Potikyan re class cert declaration | p. 27 |
| 10/24/2011 | 1:35 | E-file finalized class cert brief and related documents | p. 27 |
| | | | |
| **TOTAL** | 71:10 | | |

**REPLY IN SUPPORT OF CLASS CERTIFICATION**
**(Dkt. 106, Filed 2/20/2012)**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 11/10/2011 | 7:35 | Research re ascertainability and predominance arguments anticipated by defense to class cert motion | p. 29 |
| 11/11/2011 | 9:55 | Further research re ascertainability and predominance arguments anticipated by defense and begin drafting and organizing counter arguments | p. 29 |
| 11/12/2011 | 6:40 | Continue research re anticipated counter arguments re ascertainability and predominance and review of documents related to issues | p. 29 |
| 11/23/2011 | 5:15 | Continue research re anticipated ascertainability and predominance arguments for reply | p. 30 |
| 11/25/2011 | 4:20 | Continue research re anticipated ascertainability and predominance arguments for reply | p. 30 |
| 11/26/2011 | 7:35 | Continue research re anticipated ascertainability and predominance arguments for reply | p. 30 |
| 12/2/2011 | 0:25 | Emails to each of the clients and inform them of status of class cert and follow-up emails related thereto | p. 31 |
| 12/12/2014 | 2:50 | Initial review of class cert opp documents filed by defense today | p. 31 |
| 2/13/2011 | 13:40 | Draft cert reply | p. 32 |
| 2/14/2011 | 14:50 | Continue drafting class cert reply and research | p. 32 |
| 2/15/2011 | 12:35 | Continue drafting class cert reply and research | p. 32 |
| 2/16/2011 | 10:55 | Continue drafting class cert reply | p. 32 |
| 2/17/2011 | 14:20 | Research and continue drafting class cert reply | p. 32 |
| 2/18/2011 | 12:15 | Begin drafting objections to defense declarations (Rudzinski, Durning, Kassen, and Hendricks), | p. 32 |

| | | research and continue class cert draft, and draft CY sup dec | |
|---|---|---|---|
| 2/19/2011 | 16:30 | Continue preparing class cert documents | p. 32 |
| 2/20/2011 | 1:10 | File finals of class cert reply, objections to Rudzinski, Durning, Kassen, and Hendricks declarations, and CY sup dec | p. 32 |
| | | | |
| **TOTAL** | **140:50** | | |

**PLAINTIFF'S MOTION TO COMPEL RE REQUEST FOR PRODUCTION, SET 1
(Dkt. 139, filed 5/8/2012)**

| <u>Date</u> | <u>Time (h:mm)</u> | <u>Description</u> | <u>Citation</u> |
|---|---|---|---|
| 11/30/2011 | 9:15 | Review documents and begin preparing discovery declaration for motion | p. 31 |
| 12/1/2011 | 8:20 | Continue review of documents and work on discovery declaration for motion | p. 31 |
| 12/2/2011 | 9:35 | Continue review of documents and working on discovery declaration for motion | p. 31 |
| 12/7/2011 | 3:50 | Continue drafting dec re discovery motion | p. 31 |
| 12/10/2011 | 4:20 | Discovery motion and rule 26 and rule 37 research | p. 31 |
| 12/19/2011 | 9:40 | Continue drafting dec re discovery motion | p. 31 |
| 12/20/2011 | 8:55 | Continue drafting dec re discovery motion and joint stip | p. 31 |
| 12/21/2011 | 9:30 | Continue drafting joint stip re discovery motion | p. 31 |
| 12/22/2011 | 10:15 | Continue drafting joint stip re discovery motion | p. 31 |
| 4/18/2012 | 8:40 | Continue work on discovery rfp motion | p. 31 |
| 4/19/2012 | 9:30 | Continue work on discovery motion | p. 36 |
| 4/20/2012 | 9:45 | Continue work on discovery motion | p. 37 |
| 4/21/2012 | 5:50 | Continue drafting discovery stip and supporting decl and begin exhibit compilation | p. 37 |
| 4/24/2012 | 8:30 | Continue drafting discovery joint stip and supporting decl and compiling exhibits | p. 37 |
| 4/25/2012 | 8:55 | Continue drafting discovery joint stip and supporting decl, and finalize compilation of exhibits | p. 37 |
| 4/26/2012 | 9:25 | Continue drafting and finalize RFP discovery joint stip and supporting CY Decl, draft proposed order and notice of motion | p. 38 |
| 5/5/2012 | 5:40 | Finalize notice brief re class cert and exhibits thereto | p. 39 |
| 5/7/2012 | 0:25 | Compile additional exhibits to discovery motion | p. 39 |
| 5/8/2012 | 1:05 | Finalize CY decl to discovery motion and file all discovery motion documents with Court and send proposed order | p. 39 |

| 5/16/2012 | 9:15 | Review defense opposition and begin drafting reply in support of RFP Motion | p. 40 |
| 5/17/2012 | 10:20 | Continue drafting reply in support of RFP Motion | p. 40 |
| 5/18/2012 | 8:55 | Continue drafting reply RFP Motion | p. 41 |
| 5/18/2012 | 0:10 | Receive and review letter from defense re motion to compel RFP date dispute | p. 41 |
| 5/21/2012 | 9:05 | Continue RFP motion and CY supporting decl | p. 41 |
| 5/22/2012 | 5:15 | Finalize and file Plaintiffs' RFP motion reply and CY decl | p. 41 |
| | | | |
| **TOTAL** | 184:25 | | |

**EXPERTS**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 3/5/2012 | 4:40 | Begin researching issues request by Court and potential experts | p. 33 |
| 3/6/2012 | 10:15 | Continue researching card issues discussed at class cert hearing, including search for court and appellate files in downtown and find filing by expert A, and have initial consult with expert A | p. 33 |
| 3/7/2012 | 11:40 | Continue researching debit and credit card issues and potential experts and place inquiries with many potential experts and have initial consult with Expert B | p. 33 |
| 3/8/2012 | 10:25 | Continue researching debit and credit card issues and potential experts and continue placing inquiries with potential experts, and have initial consults with Expert C and Expert DF, and then have follow ups with expert DF | p. 34 |
| 3/9/2012 | 11:35 | Continue research of debit and credit card issues and follow-up with Expert C from yesterday and Expert DF from yesterday and continue to work with Expert DF | |
| 3/10/2012 | 10:50 | Continue research and work on debit and credit card issues and work with Expert DF | p. 34 |
| 3/11/2012 | 8:45 | Meeting with expert DF in Tustin and continue work with her, and continue review and research of follow-up issues after meeting | p. 34 |
| 3/12/2012 | 12:10 | Review emails from expert DF, and continue researching issues re debit and credit card issues, including further follow-up calls with other expert | p. 34 |
| 3/13/2012 | 10:45 | Further research re card issues, including call with DF expert, and receive follow-up materials and | p. 34 |

| Date | Time | Description | Citation |
|---|---|---|---|
| | | review and further research based upon same | |
| 3/15/2012 | 9:50 | Further research re issues and draft notes/questions to discuss with Expert DF | p. 34 |
| 3/15/2012 | 0:10 | Try to schedule further call with DF expert | p. 34 |
| 3/16/2012 | 8:40 | Further research latest means of differentiating consumer/business card issue, including further work with expert re same and incorporate latest discussions into draft and send to expert | p. 35 |
| 3/17/2012 | 2:35 | Receive and review declaration from expert and follow-ups with expert re same, and then receive and review of final signed declaration from expert | p. 35 |
| | | | |
| **TOTAL** | 112:20 | | |

**BRIEF RE IDENTIFYING CLASS MEMBERS AND POTENTIAL METHODS OF CLASS NOTICE (Dkt. 141, Filed 5/14/2012)**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 3/27/2012 | 2:00 | Begin researching issues for latest brief requested by Court | p. 35 |
| 3/28/2012 | 4:40 | Continue researching issues re brief requested by Court | p. 35 |
| 3/29/2012 | 1:55 | Continue research for latest brief | p. 36 |
| 3/30/2012 | 2:30 | Further research for latest brief | p. 36 |
| 3/31/2012 | 5:15 | Further research for brief, opt-in v. opt-out, notice issues, etc. | p. 36 |
| 4/7/2012 | 8:10 | Begin drafting brief requested by Court re latest certification issues | p. 36 |
| 4/8/2012 | 9:45 | Continue drafting brief re latest certification issues | p. 36 |
| 4/9/2012 | 12:15 | Continue drafting and finalize brief re latest certification issues and file with the Court | p. 36 |
| | | | |
| **TOTAL** | 46:30 | | |

**MOTION FOR PRELIMINARY APPROVAL (Dkt. 163, Filed 10/22/2012)**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 10/10/2012 | 7:15 | Begin drafting motion for preliminary approval and related documents | p. 48 |
| 10/11/2012 | 5:55 | Continue drafting motion for preliminary approval and related documents | p. 48 |

| 10/13/2012 | 10:40 | Continue drafting motion for preliminary approval and related documents | p. 48 |
|---|---|---|---|
| 10/14/2012 | 9:50 | Continue drafting motion for preliminary approval and circulate draft of it, along with Summary Notice, Full Notice and Claim Form to defense for their comment | p. 48 |
| 10/15/2012 | 4:45 | Begin drafting proposed order and CY decl in support of motion for prelim approval | p. 48 |
| 10/15/2012 | 0:05 | Receive and review defense email re documents I emailed them yesterday | p. 48 |
| 10/16/2012 | 0:25 | Review and make further revisions to proposed order and send to defense along with email re same | p. 48 |
| 10/17/2012 | 5:35 | Receive and review defense email with their proposed summary notice, long form notice and claim form and begin making redlined revisions to all | p. 48 |
| 10/18/2012 | 3:00 | Continue making redlined revisions to summary notice, long form notice and claim form, and review defense comments re motion, and send to defense redlined documents along with email on admin and other issues | p. 48 |
| 10/19/2012 | 4:15 | Multiple emails from and to defense re admin issues/disputes and language of settlement documents, and review latest documents from defense and make changes and circulate to defense along with email re same re differences | p. 49 |
| 10/21/2012 | 0:20 | Review and respond to defense email re disputed admin issues | p. 49 |
| 10/22/2012 | 13:50 | Research admin issues and multiple emails from and to defense re admin issues/disputes and finally reach agreement and incorporate into motion documents, and continue drafting and finalize motion for preliminary approval, CY decl in support thereof, and proposed order, and prepare exhibits to motion, and file all documents and send proposed order to Chambers | p. 49 |
| | | | |
| **TOTAL** | 65:55 | | |

**RESEARCH RE REOPENING OF DISCOVERY**

| <u>Date</u> | <u>Time (h:mm)</u> | <u>Description</u> | <u>Citation</u> |
|---|---|---|---|
| 10/23/2012 | 8:35 | Research reopening of discovery and discovery of defense fees and costs and related issues | p. 49 |
| 10/27/2012 | 8:50 | Further research reopening of discovery and | p. 49 |

| Date | Time | Description | Citation |
|---|---|---|---|
| | | discovery of defense fees and costs and related issues | |
| 10/30/2012 | 7:45 | Further research reopening of discovery and discovery of defense fees, costs, and related and write and send letter to defense requesting conference of counsel to discuss contemplated motion | p. 49 |
| 11/7/2012 | 4:40 | Further research re cases in support of motion to reopen discovery | p. 49 |
| | | | |
| **TOTAL** | 29:50 | | |

**PLAINTIFF'S EX PARTE RE NOTICE ISSUES**
**(Dkt. 171, Filed 1/7/2013)**

| <u>Date</u> | <u>Time</u><br>**(h:mm)** | <u>Description</u> | <u>Citation</u> |
|---|---|---|---|
| 1/3/2013 | 2:00 | Investigation of noncompliant kiosks and stores re summary notice and take pictures of same | p. 51 |
| 1/3/2013 | 0:40 | Emails to and from defense re notice issues and send pictures to defense | p. 51 |
| 1/4/2013 | 2:35 | Receive email from defense in response to emails from yesterday and respond thereto and inform of intent to proceed with ex parte application, and call and leave voicemail message re same, and further emails from and to defense arguing notice and ex parte issues | p. 52 |
| 1/4/2013 | 1:15 | Return to Westwood store from yesterday and see if they posted notice and investigate height of slot as argued by defense | p. 52 |
| 1/6/2013 | 13:10 | Prepare ex parte application re notice issues and proposed order re same | p. 52 |
| 1/7/2013 | 0:30 | Send copy of ex parte application to defense and file same | p. 52 |
| 1/7/2013 | 1:00 | Receive email from defense re their positions on notice, research ada issues argued by defense and reply to same | p. 52 |
| 1/7/2013 | 1:15 | Review opposition to ex parte and related documents | p. 52 |
| 1/8/2013 | 2:35 | Prepare and file reply to ex parte application | p. 52 |
| 1/8/2013 | 0:10 | Review Court's order on ex parte application re notice | p. 52 |
| | | | |
| **TOTAL** | 25:10 | | |

**MOTION FOR FINAL APPROVAL**
**(Dkt. 178, Filed 3/8/2013)**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 2/19/2013 | 1:45 | Begin drafting final approval motion | p. 53 |
| 2/25/2013 | 2:15 | Continue drafting final approval motion | p. 53 |
| 2/28/2013 | 0:05 | Respond to emails from defense re final approval motion | p. 53 |
| 3/6/2013 | 10:50 | Continue drafting final approval motion, draft CY Decl in support thereof and proposed order and related research | p. 53 |
| 3/7/2013 | 3:20 | Finalize final approval motion, CY decl and proposed order | p. 54 |
|  |  |  |  |
| **TOTAL** | 18:15 |  |  |

**MOTION FOR ATTORNEY'S FEES**
**(Dkt. 180, Filed 3/8/2013)**

| Date | Time (h:mm) | Description | Citation |
|---|---|---|---|
| 12/28/2012 | 6:30 | Research re fee motion issues | p. 51 |
| 12/30/2012 | 4:55 | Further research re fee motion issues | p. 51 |
| 1/2/2013 | 3:45 | Further research re fee motion issues | p. 51 |
| 1/5/2013 | 10:40 | Further research re fee motion issues and draft portions thereof | p. 52 |
| 2/14/2013 | 0:15 | Discussions with Client Potikyan re her declaration for final approval/incentive award | p. 53 |
| 2/15/2013 | 0:15 | Discussions with client Tchoboian re his declaration for final approval/incentive award | p. 53 |
| 2/26/2013 | 4:50 | Continue drafting fee/incentive awards motion | p. 53 |
| 2/28/2013 | 3:35 | Continue drafting motion for fees incentive awards | p. 53 |
| 3/1/2013 | 5:20 | Continue drafting motion for fees/incentive awards | p. 53 |
| 3/2/2013 | 7:40 | Continue drafting motion for fees/incentive awards and research related thereto | p. 53 |
| 3/3/2013 | 8:25 | Continue drafting motion for fees/incentive awards and research related thereto | p. 53 |
| 3/4/2013 | 6:50 | Continue drafting motion for fees/incentive awards and related research, begin drafting CY Decl in support thereof | p. 53 |
| 3/5/2013 | 7:30 | Continue drafting motion for fees/incentive awards and related research, continue drafting CY Decl in support thereof, draft and send client declarations to each of the clients | p. 53 |

| 3/7/2013 | 9:05 | Continue drafting fees/incentive awards motion, CY Decl, and begin preparing proposed order | p. 54 |
| 3/9/2013 | 6:45 | Finalize fees/incentive awards motion, CY decl and proposed order | p. 54 |
|  |  |  |  |
| **TOTAL** | 86:20 |  |  |

**REPLY SUPPORTING MOTION FOR ATTORNEY'S FEES[4]
(Dkt. 193, Filed 3/25/2013)**

| <u>Date</u> | <u>Time</u><br>**(h:mm)** | <u>Description</u> | <u>Citation</u> |
|---|---|---|---|
| 3/18/2013 | 2:15 | Initial review of defense opposition and related documents and plan draft of Reply structure | Dkt. 193, at 10 |
| 3/19/2013 | 9:15 | Begin researching cited cases and other cases for Reply and begin drafting Reply | Dkt. 193, at 10 |
| 3/20/2013 | 8:40 | Continue research and drafting Reply | Dkt. 193, at 10 |
| 3/21/2013 | 9:25 | Continue research and drafting Reply and get proof of card from FedEx Office store | Dkt. 193, at 10 |
| 3/22/2013 | 6:50 | Continue research and drafting Reply | Dkt. 193, at 10 |
| 3/23/2013 | 10:55 | Continue research and drafting Reply and responsive table to strike components | Dkt. 193, at 10 |
| 3/24/2013 | 14:10 | Continue research and drafting Reply and responsive table to strike components | Dkt. 193, at 10 |
| 3/25/2013 | 12:45 | Continue drafting and finalize Reply and responsive table to strike components, and draft and finalize CY supp. declaration and request for judicial notice | Dkt. 193, at 10 |
|  |  |  |  |
| **TOTAL** | 74:15 |  |  |

---

[4] The time entries for this brief can be found within the declaration filed by Plaintiffs' Counsel in support of his Reply brief for his Motion for Attorney's Fees.  Dkt. 193, at 10.